## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA

INTERNATIONAL BROTHERHOOD OF
ELECTRICAL WORKERS LOCAL 98
PENSION FUND on behalf of itself and all
others similarly situated,

          Plaintiffs,

vs.

DELOITTE & TOUCHE, LLP;
DELOITTE LLP,

          Defendants.

Case No. 3:19-cv-3304

## DEFENDANTS' REPLY TO LEAD PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

ARGUMENT ..................................................................................................................1

I.     PLAINTIFFS DO NOT SATISFY THE *TELLABS* STANDARD FOR PLEADING SCIENTER .................................................................................1

     A.    Plaintiffs Plead No Facts Giving Rise to a Strong Inference that Deloitte Engaged in Intentional Fraud or Misconduct, or that it Failed to Conduct Any Audit Audit at All....................................................1

     B.    Plaintiffs' Allegations Do Not Give Rise to a Strong Inference that Deloitte Possessed the Bechtel Report Prior to Conducting its Audits ..........................................................................................................4

     C.    Plaintiffs' Other Allegations Fail to Plead a Strong Inference of Scienter ...............................................................................................8

          1.    Plaintiffs' Allegations Concerning the PSC Undermine Any Inference that Deloitte Acted with Scienter ...........................8

          2.    Plaintiffs' Allegations are Classic—and Impermissible— "Fraud by Hindsight"..................................................................10

          3.    The Absence of a Restatement Undermines any Suggestion That Deloitte Performed "No Audit at All"................12

II.     PLAINTIFFS HAVE NOT PLAUSIBLY ALLEGED LOSS CAUSATION, PARTICULARLY REGARDING ALLEGED LOSSES AFTER JULY 27, 2017 ...................................................................................13

CONCLUSION.............................................................................................................15

# TABLE OF AUTHORITIES

## Cases

*ACA Fin. Guar. Corp. v. City of Buena Vista,*
   917 F.3d 206 (4th Cir. 2019) ................................................................. 15-16

*Amorosa v. Ernst & Young LLP,*
   682 F. Supp. 2d 351 (S.D.N.Y. 2010) ............................................................13

*Cozzarelli v. Inspire Pharm., Inc.,*
   549 F.3d 618 (4th Cir. 2008) .........................................................................15

*Druskin v. Answerthink, Inc.,*
   299 F. Supp. 2d 1307 (S.D. Fla. 2004) ........................................................12

*Fidel v. Farley,*
   392 F.3d 220 (6th Cir. 2004) .................................................................. 11-12

*In Re KLX, Inc. Sec. Litig.,*
   232 F. Supp. 3d 1269 (S.D. Fla. 2017) ........................................................12

*In Re Maximus, Inc. Sec. Litig.,*
   Civil Action No. 1:17-cv-0884 (AJT/IDD), 2018 U.S. Dist. LEXIS 146068,
   (E.D. Va. Aug. 27, 2018) ..............................................................................14

*In re MicroStrategy, Inc. Sec. Litig.,*
   115 F. Supp. 2d 620 (E.D. Va. 2000) .......................................................... 3-4

*In re Parmalat Sec. Litig.,*
   375 F. Supp. 2d 278 (S.D.N.Y. 2005) ..........................................................14

*In re SCANA Corp. Sec. Litig.,*
   No. 3:17-2616-MBS, 2019 U.S. Dist. LEXIS 54176 (D.S.C. Mar. 29, 2019) ..............1, 7

*In re Williams Sec. Litig. - WCG Subclass,*
   558 F.3d 1130, 1140 (10th Cir. 2009) ..........................................................15

*In re Witness Sys.,*
   Civil Action No. 1:06-CV-1894-CC, 2008 U.S. Dist. LEXIS 109173
   (N.D. Ga. Mar. 31, 2008) ..............................................................................13

*Iowa Pub. Employee's Ret. Sys. v. Deloitte & Touche LLP,*
   919 F. Supp. 2d 321 (S.D.N.Y. 2013) ..........................................................11

*Iron Workers Local 16 Pension Fund v. Hilb Rogal & Hobbs Co.,*
   432 F. Supp. 2d 571 (E.D. Va. 2006) ...........................................................12

*Janus Capital Grp., Inc. v. First Derivative Traders,*
    564 U.S. 135 (2011)...................................................................................14

*Katyle v. Penn Nat'l Gaming, Inc.,*
    637 F.3d 462 (4th Cir. 2011) ................................................................ 13-15

*Lattanzio v. Deloitte & Touche LLP,*
    476 F.3d 147 (2d Cir. 2007)......................................................................15

*McIntire v. China Mediaexpress Holdings, Inc.,*
    927 F. Supp. 2d 105 (S.D.N.Y. 2013).....................................................14

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund,*
    575 U.S. 175 (2015)...................................................................................12

*Pub. Employees' Ret. Ass'n v. Deloitte & Touche LLP,*
    551 F.3d 305 (4th Cir. 2009) .....................................................................3

*Schleicher v. Wendt,*
    618 F.3d 679 (7th Cir. 2010) ...................................................................14

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
    551 U.S. 308 (2007)............................................................................ 1, 3-4

**Statutes**

15 U.S.C. § 78u–4(b)(3)(A) ................................................................................1

**Other Authorities**

Andrew Brown and Thad Moore, *Insight that would've alerted problems with nuclear project scrubbed from audit two years ago*, THE POST AND COURIER (Nov. 22, 2017) .........2

Complaint, *In re SCANA Corp. Securities Litig.*, 3:17-cv-2616-MBS (D.S.C. Sep. 27, 2017), ECF No. 1 ...............................................................................................1

Federal Rule of Civil Procedure 8 ......................................................................1

Federal Rule of Civil Procedure 9(b) .................................................................1

Federal Rule of Civil Procedure 12(b)(6) ..........................................................1

Information, *United States v. Byrne*, No. 3:20-cr-00335 (D.S.C. June 8, 2020), ECF No. 1 .........2

Local Civ. Rule 7.07 (D.S.C.) ............................................................................1

Local Civ. Rule 7.08 (D.S.C.) ............................................................................1

Plea Agreement, *United States v. Byrne*, No. 3:20-cr-00335 (D.S.C. June 8, 2020), ECF No. 2 ...2

Defendants Deloitte & Touche, LLP ("Deloitte") and Deloitte LLP (collectively, "Defendants"), under Local Civ. Rules 7.07 and 7.08 (D.S.C.), Rules 8, 9(b), and 12(b)(6) of the Federal Rules of Civil Procedure, and the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u–4(b)(3)(A), hereby submit this Reply ("Reply") to Lead Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss ("Opposition") and request that this Court grant a hearing on their Motion to Dismiss.  While Defendants recognize that replies to responses are generally discouraged in this District, Defendants are compelled to submit this brief Reply, in accordance with this Court's Scheduling Order, to address arguments in the Opposition that mischaracterize and misconstrue both Defendants' arguments and the relevant law.

## ARGUMENT

I.     **PLAINTIFFS DO NOT SATISFY THE *TELLABS* STANDARD FOR PLEADING SCIENTER.**

A.     **Plaintiffs Plead No Facts Giving Rise to a Strong Inference that Deloitte Engaged in Intentional Fraud or Misconduct, or that it Failed to Conduct Any Audit at All.**

More than three years ago, a group of investors filed a putative securities class action against SCANA Corporation and its management (collectively, the "SCANA Defendants") for alleged securities fraud (hereinafter, "*In re SCANA*").  *See* Complaint, *In re SCANA Corp. Securities Litig.,* 3:17-cv-2616-MBS (D.S.C. Sep. 27, 2017), ECF No. 1.  In that case, this Court found that the plaintiffs' allegations that the SCANA Defendants made false and misleading statements regarding the progress and oversight of the Nuclear Project were sufficient to allege a claim against them under federal securities laws.  *See In re SCANA*, 2019 U.S. Dist. LEXIS 54176 (D.S.C. Mar. 29, 2019).  Deloitte—SCANA's independent, outside auditor—was nowhere even referenced in the *In re SCANA* complaint, let alone in this Court's opinion on the SCANA Defendants' motions to dismiss.  Plaintiffs nonetheless rely on this Court's opinion in that very

1

different case to suggest, inaccurately, that "[t]his Court, of course, [] already answered th[e] question" of what inferences must be drawn *against Deloitte*. (Opp. at 2.)

The differences between this case and *In re SCANA* are enormous. As Plaintiffs acknowledge, the SCANA Defendants—the company itself and an array of insiders—are alleged to have engaged in a massive deception of SCANA's investors and its regulator related to the timing of completion of the Nuclear Project. Plaintiffs' preliminary statement quotes a South Carolina state official as follows: "This is a cover up. This is deception at its core. The bottom line is they [the SCANA Defendants] lied to everyone and they did it intentionally."[1] And Plaintiffs concede further that, to date, at least one SCANA senior executive pled guilty to that deception. (*See id.* at 11.) That executive, former SCANA Vice President Steve Byrne, pled guilty to making "false and misleading statements to the PSC, the ORS, the South Carolina State Government, the media, and to SCANA's customers" and "bur[ying]" the Bechtel Report "under disingenuous representations of attorney client privilege" in furtherance of a criminal conspiracy.[2]

---

[1] (Opp. at 3 (quoting Andrew Brown and Thad Moore, *Insight that would've alerted problems with nuclear project scrubbed from audit two years ago*, THE POST AND COURIER (Nov. 22, 2017), https://www.postandcourier.com/business/insight-that-wouldve-alerted-problems-with-nuclear-project-scrubbed-from-audit-two-years-ago/article_691272a4-cf0f-11e7-a289-bf59c8d8d969.ht ml).) Notably, the "audit" referred to in this article is Bechtel's assessment of the Nuclear Project schedule, not Deloitte's audits of SCANA's financial statements and internal controls over financial reporting.

[2] As acknowledged by Plaintiffs, SCANA executive Steve Byrne "pled guilty to conspiracy to commit mail fraud and wire fraud." (Opp. at 11 (citing Information, *United States v. Byrne*, No. 3:20-cr-00335 (D.S.C. June 8, 2020), ECF No. 1 ¶ 1) (the "Byrne Criminal Information").) Importantly, the document cited by Plaintiffs—the Byrne Criminal Information, to which he pled guilty—charges Byrne with making "false and misleading statements to the PSC, the ORS, the South Carolina State Government, the media, and to SCANA's customers" and "bur[ying]" the Bechtel Report "under disingenuous representations of attorney-client privilege" in furtherance of a criminal conspiracy. Information, *United States v. Byrne*, No. 3:20-cr-00335, ECF No. 1 at 6-7, 8, ¶ 28. As the very next docket entry reveals, Byrne agreed to waive indictment and pled guilty to conspiracy to commit mail and wire fraud. *See* Plea Agreement, *United States v. Byrne*, No. 3:20-cr-00335 (D.S.C. June 8, 2020), ECF No. 2 at 1, ¶ 1.

Rather than grapple with how the **SCANA Defendants'** alleged criminal deception and lies impact a claim against SCANA's **independent auditors**, Plaintiffs simply assume that such deception should be sufficient to sustain claims against an entirely different defendant. Plaintiffs never contend with the heavy burden mandated by the PSLRA in order to plead scienter against independent auditors such as Deloitte. Under Supreme Court precedent, Plaintiffs are required to come forward with **facts** that would support "an inference of scienter [on the part of Deloitte that] must be more than merely plausible or reasonable--**it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent**." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007) (emphasis added). As applied to auditors, *Tellabs* requires facts supporting an inference that the auditor either knowingly engaged in fraud, or that the auditor engaged in no audit at all. (*See, e.g.*, Opp. at 13.) Facts establishing an inference of negligence—which the Complaint fails to plead in any event—are insufficient to state a claim against an auditor under Section 10(b). *See, e.g.*, *Pub. Employees' Ret. Ass'n v. Deloitte & Touche LLP*, 551 F.3d 305, 313 (4th Cir. 2009) (dismissal proper where "the inference that defendants acted innocently, or even negligently, [is] more compelling than the inference that they acted with the requisite scienter").

Importantly, Plaintiffs never allege specific *facts* explaining why Deloitte would have abdicated its responsibility to properly conduct an independent audit of SCANA's financial statements. Indeed, Plaintiffs' only attempt to explain such alleged misconduct is to cite routine facts applicable to virtually every financial statement audit; namely, that Deloitte received fees for its audit work and had a longstanding audit relationship with SCANA. (*See* Opp. at 26 n.23.) But that is plainly insufficient to plead a compelling inference of scienter under *Tellabs*. As explained by one of the authorities on which Plaintiffs themselves rely, "to infer scienter from the mere fact

that an auditor received compensation for professional services would subject every independent auditor to suit and effectively abolish the requirement, as against professional defendants in a securities fraud action, of pleading facts which support a strong inference of scienter." *In re MicroStrategy, Inc. Sec. Litig.*, 115 F. Supp. 2d 620, 655 (E.D. Va. 2000) (internal citations and quotation marks omitted) (cited at Opp. at 26 n.23). The most reasonable inference is not that Deloitte acted recklessly or intentionally with respect to the alleged fraud. Rather, the far more compelling inference from Plaintiffs' own allegations is that the SCANA Defendants concealed the truth about the Nuclear Project's schedule from Deloitte, just as they allegedly hid the truth from regulators and investors. Under *Tellabs*, that inference alone requires dismissal.

**B.    Plaintiffs' Allegations Do Not Give Rise to a Strong Inference that Deloitte Possessed the Bechtel Report Prior to Conducting its Audits.**

Plaintiffs rely heavily on the allegation that Deloitte was aware of the "Bechtel Report" before Deloitte issued its audit opinions. Plaintiffs highlight the importance of this allegation in their effort to plead scienter when they state: "[h]ere, the statute of limitations only began to run when Deloitte's knowledge of the Bechtel Report ***and, therefore, scienter***, became publicly known in October 2018." (Opp. at 50 (emphasis added).) In other words, to avoid dismissal on statute of limitations grounds, Plaintiffs must accept that any allegations concerning scienter that were publicly known prior to November 2017—two years before Deloitte was first sued—are *insufficient* to establish scienter. (*See* Mot. to Dismiss, Argument Section II at 45-48, ECF No. 47.) Plaintiffs therefore search for an allegation that postdates November 2017, and implicitly deny that earlier facts are themselves sufficient to create a compelling basis for inferring scienter. But the consequence of Plaintiffs' position is that if Plaintiffs' allegations concerning knowledge of the Bechtel Report do not create a compelling basis for inferring scienter, then Plaintiffs' claim must be dismissed for inadequately pleading scienter.

Plaintiffs' allegations concerning the Bechtel Report turn on whether it is more plausible than not that Deloitte had possession of the Bechtel Report at the time of its audits—as opposed to some later point in time.  Unfortunately for Plaintiffs, the opposite inference is much more plausible, particularly when the full transcript of Jimmy Addison's testimony, referenced in the Complaint, is considered.  Plaintiffs' Opposition provides *no response* to the portion of the testimony quoted in Defendants' opening brief in which Addison stated plainly that *he did not know* whether Deloitte was aware of the Bechtel Report at the time that Deloitte issued its audit opinions:

> **Q.**    **Okay. So do you know now whether Deloitte – when Deloitte became aware of the results of the Bechtel assessment?**
>
> **A.**    **I do not know the answer to that.**

(Ex. C to Mot. to Dismiss, Addison Dep. 99:10-13 (emphasis added).)  Rather than address this testimony and explain how it supports their contention that Deloitte possessed the Bechtel Report at the time of its audits, Plaintiffs simply ignore it altogether.  But Plaintiffs cannot survive a motion to dismiss by selectively citing a transcript outside the Complaint and then asserting that their hand-picked quotations give rise to the required strong inference of scienter, just by ignoring the testimony that is directly on point and contrary to Plaintiffs' strained interpretation of the remainder of the testimony.

That is all the more true because even the portion of Addison's testimony that Plaintiffs choose to cite does not support the required inference.  Addison testified that Deloitte had "*gone back* with their local team and their national team and reviewed all the disclosures at the point in time that they were made, and read this document [the Bechtel Report].  They did not see any gaps in the disclosure at the time they were made."  (Opp. at 16 (emphasis omitted) (quoting Addison Dep. 98:1-5).)  Addison's testimony that Deloitte had "gone back" to look at the disclosures clearly

implies that the Bechtel Report was only known to Deloitte after the disclosures had been made. (*See id.*; *see also* Ex. C to Mot. to Dismiss, Addison Dep. 96:18-22 (Addison also testified earlier in the deposition that Deloitte had "gone back and looked at it completely.").)  Addison explained that he had these conversations with Deloitte "[s]ometime obviously post abandonment," (Ex. C to Mot. to Dismiss, Addison Dep. 97:11-3), and that Deloitte was engaged in this analysis for the purpose of assessing whether Deloitte could, after the public revelation of the Bechtel Report, "rely on management's representations" (*id.* at 98:17-99:1).  Notably, Addison claimed that even he was not aware of the Bechtel Report findings at the time they were made.  (*Id.* at 96:12-22.)  Addison's testimony simply does not support any inference that Deloitte knew the content of the Bechtel Report at the time of its audits.  The portion of Addison's testimony that Plaintiffs omitted from their complaint and ignored in their opposition brief makes this clear.

Beyond the Addison transcript, Plaintiffs rely on a September 21, 2015 email in which SCANA Controller James Swan IV wrote to other SCANA—*not Deloitte*—personnel:  "FYI – Deloitte will be asking about whether (or why not) we mention the Bechtel consulting engagement . . . in the next 10-Q.  If Santee ends up mentioning it, they may feel strongly that we should too." (Compl. at 114-15, ¶ 306; *see also* Ex. D to Mot. to Dismiss.)  This email refers to the existence of the ongoing Bechtel *engagement*; it says nothing at all about Deloitte already possessing a copy of the Bechtel Report.  Indeed, the email cannot plausibly be read to suggest that Deloitte had a copy of the Bechtel Report because, by its very terms, the email was sent while Bechtel was doing its work, before any Bechtel Report existed, and references only an "engagement."  (*Compare* Mot. to Dismiss at 30-32 *with* Opp. at 13-15.)

Recognizing their failure to plead a strong inference that Deloitte possessed the Bechtel Report at the time it issued its audit opinions, Plaintiffs now engage in further sleight of hand,

arguing that mere awareness of the *engagement* by SCANA of Bechtel—but not of Bechtel's findings or conclusions—is somehow sufficient to plead scienter. But Plaintiffs' new scienter theory—which was not pleaded in the Complaint—is misguided and without basis. Indeed, far from giving rise to a strong inference of scienter, mere awareness of the Bechtel engagement— even assuming it to be true—gives rise to precisely the *opposite* inference; that is, if Deloitte believed SCANA was earnestly trying to evaluate the progress of the Nuclear Project with assistance from a third party, Deloitte would have every reason to believe that SCANA was acting responsibly—not that it was perpetrating some sort of fraud. To be clear, SCANA's management never provided Deloitte with a copy of the Bechtel Report when it was issued, nor did it tell Deloitte anything about its content. Moreover, at the time it was issued and for years afterwards, SCANA's then-management maintained that the Bechtel Report was created at the direction of counsel and, thus, protected from disclosure by the attorney-client privilege and work product doctrine. That privilege assertion ultimately failed, and this Court has already noted the allegations from civil plaintiffs and regulators that SCANA's management manufactured attorney-client privilege and work product claims as a basis to shield the Bechtel Report from regulators and investors. *See In re SCANA*, 2019 U.S. Dist. LEXIS 54176 at *13 ("The First Bechtel Report and the Second Bechtel Report were denominated privileged work product prepared in anticipation of litigation."); *id.* at *16 ("The Governor reviewed the document, found no basis for attorney-client privilege or confidentiality . . . ."); *id.* at *38 ("Plaintiffs also allege that Defendants fabricated a claim of privilege over Bechtel's work . . . ."). Accepting Plaintiffs' allegations as true, the fairest and most logical inference is that SCANA used privilege claims to hide the Bechtel Report from Deloitte just as it did so from investors, regulators, and the general public.

**C.    Plaintiffs' Other Allegations Fail to Plead a Strong Inference of Scienter.**

As explained above, in order to avoid dismissal on statute of limitations grounds, Plaintiffs effectively concede that their allegations unrelated to the Bechtel Report are insufficient to plead scienter.  (*See* Mot. to Dismiss, Argument Section II at 45-48, ECF No. 47.)  But even setting that insurmountable problem aside, Plaintiffs' other allegations, on their own terms, do not give rise to the requisite strong inference of scienter compelled by the PSLRA.

**1.    Plaintiffs' Allegations Concerning the PSC Undermine Any Inference that Deloitte Acted with Scienter.**

Plaintiffs assert that information SCANA provided to its primary regulator, the PSC, gives rise to the required strong inference of scienter.  (*See, e.g.*, Opp. at 26.)  The PSC is the regulatory body specifically responsible for regulating utilities such as SCANA, and the PSC—*not Deloitte*—had the statutory authority to approve the construction schedules that SCANA submitted to the PSC, including multiple revisions to those schedules based on SCANA's submissions to the PSC describing delays in the Nuclear Project schedule.  (*See, e.g.*, Compl. at 14, 21 ¶¶ 33, 60.)  While the PSC was expressly responsible for approving SCANA's rate hikes and considering the reasonableness of its schedules, Deloitte was responsible for conducting financial audits of SCANA's financial statements and was never engaged to do any kind of audit of SCANA's rate hikes or its proposed construction schedule.   Thus, while SCANA's scheduling issues and justifications for extensions of the completion dates were the key issues in the PSC's regulatory reviews and evaluations, that information was not the focus of Deloitte's financial statement

audits.[3]   Moreover, the Complaint asserts—as did the allegations against the SCANA Defendants—that the SCANA Defendants misled the PSC.   These allegations are based on information discovered during the course of subsequent criminal and forensic investigations, which is well outside the bounds of the kind of information examined by outside auditors performing a financial statement audit.

Plaintiffs' reliance on these allegations to plead Deloitte's scienter falls flat.  Indeed, the opposite inference is far more plausible: to the extent the PSC was provided with what it believed was convincing support for management's timetable for the Nuclear Project, the only fair inference is that the same information was likewise provided, and convincing, to Deloitte and that the SCANA Defendants, who were so intent on misleading the PSC—and a host of other regulators— misled Deloitte as well.

The same holds true for the "Special Audits" allegedly conducted by Deloitte.  Plaintiffs assert that in "its Special Audits throughout the Class Period, Deloitte tested the Nuclear Project's

_____

[3] Plaintiffs acknowledge, as they must, that "SCANA petitioned the PSC for **nine** rate hikes, each time delaying the expected completion date for the Nuclear Project," that in making "these requests, SCANA represented that it would exercise close oversight over the Nuclear Project," and that "[t]he PSC, in approving each rate hike, relied on SCANA's representations."  (Opp. at 26) (emphasis in original).  Plaintiffs allege that SCANA was required "to submit [to the PSC], among other things, the construction schedule, the capital costs and schedule for incurring them, the selection of principal contractors and suppliers, the proposed rate design used in formulating revised rates, and the revised rates that the utility intends to put in place."  (Compl. at 18, ¶ 47.) Furthermore, Plaintiffs allege that SCANA was required to "file quarterly reports" with the PSC "that detailed the progress of construction on the new nuclear units, the costs of the project, and the scheduled completion dates for the new units."  (*Id.*)  The PSC then "held public hearings on SCANA's rate petitions," during which SCANA and Santee Cooper representatives provided sworn testimony regarding, inter alia, the cause of construction delays, justifications for extensions to the construction schedule, and assurances regarding their oversight of the Nuclear Project.  (*See, e.g.*, *id.* at 14, 19, 54 ¶¶ 33, 53, 135.)  Indeed, as late as November 9, 2016, the PSC found that the evidence and testimony submitted by SCANA merited a revised construction schedule and a finding "that 'the evidence of record justifies a finding that the changes are not the result of imprudence on the part of' SCANA.'"  (*Id.* at 60, ¶ 157.)

9

costs and schedule to determine whether they were presented fairly in accordance with GAAP."
(Opp. at 8 (citing Compl. at 110, ¶ 297).)  While Plaintiffs clearly seek to imply that Deloitte was
auditing the construction progress of the Nuclear Project, the very paragraph of the Complaint on
which Plaintiffs rely pleads only that the Special Audits were audits "of the Nuclear Project's
*costs*." (Compl. at 110, ¶ 297 (emphasis added).)  The issue of costs is relevant to a financial
statement audit, but it says nothing at all about progress to completion of the project because an
accounting of costs—*i.e.*, properly reflecting when they were incurred—can be correct irrespective
of whether the project meets a specified timeline.   Nowhere in the Complaint have Plaintiffs
alleged facts showing that Deloitte made any statement about whether SCANA was "on track" to
complete the Nuclear Project on schedule—an undertaking that would be very far afield from an
opinion on the company's accounting in its financial statements, and one for which SCANA
retained separate experts like Bechtel.  Nor does the Complaint allege that Deloitte was required
to, or was engaged to, question the PSC's prudency determinations made pursuant to the PSC's
statutory authority.  Simply put, Plaintiffs seek to conflate construction progress reviews—on
which independent auditors do not opine—with financial statements—on which auditors do opine.
Misstating Deloitte's role is hardly a sufficient basis for a strong inference of scienter.

### 2.     Plaintiffs Allegations are Classic—and Impermissible—"Fraud by Hindsight."

Plaintiffs suggest that Deloitte's awareness of potential delays constitutes a red flag even
though Deloitte was auditing financial statements that included a schedule that itself had been
revised to reflect expected delays.  Thus, Plaintiffs ignore that, at the time of its 2016 10-K,

SCANA had already informed the PSC and Deloitte that it was adjusting the schedule to address those potential delays.  (*See, e.g.*, *id.* at 168, ¶ 438.)

Plaintiffs' allegations are impermissible "fraud by hindsight" pleading.  *See, e.g.*, *Fidel v. Farley*, 392 F.3d 220, 231 (6th Cir. 2004); *Iowa Pub. Employee's Ret. Sys. v. Deloitte & Touche LLP*, 919 F. Supp. 2d 321, 334 (S.D.N.Y. 2013).  Plaintiffs conclude that Deloitte was aware (and hid) that it would be impossible to complete the project on time, simply because Deloitte (and the public) were aware of delays in the construction schedule—as SCANA itself disclosed multiple times to the PSC in seeking revised approvals, and as SCANA disclosed in the 2016 10-K.  But the more reasonable inference is that the mere fact of delays should not have led Deloitte (or anyone else) to conclude that the Nuclear Project could never be completed on time, particularly in light of the PSC's prudency determinations.

Notably, Plaintiffs do not—and cannot—allege that the purported "whistleblower," Carlette Walker ("Ms. Walker"), told Deloitte that the schedule was unachievable.  Furthermore, Plaintiffs ignore the fact that Ms. Walker testified to the PSC in 2015 that the productivity factors had been revised based on "decreased productivity experienced on the project" and the modifications and updates were "based upon reasonable and prudent forecasts and support updating the capital cost schedule under provisions of the BLRA."[4]  Ultimately, there is nothing alleged in the Complaint to show that Ms. Walker confessed to Deloitte that her testimony to the

---

[4] Direct Testimony of Carlette L. Walker (Corrected Version), PSC Docket No. 2015-103-E at 12:2, 37:1.    Ms. Walker's testimony is publicly available on the PSC's website at https://dms.psc.sc.gov/Attachments/Matter/761b2171-b739-4d6e-8de0-aa4faaa8d0af.

PSC was false, or that she had any inclination to do so—in stark contrast to her PSC testimony—at the time of Deloitte's audits.[5]

### 3. The Absence of a Restatement Undermines any Suggestion That Deloitte Performed "No Audit at All."

Finally, Plaintiffs are wrong in arguing that the lack of a restatement of SCANA's financial statements does not undermine an inference of scienter. Numerous cases stand for the proposition that the lack of a restatement of a company's financial statements weakens the assertion that an auditor performed "no audit at all." *See, e.g.*, *Iron Workers Local 16 Pension Fund v. Hilb Rogal & Hobbs Co.*, 432 F. Supp. 2d 571, 588 (E.D. Va. 2006) (allegations of GAAP violations weakened by the fact that "under the scrutiny of industry regulators, [the audited company] ha[d] not restated its earnings during the Class Period and neither the SEC nor any other entity ha[d] called for a restatement"); *Fidel*, 392 F.3d at 231-34 (dismissing securities fraud claim against auditor, noting lack of restatement of the subject financial statements undermines scienter); *In re KLX, Inc. Sec. Litig.*, 232 F. Supp. 3d 1269, 1282 (S.D. Fla. 2017) (citing *Druskin v. Answerthink, Inc.*, 299 F. Supp. 2d 1307, 1325 (S.D. Fla. 2004) for the proposition that the "lack of restatement undermines scienter").

Plaintiffs seek to deflect this argument by asserting that no restatement occurred because of the merger between Dominion Energy, Inc. ("Dominion") and SCANA. (*See* Opp. at 43.) The merger, however, did not occur for *over a year* after SCANA announced that it was abandoning the Nuclear Project. (Compl. at 159-60, ¶ 419; 171, ¶ 440.) During that time, SCANA was under intense regulatory scrutiny, as Plaintiffs have alleged. (*See, e.g.*, *id.* at 131-54, ¶¶ 348-405.) And

---

[5] Just as Plaintiffs cannot show scienter, they also cannot show that Deloitte subjectively disbelieved its audit opinions as required under *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175 (2015). (*See* Mot. to Dismiss, Argument Section I.B.3.i. at 19-23, ECF No. 47.)

yet, despite that intense regulatory scrutiny, at no point did SCANA restate its financial information, which clearly indicates it did not believe them to be in error.

## II.    PLAINTIFFS HAVE NOT PLAUSIBLY ALLEGED LOSS CAUSATION, PARTICULARLY REGARDING ALLEGED LOSSES AFTER JULY 27, 2017.

Just as Plaintiffs have not adequately pleaded scienter, they also have not adequately pleaded loss causation, which is a fatal defect requiring dismissal. *See, e.g., Amorosa v. Ernst & Young LLP*, 682 F. Supp. 2d 351 (S.D.N.Y. 2010); *In re Witness Sys.*, Civil Action No. 1:06-CV-1894-CC, 2008 U.S. Dist. LEXIS 109173 (N.D. Ga. Mar. 31, 2008); *see also Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462 (4th Cir. 2011) (affirming district court's denial of leave to amend as futile where proposed pleading did not adequately allege loss causation and, thus, failed to state a claim). Plaintiffs' Complaint is based on a theory that Deloitte misled the market about the risk that SCANA would not meet the completion dates for the Nuclear Project and, consequently, would not be able to receive tax credits. (*See, e.g.,* Opp. at 46.) Yet the Complaint itself *admits* that this purported risk was revealed to the market on July 27, 2017, when:

> SCANA and Santee Cooper announce[d] that (i) Toshiba's agreement to honor its $2.168 billion parental guarantee will not be sufficient, as the costs of the two Units will "materially exceed" prior estimates, and (ii) *the Nuclear Project will not be completed by 2021, "the current deadline for SCE&G to gain production tax credits for completing the reactors."*

(Compl. at 193-94, ¶ 476 (emphasis added); *see also id.* at 128, ¶ 340 (alleging SCANA and Santee Cooper revealed that "the reactors would not be complete in time to receive the planned tax credits" and that the Nuclear Project was "$2.5 billion to $3.5 billion over budget and several years behind schedule").)

From a loss causation standpoint, this admission is fatal for the vast majority of the alleged losses, which postdate July 27, 2017. With SCANA having disclosed in July 2017 that the Nuclear Project will not be completed by 2021, that fact is already presumed to be factored into the

13

company's stock price.[6]  As a matter of law, no decline in SCANA's securities' prices following

that date could have been caused by Deloitte's alleged failure to disclose a fact that was already

disclosed.  *See, e.g.*, *Katyle*, 637 F.3d at 473 ("Corrective disclosures must present facts to the

market that are . . . publicly revealed for the first time, because, 'if investors already know the

truth, false statements won't affect the price.'") (quoting *Schleicher v. Wendt*, 618 F.3d 679, 681

(7th Cir. 2010)); *In re Maximus, Inc. Sec. Litig.*, Civil Action No. 1:17-cv-0884 (AJT/IDD), 2018

U.S. Dist. LEXIS 146068, at *53 (E.D. Va. Aug. 27, 2018) (dismissing Section10(b) claim for

failure to plead loss causation where, *inter alia*, the alleged disclosures merely "reflect[ed] the

same performance risks, issues, and problems as those disclosed in" previous statements).

As to the other allegedly corrective disclosures, Plaintiffs cannot adequately plead loss

causation against *Deloitte* by citing myriad disclosures made *by SCANA* that do not relate to

Deloitte's allegedly fraudulent audit opinions.  Rather, Plaintiffs' pleading as to loss causation in

this case must turn on corrections of purported misstatements made by Deloitte—i.e., *Deloitte's*

*opinions*—which, importantly, were solely about SCANA's financial statements, the latest of

which was made on February 24, 2017, and which did not cover or endorse *any* of SCANA's other

statements to the public.[7]

---

[6] Defendants accept Plaintiffs' efficient market allegations only for the purposes of the Motion to
Dismiss.

[7] For avoidance of doubt, the only potentially actionable statements were made by Deloitte &
Touche, LLP, the entity that issued the relevant audit opinions.  Despite Plaintiffs' arguments to
the contrary, their claim against Deloitte LLP should be dismissed on the independent ground that
Plaintiffs have failed to allege that Deloitte LLP made any statement at all.  *See, e.g.*, *Janus Capital
Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011) ("For purposes of Rule 10b-5, the
maker of a statement is the person or entity with ultimate authority over the statement, including
its content and whether and how to communicate it."); *McIntire v. China Mediaexpress Holdings,
Inc.*, 927 F. Supp. 2d 105, 137-38 (S.D.N.Y. 2013).  The sole case cited by Plaintiffs—*In re
Parmalat Sec. Litig.*, 375 F. Supp. 2d 278 (S.D.N.Y. 2005)—predates the Supreme Court's *Janus*
decision and is no longer good law.  *See McIntire*, 927 F. Supp. 2d at 137 n.11 (noting that
"*Parmalat* preceded *Janus*" and declining to apply same).

Finally—and relatedly—Plaintiffs fail to articulate what damages Deloitte proximately caused as compared to what damages SCANA proximately caused. Indeed, Plaintiffs disavow any requirement to plead that *Deloitte's* conduct caused their purported losses. This omission is likewise fatal to Plaintiffs' attempts to plead loss causation against Deloitte as to all of the corrective events proffered in the Complaint, because Plaintiffs make no effort to plead how the alleged disclosures relate back to Deloitte's opinions—as opposed to SCANA's disclosures. *See, e.g., Katyle*, 637 F.3d at 473 ("The disclosure must '*at least relate back to the misrepresentation* and not to some other negative information about the company.'") (emphasis in original) (quoting *In re Williams Sec. Litig. - WCG Subclass*, 558 F.3d 1130, 1140 (10th Cir. 2009)); *Lattanzio v. Deloitte & Touche LLP*, 476 F.3d 147, 158 (2d Cir. 2007) (dismissing complaint where the "[p]laintiffs ha[d] not alleged facts to show that Deloitte's misstatements, among others (made by [the audited company]) that were much more consequential and numerous, were the proximate cause of [the] plaintiffs' loss; nor ha[d] they alleged facts that would allow a factfinder to ascribe some rough proportion of the whole loss to Deloitte's misstatements") (citation omitted). Thus, Plaintiffs have failed to adequately plead loss causation for this reason as well.

## <u>CONCLUSION</u>

For these reasons, Defendants respectfully request that the Court dismiss the Complaint with prejudice and without leave to amend. Plaintiffs' contingent request for leave to amend in the footnote to the conclusion section of their Opposition should be denied because it has not been properly made as a motion before this Court. *See, e.g., Cozzarelli v. Inspire Pharm., Inc.*, 549 F.3d 618, 630-31 (4th Cir. 2008) (affirming the district court's denial of the plaintiffs' request for leave to amend where they requested leave in a footnote of their response to the defendants' motion to dismiss, but never filed a motion to amend or a proposed amended complaint); *see also ACA*

*Fin. Guar. Corp. v. City of Buena Vista*, 917 F.3d 206, 218 (4th Cir. 2019) (declining to "follow other circuits which, according to [the plaintiffs'] interpretation, find that requests made in opposition memoranda constitute a proper motion to amend").

Respectfully submitted,

_s/Christopher A. Ogiba_
Christopher A. Ogiba, Fed. ID No. 9042
Lesley A. Firestone, Fed. ID No. 11719
Clinton T. Magill, Fed. ID No. 12459
Moore & Van Allen, PLLC
78 Wentworth Street
Charleston, South Carolina 29401
Telephone:  843-579-7066
Facsimile:  843-579-8749
Email: chrisogiba@mvalaw.com
        lesleyfirestone@mvalaw.com
        clintonmagill@mvalaw.com

Mark A. Nebrig
John A. Fagg, Jr.*
Nader Raja*
Kristen Kenley*
Moore & Van Allen, PLLC
100 North Tryon Street
Suite 4700
Charlotte, North Carolina 28202-4003
Telephone: 704-331-3602
Facsimile:  704-339-5974
E-mails:  marknebrig@mvalaw.com
        johnfagg@mvalaw.com
        naderraja@mvalaw.com
        kristenkenley@mvalaw.com

*pro hac vice applications to be submitted*

Scott A. Edelman
Jed M. Schwartz
Andrew B. Lichtenberg
Milbank LLP
55 Hudson Yards
New York, New York 10001-2163
Telephone: 212-530-5000
Facsimile:  212-530-5219
Email:  sedelman@milbank.com
        jschwartz@milbank.com
        alichtenberg@milbank.com

*Attorneys for Defendants*
*Deloitte & Touche LLP and Deloitte LLP*

Charleston, South Carolina
October 19, 2020