# UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL 98 PENSION FUND, on behalf of itself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DELOITTE & TOUCHE LLP; DELOITTE LLP,<br><br>Defendant. | Case No. 19-cv-3304 |

**LEAD PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR A PROTECTIVE ORDER REGARDING TOPICS 30–34 OF DEFENDANTS' 30(B)(6) DEPOSITION NOTICE AND TO QUASH THE SUBPOENAS OF BRIAN BURROWS AND TODD NEILSON**

# TABLE OF CONTENTS

Introduction ........................................................................................................................ 1

Argument ........................................................................................................................... 2

I.   Defendants Had No Good Faith Basis for their Requests Because they Failed to Conduct
     a Reasonable Inquiry .................................................................................................. 2

II.  The 30(b)(6) Topics are Irrelevant and Disproportionate to the Needs of the Case ................ 7

     A.  The Criminal and Labor Actions Concern Nonparties and are Irrelevant to Class
         Certification ........................................................................................................... 7

     B.  Topics 31 and 33 are Overbroad, Unreasonably Cumulative or Duplicative, and
         Disproportionate .................................................................................................... 11

     C.  Topics 30 and 32 are Legally Irrelevant and Improper .................................................. 12

     D.  Topic 34 is Irrelevant, Overbroad, and Disproportionate ............................................... 12

III. The Nonparty Subpoenas of Mr. Burrows and Mr. Neilson are Irrelevant and
     Disproportional to the Needs of the Case ...................................................................... 13

Conclusion ....................................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*,
　　300 F.R.D. 406 (C.D. Cal. 2014) ............................................................................14

*Atanassova v. Gen. Motors LLC*,
　　No. 20-cv-01728, 2021 WL 3054723 (D.S.C. Jan. 26, 2021) ...................................5

*Burke v. Air Serv Intl., Inc.*,
　　No. 07-cv-2335, 2009 WL 10696211 (D.D.C. Sept. 15, 2009)..................................5

*Cook v. Howard*,
　　484 Fed. Appx. 805 (4th Cir. 2012)........................................................................10

*In re Countrywide Fin. Corp. Secs. Litig.*,
　　273 F.R.D. 586 (C.D. Cal. 2009) ..............................................................................8

*Delgado v. Prudential Ins. Cos. of Am.*,
　　165 F.3d 17 (4th Cir. 1998) .....................................................................................10

*E.E.O.C. v. McCormick & Schmick's Seafood Restaurants, Inc.*,
　　No. 08-cv-984, 2010 WL 2572809 (D. Md. June 22, 2010)....................................12

*Fish v. Air & Liquid Sys. Corp.*,
　　No. 16-cv-496, 2017 WL 697663 (D. Md. Feb. 21, 2017)...............................11, 12

*Gilmore v. Jones*,
　　18-cv-00017, 2021 WL 2709669 (W.D. Va. July 1, 2021) ....................................13

*Lemanik, S.A. v. McKinley Allsopp, Inc.*,
　　125 F.R.D. 602 (S.D.N.Y. 1989) .............................................................................11

*Levie v. Sears, Roebuck & Co.*,
　　496 F. Supp. 2d 944 (N.D. Ill. 2007) ........................................................................9

*Minter v. Wells Fargo Bank, N.A.*,
　　No. 07-cv-3442, 2010 WL 11549367 (D. Md. Aug. 13, 2010)........................10, 14

*Nationwide Mut. Fire Ins. Co. v. Super. Sols., LLC*,
　　No. 16-cv-423, 2017 WL 1632557 (D.S.C. May 2, 2017) .......................................6

*In re NYSE Specialists Secs. Litig.*,
　　240 F.R.D. 128 (S.D.N.Y. 2007) ....................................................................7, 8, 9

*Oppenheimer Fund, Inc. v. Sanders*,
　　437 U.S. 340 (1978).................................................................................................6

ii

*Turner v. Off. Depot, Inc.*,
    No. 18-cv-779, 2019 WL 11277045 (M.D. Ala. Oct. 25, 2019) ...........................................12

*Virginia Dept. of Corrections v. Jordan*,
    921 F.3d 180 (4th Cir. 2019) .........................................................................................12, 14

*Watkins v. Hireright, Inc.*,
    No. 13-cv-1432, 2014 WL 11191092 (S.D. Cal. Feb. 21, 2014)..................................3, 10, 14

*Wellin v. Wellin*,
    No. 13-cv-1831, 2018 WL 3254482 (D.S.C. Feb. 9, 2018)....................................................10

*In re Zetia (Ezetimibe) Antitrust Litig.*,
    481 F. Supp. 3d 571 (E.D. Va. 2020), *vacated and remanded on other
    grounds,* 7 F.4th 227 (4th Cir. 2021) ..................................................................................7, 9

## OTHER AUTHORITIES

Fed. R. Civ. P. 26(g) ............................................................................................................2

Fed. R. Civ. P. 30(b)(6)...............................................................................................11, 18

Fed. R. Civ. P. 45(d)(1)........................................................................................................2

L.R. 37.01 ............................................................................................................................5

6 William B. Rubenstein, *Newberg on Class Actions* § 20:41 (2019)..............................................7

## INTRODUCTION

A response to a motion for a protective order typically includes an explanation of why the discovery sought is relevant, supported by governing case law and the existing record in the case. Not here. Short on law and even shorter on facts, Defendants' response mainly consists of a series of bare questions with no supporting evidence or even explanation of how the answers would be relevant to the claims or defenses at issue. Defendants acknowledge that neither the Fund nor the Fund's representative, Mr. Neilson, are even mentioned in the Indictment or the Labor Complaint. Yet Defendants' response asks questions like this one: "What role, if any, did Mr. Neilson play in the conduct alleged in the Indictment and the Labor Complaint?" Another question asks whether "the Fund's leadership has committed, sanctioned, or benefited from the illegal acts" of a legally distinct union.

As bold as those questions may seem, Defendants admit that answering those questions is not what they are really after. As Defendants candidly put it: "The issue on class certification is not whether the Fund's conduct is suspect in connection with specific activities but whether it can be trusted to adequately represent the interests of the putative class." In other words, Defendants know that the Fund was not involved in any illegal acts. But by asking the Fund questions about it anyway, Defendants contend, they *might* be able to obtain some evidence that bears on the Fund's trustworthiness and credibility. And since the Fund's credibility is relevant to its adequacy to serve as class representative, Defendants reason, they should be permitted to conduct discovery into anything about the Fund's credibility.

But courts have long rejected such attempts to use "credibility" as a loophole around the relevance requirement in the Federal Rules. Because anyone might be subject to attacks on their credibility, courts uniformly recognize that permitting discovery into any credibility-related matter would render the relevance requirement meaningless. That is why courts have always required credibility-related discovery, including precertification discovery, to be subject to the same basic

1

rule of relevance, written as Federal Rule 26(b), which limits discovery only to matters that are "relevant to any party's claim or defense." Indeed, Defendants are unable to identify a single court that has permitted precertification discovery based solely on mere speculation that it *might* yield evidence bearing on a class representative's credibility.

Here, Defendants unsurprisingly fail to show why the unproven conduct of a legally separate nonparty would ever be relevant to the claims or defenses in this case. Instead, Defendants ask this Court to let them go fishing into topics bearing no relationship to the claims and defenses in this action, armed with only speculation and conjecture. The Court should grant Plaintiff's Motion.

## ARGUMENT

### I. Defendants Had No Good Faith Basis for their Requests Because they Failed to Conduct a Reasonable Inquiry

Rule 26(g) requires that every discovery request be signed by counsel, certifying that to the "best of [their] knowledge, information, and belief formed after a reasonable inquiry," the request is "not interposed for any improper purpose." Fed. R. Civ. P. 26(g)(B)(ii); *see also* Fed. R. Civ. P. 45(d)(1) ("A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena."). Defendants' response reveals that not only did Defendants fail to conduct a reasonable inquiry, they apparently conducted no inquiry at all. Indeed, as discussed in further detail below, rather than showing they have a factual basis for their depositions, Defendants rely on mere (and easily disproven) speculation.[1] But even those speculative assertions could have been easily refuted by the most cursory investigation.

---

[1] Indeed, much of Defendants' response consists of a series of "what if" questions without even a scintilla of support. Defs' Br. at 8, 9, 23. *See Watkins v. Hireright, Inc.*, No. 13-cv-1432, 2014 WL 11191092, at *4 (S.D. Cal. Feb. 21, 2014) (rejecting defendant's precertification discovery requests about plaintiff's credibility, because defendant provided the court with only "a series of maybes and what ifs").

Consider, for instance, Defendants' repeated—and flatly incorrect—suggestion that Mr. Neilson may have been "involved in the charged conduct" in the Indictment and Labor Complaint. Defs. Br. 3, 6, 9, 21. In support of this conjecture, Defendants rely on references in the Indictment to various "unnamed individuals" at the Union who were purportedly "involved in the charged conduct and benefitted from it." Defs. Br. 9. Among these individuals, Defendants focus on "Individual No. 4," who Defendants say the Indictment describes as "a long-time employee of the Union." Defs. Br. 5–6. But a closer look shows that's not what the Indictment says at all. Instead, the Indictment alleges that Individual No. 4 began his Union employment "in approximately 2005." Indictment, *United States v. Dougherty, et al.,* No. 19-cr-64, ECF No. 1, at 11 ¶ 35 (Ed. Pa. Jan. 29, 2019). In fact, according to the Indictment, *none* of the "unnamed individuals" identified as Union employees started working *before* 2005. *Id.* ¶¶ 32–40. But that means Mr. Neilson (who Defendants describe as having a "decades-long" history with the Union) could not possibly be one of the unnamed individuals—indeed, Mr. Neilson has worked for the Union for more than two decades, starting well before 2005. Ex. A ("Second Posner Decl.") ¶ 8.

Or consider Defendants' repeated references to the U.S. Department of Labor's notice that the Fund has been classified as being in "Endangered Status." Defs. Br. 3–4, 6. Defendants speculate, again with no support, that the Fund's classification as in Endangered Status might have resulted from "embezzlement or financial misconduct." However, the Indictment *does not allege any misconduct related to the Fund*—making clear that the Fund's Endangered Status is in no way related to anything untoward. Further, Defendants' unsupported supposition betrays a fundamental misunderstanding of the meaning of these notices. Over the last two decades, many (if not most) multiemployer pension plans, like the Fund, have faced declining funding as they take in fewer contributions, while paying increasing benefits. That is because of several factors, including the

3

decline in unionized labor, an aging workforce, and employer shifts to defined contribution plans.[2] When a pension plan's funding level falls below 80 percent, they are classified as being in "Endangered Status" and must adopt a 10-year "funding improvement plan" aimed at restoring the financial health of the plan. Like dozens of similar pension plans, the Board of Trustees of the Fund began implementing a plan in November 2008, but "no changes were required to contributions or benefits because the funding goals were projected to be achieved within the prescribed period." ECF 95-11. The Fund's 10-year funding improvement period began on January 1, 2011, and throughout that time, the Fund was "meeting scheduled progress in accordance with the law." ECF No. 95-3, 95-4 95-5, 95-6, 95-7, 95-8, 95-9, 95-10, 95-11. Indeed, the Fund's financial improvement period ended on January 1 of this year and the Fund is no longer classified as Endangered Status.[3] Second Posner Decl. ¶ 9. Thus, if Defendants would have simply bothered to read the Fund's status notices—the same notices that Defendants relied on and attached as exhibits to their response—they would have learned that their accusations about the Fund's finances were false.

Such blatant factual errors and smears might in some cases be chalked up as mere negligence amid an otherwise reasonable investigation. But here, Defendants appear to have chosen months ago to conduct no investigation at all. Nearly a month before Defendants served their first deposition notices, they served a second request for documents, seeking five categories of documents related to the Criminal and Labor Actions. Second Posner Decl. ¶ 3. Those document requests mirror (word for word) the 30(b)(6) deposition topics that Defendants noticed a few weeks later.

---

[2] *See The History and Structure of the Multiemployer Pension System: Hearing before the Joint Select Committee on Solvency of Multiemployer Pension Plans*, 115th Cong. S. Hrg. 115-638 (2018).

[3] *See* U.S. Dep't of Labor, 2021 Critical, Critical and Declining, Endangered Status Notices, *available at* https://www.dol.gov/agencies/ebsa/about-ebsa/our-activities/public-disclosure/2021-funding-status-notices#2020-c-and-d (last accessed Aug. 31, 2021).

4

ECF No. 94-1. Plaintiff objected to those document requests in their entirety on May 28, raising some of the same arguments it raises here. Posner Decl. ¶ 3. But in the weeks and months since, Defendants have not even tried to obtain the documents they requested more than four months ago—neither seeking to meet and confer with Plaintiff, nor moving to compel, nor seeking an operative extension on the deadline to move to compel, as required by this Court's local rules. *See.* L.R. 37.01. Because Defendants failed to do so, they have forfeited any right to obtain those documents. *See Atanassova v. Gen. Motors LLC*, No. 20-cv-01728, 2021 WL 3054723, at *1 (D.S.C. Jan. 26, 2021) (observing that "[v]irtually all South Carolina district courts have denied motions to compel when they were filed outside the … window.").

In their response, Defendants try to justify their lack of diligence, offering three defenses. Defendants first claim that moving to compel "would have wasted the resources of the parties and the Court," given the then-ongoing dispute about the Fund's status as lead plaintiff. Defs. Br. 20. But that explanation is hardly credible, given that during that same time Defendants told this Court they were actively pursuing their *other* document requests from Plaintiff, as well as from Plaintiff's investment manager and its expert. Defs. Mot. for Hearing, ECF No. 77, at 3 (raising whether "Deloitte will need to conduct discovery targeted toward Floyd—*just as it is doing with Local 98 Pension Fund*") (emphasis added); Second Posner Decl. ¶ 5. Regardless, the Court affirmed that Plaintiff was the appropriate Lead Plaintiff six weeks ago (ECF No. 88), and in the ensuring time, Defendants *still* did not seek to compel or even request to meet and confer with Plaintiff. Second Posner Decl. ¶ 4. Defendants next contend that even if they needed to move to compel, Plaintiff's decision to seek a protective order excused them of that requirement. Defs. Br. 20. But Plaintiff's motion for a protective order targeted only Defendants' improper deposition notice, not their document requests. *Burke v. Air Serv Intl., Inc.*, No. 07-cv-2335, 2009 WL 10696211, at *2 (D.D.C. Sept. 15, 2009) (explaining that Rule 30(b) is "not a substitute for a Rule 34 document request").

5

And in any event, Plaintiff's diligence cannot excuse Defendant's neglect, particularly given that Defendants never requested (let alone obtained) an operative extension that was "confirmed in writing." *Nationwide Mut. Fire Ins. Co. v. Super. Sols., LLC*, No. 16-cv-423, 2017 WL 1632557, at *1–2 (D.S.C. May 2, 2017) (rejecting argument that active negotiations between the parties excused movant from the motion-to-compel deadline because movant had "not shown any legitimate extension confirmed in writing"). Lastly, Defendants contend that if they need to move to compel, they will do so when the Court rules on Plaintiff's motion for a protective order. But even if the Court were to consider such an untimely motion, Defendants could not feasibly obtain any of those documents before October 1, their deadline for opposing Plaintiff's motion for class certification. After all, before Defendants could move to compel, they would (at the very least) have to meet and confer with Plaintiff—which, remarkably, Defendants *still* have not done—a process that could alone take weeks.

In the end, Defendants' behavior does not reflect a negligent attempt to obtain information; instead, it reflects a disinterest in obtaining *any* information—making plain that true purpose behind Defendants' deposition requests is simply to cause delay, to embarrass, or to harass. And as the Supreme Court has instructed,"[i]n deciding whether a request comes within the discovery rules, a court is not required to blind itself to the purpose for which a party seeks information." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 352 n.17 (1978) (explaining that "discovery should be denied when a party's aim is to delay bringing a case to trial, or embarrass or harass the person from whom he seeks discovery").

## II.  The 30(b)(6) Topics are Irrelevant and Disproportionate to the Needs of the Case

### A.  The Criminal and Labor Actions Concern Nonparties and are Irrelevant to Class Certification

Defendants contend (at 26) that the challenged deposition topics—which relate to the Criminal and Labor Actions—are "highly relevant" to that adequacy inquiry.[4] In making that argument, Defendants do not contest (nor could they) that the facts in the Criminal and Labor Actions are irrelevant to the Fund. As Defendants candidly put it: "The issue on class certification is *not* whether the Fund's conduct is suspect in connection with specific activities." Defs. Br. 18 (emphasis added). Defendants claim instead that deposing the Fund about allegations in the Criminal and Labor Actions against a separate legal entity is somehow "directly relevant" to the Fund's "trustworthiness and credibility." Defs. Br. 13. But not every topic relevant to a lead plaintiff's credibility is relevant to its adequacy. Courts uniformly hold that "a court may not find a potential class representative inadequate 'for conduct that does not touch upon the central issues in this litigation.'" *In re Zetia (Ezetimibe) Antitrust Litig.*, 481 F. Supp. 3d 571, 577 (E.D. Va. 2020), *vacated and remanded on other grounds,* 7 F.4th 227 (4th Cir. 2021).[5] Thus, while the honesty and credibility of a class representative is a relevant consideration, courts have been clear that this does not mean that anything goes. Instead, the adequacy inquiry "focuses on improper or questionable conduct arising out of or touching upon *the very prosecution of the lawsuit.*" *Zetia,* 2020 WL 3446895, at *23 (emphasis in original); *accord In re NYSE Specialists Secs. Litig.*, 240 F.R.D. 128, 144 (S.D.N.Y. 2007) (explaining that "considerations of trustworthiness and credibility" are relevant

---

[4] Defendants concede (at 12) that adequacy is the only basis of their discovery requests about the Indictment and Labor Case.

[5] *See also Zetia,* 2020 WL 3446895, at *23 (quoting 6 William B. Rubenstein, *Newberg on Class Actions* § 20:41 (5th ed. Dec. 2019 update)) (noting that adequacy requirement may be endangered where "there exist serious questions about the class representative's credibility and this personal characteristic is *somehow relevant to the litigation*") (emphasis added).

only when they concern "issues in the litigation").[6] A leading treatise puts the point as follows: "Courts either do not permit challenges to adequacy on this basis or allow them only to the degree that the personal characteristics are somehow relevant to the litigation." 1 Newberg on Class Actions § 3:68 (5th ed.) (citing cases). For instance, in *Kline v. Wolf,* the Second Circuit found that the proposed representatives were inadequate because they gave false testimony about the investments at issue in their securities lawsuit—a topic central to the lawsuit. 702 F.2d 400, 401–402 (2d Cir. 1983). In contrast, in *Barenbaum v. Hayt, Hayt & Landau,* the court refused to find that the proposed representative inadequate because of inconsistent testimony about settlement offers, explaining that "liability does not turn on whether it in fact made a settlement offer." No. 18-cv-4120, 2019 WL 4305761, at *13 (E.D. Pa. Sept. 10, 2019). Here, the Criminal and Labor Actions—both involving a completely separate legal entity—have no bearing on the claims and defenses in this case. None of the cases that Defendants cite are to the contrary. Indeed, *Pines Nursing Home v. Rehabcare Group*, the only case that Defendants discuss in any detail, held that the proposed class representative was inadequate because the representative had given "inconsistent and evasive deposition testimony" on issues that were "material" to the case. 14-cv-20039, 2014 WL 12531512, at *4 (S.D. Fla. June 20, 2014). Most critically, the representative gave inconsistent testimony about whether it had listed its fax number in a public database, which would preclude the defendant's liability under the Junk Fax Protection Act, the claim at issue in the case. *Id.* For that reason,

---

[6] Indeed, as Defendants' own cited authority explains (at 18–19), if a class representative's personal characteristics are relevant to adequacy, they are far less likely to be important in a case like this one, because "organizations" (such as the Fund) are "less amenable to a generalization about [their] 'character'" than natural persons. *In re Countrywide Fin. Corp. Securities Litig.*, 273 F.R.D. 586, 604 (C.D. Cal. 2009).[6]

not only was the representative "one of the main witnesses in this case," but its credibility "could be seriously undermined at trial and would materially prejudice other class members." *Id.*[7]

Defendants do not contest (and implicitly concede) that the Fund's credibility could only implicate its adequacy if it concerned the claims or defenses in this case. But apart from repeating the phrase "directly relevant to class certification," Defendants say almost nothing about how deposing the Fund about the challenged topics could *ever* yield evidence about the Fund's credibility that "aris[es] out of or touch[es] upon *the very prosecution of the lawsuit.*" *Zetia,* 2020 WL 3446895, at *23. The most that Defendants can muster is their suggestion, in a single conclusory sentence, that the Criminal Action is relevant because the allegations are "financial in nature."[8] Defs. Br. 18. But Defendants fail to explain (nor could they) how the "financial nature" of the allegations in the Criminal Action are relevant to the securities fraud claims here.  Nor do Defendants cite a single case that supports that proposition, which is hardly surprising given the ample case law rejecting adequacy challenges based on allegations that are similarly "financial in nature."[9] *See, e.g.*, *Levie v. Sears, Roebuck & Co.,* 496 F. Supp. 2d 944, 950 (N.D. Ill. 2007) (refusing

---

[7] The only other case on this point that Defendants cite, *Smyth v. Carter,* also reflects this approach. In *Smyth,* the plaintiffs alleged that the Virginia Department of Social Services violated federal law by denying or reducing their welfare benefits. 168 F.R.D. 28, 30 (W.D. Va. 1996). In finding the proposed representatives to be inadequate, the court noted that one of the proposed representatives had made false statements on her welfare application and the other had "been untruthful" in her dealings with the VDSS. *Id.* at 33. Thus, the court found that as in *Pines Nursing Home,* the representative's credibility problems "might very well harm the interests of the class members they seek to represent." *Id.* at 33–34.

[8] Notably, Defendants do not even bother to make such a tenuous claim about the Labor action.

[9] There was not, as Defendants claim, "comprehensive discovery" into "unproven allegations" in either *In re Diamond Foods Securities Litigation* nor *In re Countrywide Financial Corporation Securities Litigation.* In *Countrywide*, the court refused to find the lead plaintiff (State Fund) inadequate based on allegations that persons formerly affiliated with the State Fund accepted improper payments from placement agents. *Countrywide,* 273 F.R.D. at 603. The court first dismissed those allegations as "largely irrelevant" because the placement agents "appear not to have handled Countrywide investments." *Id.* at 603. Next, the court explained that while such allegations might have some relevance to "personal integrity," organizations like State Fund are "less amenable to a

to find class representative inadequate in securities class action even though the representative had "been sanctioned" for "engaging is deceptive stock transactions").

In the face of this uniform case law, Defendants insist that even though they lack evidence that the Criminal and Labor Actions bear on the Fund's adequacy, they should still be permitted to conduct discovery into those topics because it *might* yield evidence bearing on the Fund's credibility that "*could* bear on the Fund's adequacy." Defs. Br. 21. But Defendants' anything-goes approach to discovery conflicts with the bedrock principle that "mere speculation and conjecture are insufficient grounds for discovery." *Delgado v. Prudential Ins. Cos. of Am.*, 165 F.3d 17 (4th Cir. 1998). Rather, as courts in this district have held, the discovering party "must provide an intelligible explanation of how the requested information may lead to the discovery of admissible evidence in the cases before the court." *Wellin v. Wellin*, No. 13-cv-1831, 2018 WL 3254482, at *9 (D.S.C. Feb. 9, 2018). Consistent with this principle, courts have uniformly rejected discovery requests that, like Defendants' requests here, are based on "mere speculation" and "curiosity" that the information sought "might bear on the class certification factors." *Minter v. Wells Fargo Bank, N.A.*, No. 07-cv-3442, 2010 WL 11549367, at *2 (D. Md. Aug. 13, 2010). Requiring that the discovering party provide a "concrete basis for its request" is critical, courts have explained, so that precertification discovery "does not become a fishing expedition." *Watkins v. Hireright, Inc.*, No. 13-cv-1432, 2014 WL 11191092, at *4–5 (S.D. Cal. Feb. 21, 2014) (rejecting argument that "since 'the

---

generalization about [their] 'character' than natural persons." *Id.* at 604 & n.44. Finally, the court noted that it had "reviewed the submitted deposition transcripts" of the class representatives designated 30(b)(6) witnesses and concluded that they "appear to perform their organizational responsibilities with integrity." *Id.* at 604. Defendants seize on that single sentence to infer that there was "comprehensive discovery" into "unproven allegations." But nothing in the record remotely suggests that was the case. In *Diamond Foods,* as part of the typical process for vetting the lead plaintiff's selection of counsel, the district court requested that the lead plaintiff's motion for appointment of class counsel be accompanied by declarations explaining the due diligence performed to the selection class counsel.  295 F.R.D. 240, 256 (N.D. Cal. 2013).

honesty and credibility of the class representative is relevant to her adequacy,' Defendant must be permitted to conduct discovery regarding Plaintiff's honesty and credibility"). Here, Defendants' reasons for its deposition requests are no different than those that courts have uniformly rejected—requests that are nothing more than speculative assertions that discovery *may* yield relevant evidence with "no intelligible explanation of how that is so." *Cook v. Howard*, 484 Fed. Appx. 805, 813 (4th Cir. 2012). In short, "the requests have every indicia of the quintessential fishing expedition." *Id.*

### B. Topics 31 and 33 are Overbroad, Unreasonably Cumulative or Duplicative, and Disproportionate

Topics 31 and 33 seek the Fund's testimony about its "knowledge" of the Criminal and Labor Actions, unrelated and pending proceedings that Defendants acknowledge involve only nonparties to this litigation. Aside from conclusory assertions that the topics are relevant, Defendants identify only one concrete basis—the Fund's prior statement that it is aware of those (public) proceedings and that neither the government nor Fund management had removed Mr. Burrows from his position—that offers any rationale for exploring the topics in discovery. But if Defendants have questions limited to the veracity of those prior statements—the only plausible basis for relevance—those questions are appropriately answered by the 30(b)(6) deponent under many of the unchallenged deposition topics, including Topic 24 ("Prior representations by [the Fund] or by [the Fund's] counsel in this Class Action"). As a result, Topics 31 and 33 are unreasonably cumulative or duplicative because Defendants have a sufficient opportunity to discover the information from a source that is more convenient and less burdensome. *Fish v. Air & Liquid Sys. Corp.*, No. 16-cv-496, 2017 WL 697663, at *18 (D. Md. Feb. 21, 2017). As to everything else encompassed by Topics 31 and 33, Plaintiff (and this Court) are left to guessing. Fed. R. Civ. P. 30(b)(6) (requiring the noticing party to "describe with reasonable particularity the matters for examination").

## C. Topics 30 and 32 are Legally Irrelevant and Improper

These requests—which cover the "claims asserted" and "allegations" in the Criminal and Labor Actions—are irrelevant and overbroad as written. To begin with, Topics 30 and 32 are not relevant to the claims or defenses in this case. The Fund cannot designate a 30(b)(6) deponent to testify about claims and allegations in unrelated proceedings to which the Fund is not a party and for which the Fund has no knowledge. Defendants' sole rationale for these topics is their speculation that the word "leadership" in the Labor Complaint *might* refer to "Mr. Burrows or Mr. Neilson." Defs. Br. 14. But that "unsubstantiated speculation" which has no relationship to the claims here cannot support discovery. *Lemanik, S.A. v. McKinley Allsopp, Inc.*, 125 F.R.D. 602, 608 (S.D.N.Y. 1989) (speculation that party might have been "implicated" in an alleged fraud was not a "proper purpose of discovery").

## D. Topic 34 is Irrelevant, Overbroad, and Disproportionate

This topic is worded broadly to cover the Fund's knowledge of "*any* other action," in which "*any* director, officer, manager, business manager" with the Fund or the Union "was named as a defendant or received a subpoena related to alleged illegal conduct." Defs. Br. 7 n.1. This topic is stunning in its overbreadth, seeking information about *any* sort of legal proceeding, without regard to a reasonable time frame or scope, and whether relevant or irrelevant to the claims or defenses in this case.[10] "This massive scope alone supports [Plaintiff's] request for a protective order. *Fish*, 2017 WL 697663, at *15. Defendants do not contest that this topic is "broad," but claim that they are "entitled to understand" whether "other senior individuals within the Fund" have been "accused

---

[10] Further, responding meaningfully would invariably require testimony of the Fund's counsel or a proxy prepared by counsel. Thus, an invasion of attorney work product would be inevitable. Under these circumstances, protection is warranted, especially where, as here, other forms of discovery are available to elicit factual evidence in the case. *See, e.g.*, *E.E.O.C. v. McCormick & Schmick's Seafood Restaurants, Inc.*, No. 08-cv-984, 2010 WL 2572809, at *5 (D. Md. June 22, 2010) (granting protective order when "the 30(b)(6) deposition notice on their face seek attorney work product").

of breaching their positions of trust and confidence or otherwise committing crimes or other un-

lawful acts." But again, that unsubstantiated speculation about a topic having no bearing on the

claims here is not a proper basis for discovery. *Turner v. Off. Depot, Inc.*, No. 18-cv-779, 2019 WL

11277045, at *2 (M.D. Ala. Oct. 25, 2019) (granting protective order to bar "unlimited rummaging

in plaintiffs' personnel files" where defendants had neither "brought forward any suggestion of

actual wrongdoing," or shown how it could "connect any such misbehavior … to this litigation")

### III. The Nonparty Subpoenas of Mr. Burrows and Mr. Neilson are Irrelevant and Disproportional to the Needs of the Case

"When discovery is sought from nonparties," the Fourth Circuit has explained, "courts must

give the recipient's nonparty status 'special weight,' leading to an even more 'demanding and sen-

sitive' inquiry than the one governing discovery generally.'" *Virginia Dept. of Corrections v. Jor-*

*dan*, 921 F.3d 180, 189 (4th Cir. 2019). Thus, when considering such subpoenas, the court must

consider: (1) whether the requesting party "need[s]" the information sought, meaning that the in-

formation "likely (not just theoretically) … offer[s] some value over what the requesting party

already has"; (2) whether the requesting party can obtain the same or comparable information "that

would also satisfy its needs" from other sources; and (3) whether the request will impose a "cog-

nizable burden[ ]" on the nonparty. *Id.* at 189–90. Defendants' nonparty subpoenas of Mr. Burrows

and Mr. Neilson satisfy none of these requirements.

*First,* Defendants contend that Mr. Burrows and Mr. Neilson have personal knowledge about

the Criminal and Labor Action. Even if true, Defendants do not "need" this information, because

they concede that the facts of the Criminal and Labor Action are irrelevant to the Fund. *Gilmore v.*

*Jones*, No. 18-cv-00017, 2021 WL 2709669, at *10–13 (W.D. Va. July 1, 2021).

*Second,* Defendants claim that they entitled to "test" the credibility of Messrs. Burrows's and Neilson's prior statements on behalf of the Fund in its declarations and certifications.[11] But again, Defendants can ask the Fund about those statements during the 30(b)(6) deposition. The statements were made on behalf of the Fund, not any particular individual. Defendants thus can obtain the same or comparable information from other more appropriate sources. Defendants suggest that they need to depose Mr. Burrows to seek evidence about Mr. Neilson's credibility, speculating that "Mr. Burrows's supervision and his ability to control Mr. Neilson's livelihood *could well* influence Mr. Neilson in his oversight of this litigation."[12] Similarly, Defendants admit that their only other grounds for deposing Mr. Neilson in his personal capacity are "*hypothetical,*" Defs. Br. 21, supported by only "a series of maybes and what ifs." *Watkins,* 2014 WL 11191092, at *4. Such unsubstantiated speculation cannot support discovery, and regardless, whether the Fund is being appropriately overseen by Mr. Neilson alone can be asked in the 30(b)(6) deposition. See *supra* pp. 9–10.

*Finally,* Defendants contend that the burden on nonparties Messrs. Burrows and Neilson would be "minimal," because it would involve only "sitting for a remote deposition to answer questions about his personal knowledge on a handful of highly relevant topics." But courts

---

[11] Defendants argue that Mr. Burrows's certification has not been "fully superseded as the Fund suggests" because Mr. Neilson's declaration and certification did not "attach a schedule identifying" the Fund's transactions. Defs. Br. 25 n.10. Plaintiff inadvertently did not attach that schedule when it filed Mr. Neilson's certification with the Court, although it was referenced in the filed certification. *See* Second Posner Decl. ¶ 6. That schedule is identical to the one filed with the Fund's initial certification. Further, the transactions on the schedule have been proven by the documentary evidence produced by both the Lead Plaintiff and its outside investment adviser.

[12] Defendants claim that Mr. Neilson's declaration "did not explain that the management-side trustees 'come from the management of companies where Local 98 members worked,' as stated by the Fund's counsel to the Court." Defs. Br. 22 n.8. That is incorrect. Mr. Neilson's declaration explains that the management-side trustees are members of the National Electrical Contractors Association Penn-Del Chapter, naming each of the members, including NECA's Executive Director, Jeff Scarpello. *See* Nat'l Elec. Contractors Assoc., https://neca-pdj.org/about/staff (last visited Aug. 31, 2021)

recognize that "[p]reparing and sitting for a deposition is always a burden, even when documents are not requested, particularly for a non-party." *Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*, 300 F.R.D. 406, 412 (C.D. Cal. 2014). Similarly, when a subpoena is overbroad, as here,  the burden imposed is per se undue. *Jordan*, 921 F.3d at 90 ("A nonparty should not have to do the work of tailoring a subpoena to what the requesting party needs; the requesting party should have done that before serving it."). Those concerns are only heightened in the context of a class action, where the burden of irrelevant discovery falls not just on the named parties, but on the class at large. As one district court from this circuit explained: "[O]ne might say, as defendants suggest, 'no harm, no foul,' that is, the burden of production is slight, so it should be ordered. … [But] the negative effect or the burden is on the class litigation itself, as Newberg has so aptly stated: it distracts from the merits of the case." *Minter,* 2010 WL 11549367, at *5

## CONCLUSION

For these reasons, the Court should grant Lead Plaintiff's Motion.

15

Date: August 31, 2021

Respectfully submitted,

/s/ William Tinkler

William Tinkler (D.S.C. Bar Number 11794)
TINKLER LAW FIRM LLC
154 King Street, Third Floor
Charleston, SC 29401
Tel.: (843) 853-5203
Fax: (843) 261-5647
williamtinkler@tinklerlaw.com

COHEN MILSTEIN SELLERS
& TOLL PLLC
Laura H. Posner
Ji Eun Kim (Jessica)
88 Pine Street, 14th Floor
New York, NY 10005
Tel: (212) 220-2925
Fax: (212) 838-7745
lposner@cohenmilstein.com
jekim@cohenmilstein.com

Steven J. Toll
Jan E. Messerschmidt
Molly J. Bowen
1100 New York Ave. NW, Suite 500
Washington, D.C. 20005
Tel: (202) 408-4600
Fax: (202) 408-4699
stoll@cohenmilstein.com
jmesserschmidt@cohenmilstein.com
mbowen@cohenmilstein.com

*Lead Counsel for Lead Plaintiff and the Proposed Class*

GORDON BALL PLLC
Gordon Ball (TN BPR #001135)
7001 Old Kent Drive
Knoxville, TN 37919
Tel: (865) 525-7028
Fax: (865) 525-4679
gball@gordonball.com

EDWARD D. SULLIVAN LAW OFFICE

16

Edward David Sullivan
PO Box 11714
Columbia, SC 29211
Telephone: (803) 451-2775
Facsimile: (803) 451-2770
Email: esullivan@esullivanlaw.com

DARYL G. HAWKINS LAW OFFICE
Daryl G. Hawkins
1331 Elmwood Avenue, Suite 305
Columbia, SC 29201
Telephone: (803) 733-3531
Facsimile: (803) 799-9202
Email: dgh@dghlaw.net

*Additional Counsel for the Proposed Class*

**CERTIFICATE OF SERVICE**

I certify that on August 31, 2021, I electronically filed this Reply in Support of Motion for Protective Order Regarding Topics 30-34 of Defendants' Rule 30(b)(6) Deposition Notice and to Quash the Subpoenas of Brian Burrows and Todd Neilson using the Court's CM/ECF system. A copy of this filing will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

/s/ William Tinkler
William Tinkler