# Exhibit A

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL 98 PENSION FUND, on behalf of itself and all others similarly situated,<br><br>    Plaintiff,<br>v.<br><br>DELOITTE & TOUCHE LLP; DELOITTE LLP,<br><br>    Defendant. | Case No. 19-cv-3304 |

**SECOND DECLARATION OF LAURA H. POSNER IN SUPPORT OF LEAD PLAINTIFF'S MOTION FOR PROTECTIVE ORDER**

I, Laura H. Posner, declare as follows:

    1.  I am an attorney duly licensed to practice law before all of the courts of the State of New York and am admitted pro hac vice in the above-captioned matter. I am a partner at Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein").

    2.  I make this declaration in support of Lead Plaintiff International Brotherhood of Electrical Workers Local 98 Pension Fund's ("Lead Plaintiff" or "IBEW Local 98 Pension Fund") Motion for Protective Order Regarding Topics 30-34 of Defendants' Rule 30(b)(6) Deposition Notice and to Quash the Subpoenas of Brian Burrows and Todd Neilson ("Motion for Protective Order").

    3.  On April 28, 2021, Defendants served their Second Requests for Production of Documents ("Second RFPs") (attached hereto as Exhibit 1), seeking four categories of documents related to the Criminal and Labor Actions. On May 20, 2021, Defendants served a Notice of Deposition of International Brotherhood of Electrical Workers Local 98 Pension Fund pursuant to Rule 30(b)(6). The 30(b)(6) Notice sought testimony on 34 separate topics, including 5 topics devoted to the

Criminal and Labor Actions, using language that mirrored their document requests from the previous month. Those two sets of requests are as follows:

| **Defendants' Second RFPs** | **Defendants' 30(b)(6) Notice** |
|---|---|
| "All documents relating to the Criminal Action" and "the Labor Action" (Request Nos. 41 & 42) | ""Your knowledge of the Criminal Action" and "the Labor Complaint" (Topics 31 & 33) |
| "All documents relating to the subject matters of the allegations in the Indictment or the Labor Complaint" (Request No. 43) | ""The claims asserted and allegations in the Indictment" and "the Labor Complaint" (Topics 30 & 32) |
| "Documents sufficient to identify any other action, proceeding, litigation, investigation, or inquiry in which any director, officer, manager, business manager, or person holding similar managerial positions with Plaintiff was a defendant, target, person of interest, or respondent, or charged with or accused of any crime, illegal conduct, or unlawful conduct." (Request No. 45) | "Your knowledge of any other action, proceeding, litigation, investigation, or inquiry in which any director, officer, manager, business manager, or person holding similar managerial positions with [Lead] Plaintiff who was a defendant, target, person of interest, or respondent, or charged with or accused of any crime, illegal conduct, or unlawful conduct" (Topic No. 34) |

   4. On May 28, 2021, Lead Plaintiff served Responses and Objections to both Defendants' Second RFPs and its 30(b)(6) notice, refusing to designate a witness or produce documents related to the Criminal and Labor Actions. On June 4, 2021, at Lead Plaintiff's request, the parties met and conferred regarding Lead Plaintiff's objections to the 30(b)(6) Notice and were unable to reach a resolution. But Defendants have not requested to meet and confer on Plaintiff's objections to Defendants' second RFPs and have not moved to compel production of documents responsive to those requests.

   5. During that same time, Defendants continued to pursue their other discovery requests to Lead Plaintiff, its investment manager, and its expert. For instance, Defendants continued to actively pursue their First Request for Production of Documents ("First RFPs") to Lead Plaintiff, including by asking for Lead Plaintiff's consent to extend the motion-to-compel deadline under Local Rule 37.01 for Defendants First RFPs. Most recently, Defendants sought to extend that

deadline to August 4, 2021, three weeks from the Court's entry of the confidentiality order. They also sought to take the deposition of Lead Plaintiff's investment adviser and its expert while the dispute with Floyd was still pending. But Defendants never sought to meet and confer on their Second RFPs, or an extension for the deadline to move to compel on their Second RFPs.

6. On July 2, 2021, Lead Plaintiff filed a new PSLRA certification signed by Mr. Neilson in support of its motion for class certification. ECF No. 86-1. During the filing process, Lead Plaintiff inadvertently did not attach the schedule identifying the Fund's securities transactions. Mr. Neilson's certification, including that schedule, is attached as Exhibit 2 to this declaration.

7. On July 19, 2021, following the Court's Order Regarding Motion to Clarify Case Leadership and the filing of Mr. Neilson's declaration and Local 98 Pension Fund's new PSLRA certification, at Lead Plaintiff's request, the parties met-and-conferred for a second time on Defendants' 30(b)(6) notice. During that meet-and-confer session, Lead Plaintiff advised Defendants that Todd Neilson will be serving as the 30(b)(6) designee. Two weeks later, on August 5, 2021, Defendants served a subpoena of Mr. Neilson in his personal capacity (in addition to deposing him as Lead Plaintiff's 30(b)(6) designee).

8. Mr. Neilson is not "Individual No. 4," referenced in the Indictment. The Indictment describes Individual No. 4 as "an employee of Local 98 beginning in approximately 2005," who "was a member of the Local 98 Executive Committee." Indictment, *United States v. Dougherty, et al.,* No. 19-cr-64, ECF No. 1, at 11 ¶ 35 (Ed. Pa. Jan. 29, 2019). Indeed, none of the unnamed individuals identified in the Indictment are alleged to have been employees of the Union before 2005, *id.* ¶¶ 32–40, describing those individuals as "the kids," a group of Union "employees who regularly performed personal errands and chores at the direction" of the Union's president, John Dougherty, *id.* ¶ 32. Because public records make clear that Mr. Neilson has been an employee of

the Union for more than two decades, Defendants could ascertain that he is not one of the unnamed individuals.

9. The Fund's placement on the "Endangered Status" by the Department of Labor has nothing to do with "embezzlement or financial misconduct." Over the last two decades, many (if not most) multiemployer pension plans, like the Fund, have faced declining funding as they take in fewer contributions, while paying increasing benefits. That is because of several factors, including the decline in unionized labor, an aging workforce, and employer shifts to defined contribution plans. When a pension plan's funding level falls below 80 percent, they are classified as in "Endangered Status," and must adopt a 10-year "funding improvement plan" aimed at restoring the financial health of the plan. As the Fund's public notices show, the Board of Trustees of the Fund began implementing a funding improvement plan in November 2008, but "no changes were required to contributions or benefits because the funding goals were projected to be achieved within the prescribed period." The Fund's 10-year funding improvement period began on January 1, 2011, and throughout that time, the Fund reported in each of its notices that it was meeting scheduled progress in accordance with the law. Indeed, the Fund's financial improvement period ended on January 1 of this year, and the Fund is no longer classified as Endangered Status.

Date: August 31, 2021

*Laura Posner*
_____
Laura H. Posner

# Exhibit 1

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL 98 PENSION FUND on behalf of itself and all others similarly situated,<br><br>　　　　　Plaintiffs,<br><br>vs.<br><br>DELOITTE & TOUCHE LLP; DELOITTE LLP,<br><br>　　　　　Defendants. | Case No. 3:19-cv-3304 |

## DEFENDANTS' SECOND REQUEST FOR PRODUCTION OF DOCUMENTS TO LEAD PLAINTIFF

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Defendants in the above-described consolidated action, by their undersigned attorneys, hereby request the production of all documents described below within thirty (30) days from the date hereof for inspection and copying in accordance with the definitions and instructions set forth below at the offices of Milbank LLP, 55 Hudson Yards, New York, New York, 10001.

## DEFINITIONS

The following definitions shall apply to this request:

1. "Class Action" means *International Brotherhood of Electrical Workers Local 98 Pension Fund et al. v. Deloitte & Touche, LLP et al.*, Case No. 3:19-cv-3304, currently pending in the United States District Court for the District of South Carolina.

2. "Criminal Action" means *United States of America v. John Dougherty, et al.*, Case No. 2:19-cv-00064, currently pending in the United States District Court for the Eastern District of Pennsylvania.

3. "Document(s)" shall be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A), including without limitation, electronic or computerized data compilations. A draft or non-identical copy is a separate document within the meaning of this term.

4. "Indictment" refers to the indictment filed in the Criminal Action (ECF No. 1), and any subsequent superseding indictments.

5. "Labor Action" means *Walsh v. Local 98, International Brotherhood of Electrical Workers*, Case No. 2:21-cv-00096, currently pending in the United States District Court for the Eastern District of Pennsylvania.

6. "Labor Complaint" refers to the Complaint filed in the Labor Action.

7. "Plaintiff", "you", or "your" refer to International Brotherhood of Electrical Workers Local 98 Pension Fund.

**INSTRUCTIONS**

1. The documents requested herein include all responsive documents in your possession, custody, or control.

2. Each document request herein seeks production of each document in its entirety, without abbreviation or redaction, with all non-identical copies and drafts thereof, including any document appended to, included with, incorporated by, or referred to in the document.

3. All documents that in their original form were stapled, clipped, or otherwise attached to other documents should be produced in such form.

4. If any responsive documents are maintained in a file, produce the file folder or container and all labels and notations thereon along with the documents.

5. If any document cannot be produced in full, produce it to the extent possible, specifying the reasons for your inability to produce the remainder and stating whatever

information, knowledge, or belief you have concerning the unproduced portion. Any purportedly privileged document containing non-privileged matter shall be produced with the purportedly privileged portion excised. You shall identify the specific location on each page where any purportedly privileged matter has been excised.

6. All documents should be produced as they are kept in the ordinary course of business or shall be organized and labeled to correspond to the specific paragraph(s) to which they are responsive. If producing the documents requested as they are kept in the ordinary course of business, the integrity and internal sequence of the requested documents within each file or folder shall not be disturbed nor shall the contents of any file or folder be commingled with the contents of another file or folder. All documents should be given a unique number, for example a "Bates" label or similar identifying mark. Please include with each document production a cover letter providing a description of the documents being produced.

7. The document requests herein are continuing. Any response hereto shall be supplemented promptly upon possession or discovery of other or additional information or documents responsive to any request herein.

8. If any documents, or any portion of a document, responsive to this request is withheld by Plaintiff under a claim of privilege, Plaintiff shall, pursuant to Federal Rule of Civil Procedure 26(b)(5), identify the nature of the privilege (including work product) that is being claimed, and if the privilege is being asserted in connection with a claim or defense governed by state law, indicate the privilege rule being invoked. If a portion of a document contains information subject to a claim of privilege, only that portion shall be redacted, and the remainder shall be produced.

9. If there are no documents responsive to a particular request, Plaintiff shall so state in writing.

10. The terms "all", "any", and "each" shall each be construed as encompassing any and all.

11. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the request all responses that might otherwise be construed to be outside of its scope.

12. The use of the singular form of any word includes the plural and vice versa.

13. Electronically stored information should be produced in accordance with the following specifications:

    a. <u>Form of Production</u>. Produce electronically stored information in single-page tiff format (Group IV tiff at 300 dpi) with standard Concordance formatted load file (.dat), including all metadata. Name each tiff file with a unique name matching the Bates number (or similar identifying mark) labeled on the corresponding page. Group every 1000 tiffs into a new folder; do not create a separate folder for each document.

    b. <u>Image Load File</u>. Provide an image load file (Opticon file) that contains document boundaries and page counts.

    c. <u>Document Text</u>. For documents that were originally stored as native electronic files and which do not have redactions, produce the extracted full text (not OCR) from the body of each document in separate document-level *.txt files named for the beginning Bates number of the associated document. Provide OCR text for documents without extracted text

4

available (non- searchable PDFs, *etc.*). Group 1000 document text files per incrementally named "TEXT" directories, separate from image directories. For documents that were originally stored as native electronic files and which have redactions, produce the OCR text from the redacted image(s) associated with each document, in separate document-level *.txt files named for the beginning Bates number of the associated document. Clearly label any redacted material to show the redactions on the tiff image. Also provide a comma-delimited extracted text list file with each document's beginning Bates number along with the path to the associated extracted text/OCR text file.

d. <u>Native Production for Certain File Types</u>. For files that reasonably require viewing in their native format for a full understanding of their content and meaning (including but not limited to Excel, or certain PowerPoint or other special presentation programs or database files), produce the files in native and tiff formats to the extent it is reasonably possible to do so. Name the produced native file with the Bates number on the first page of the corresponding tiff production of the file / document or on the tiff placeholder document. Group native files within incrementally named "NATIVE" directories; separate from images directories.

e. <u>Metadata</u>. Produce extracted metadata for each document in the form of a Concordance load file (.dat), including the following fields (where applicable): Bates range begin, Bates range end, Bates family range begin, Bates family range end, email subject line, file name, email sent date, email

sent time, created date, created time, last modified date, last modified time, author, from, to, CC, BCC, custodian, source and/or source folder, MD5 hash value, and native file path location. Documents should be produced in such fashion as to identify the location of the document and, where applicable, the natural person in whose possession it was found.

14. If, in responding to the requests, you encounter any ambiguities when construing a request or definition, your response shall set forth the matter deemed ambiguous and the construction used in responding.

15. Unless otherwise stated in a specific request, the document requests herein seek documents that were dated, prepared, generated, or received during the time period beginning January 1, 2014 and continuing up until the date of your response to these requests, and every supplemental response (the "Period").

## DOCUMENT REQUESTS

41. All documents relating to the Criminal Action.

42. All documents relating to the Labor Action.

43. All documents relating to the subject matters of the allegations in the Indictment or the Labor Complaint.

44. A list of persons holding any director, officer, manager, business manager, or similar managerial position with Plaintiff for each year during the Period.

45. Documents sufficient to identify any other action, proceeding, litigation, investigation, or inquiry in which any director, officer, manager, business manager, or person holding similar managerial positions with Plaintiff was a defendant, target, person of interest, or respondent, or charged with or accused of any crime, illegal conduct, or unlawful conduct.

Dated: April 28, 2021
      Charleston, South Carolina

                        *s/Christopher A. Ogiba*
                        Christopher A. Ogiba, Fed. ID No. 9042
Lesley A. Firestone, Fed. ID No. 11719
Clinton T. Magill, Fed. ID No. 12459
Moore & Van Allen, PLLC
78 Wentworth Street
Charleston, South Carolina 29401
Telephone:     843-579-7066
Facsimile:       843-579-8749
Email:              chrisogiba@mvalaw.com
                 lesleyfirestone@mvalaw.com
                 clintonmagill@mvalaw.com

Mark A. Nebrig
John A. Fagg, Jr.
Nader Raja
Kristen Kenley
Moore & Van Allen, PLLC
100 North Tryon Street
Suite 4700
Charlotte, North Carolina 28202-4003
Telephone:     704-331-3602
Facsimile:       704-339-5974
E-mails:          marknebrig@mvalaw.com
                 johnfagg@mvalaw.com
                 naderraja@mvalaw.com
                 kristenkenley@mvalaw.com

Scott A. Edelman
Jed M. Schwartz
Andrew B. Lichtenberg
Milbank LLP
55 Hudson Yards
New York, New York 10001-2163
Telephone:     212-530-5000
Facsimile:       212-530-5219
Email:              sedelman@milbank.com
                 jschwartz@milbank.com
                 alichtenberg@milbank.com

*Attorneys for Defendants*
*Deloitte & Touche LLP and Deloitte LLP*

7

# Exhibit 2

## UPDATED CERTIFICATION PURSUANT TO
## FEDERAL SECURITIES LAWS

IBEW Local 98 Pension Fund ("IBEW Local 98") declares as to the claims asserted under the federal securities laws, that:

1. I, Todd Neilson, Trustee of IBEW Local 98, am the sole individual authorized to make legal decisions on behalf of IBEW Local 98 with regard to this action.

2. IBEW Local 98 did not purchase the security that is the subject of this action at the direction of counsel or in order to participate in any private action arising under the Securities Act of 1933 (the "Securities Act") or the Securities Exchange Act of 1934 (the "Exchange Act").

3. IBEW Local 98 is the Court-appointed Lead Plaintiff in this action and will serve as a representative party on behalf of the Class (as defined in the Complaint), including providing testimony at deposition and trial, if necessary.

4. During the Class Period (as defined in the Consolidated Complaint), IBEW Local 98 purchased and/or sold the securities that are the subject of the Consolidated Complaint as set forth on the attached Schedule A.

5. IBEW Local 98 has full power and authority to bring suit to recover for its investment losses.

6. IBEW Local 98 has fully reviewed the facts and allegations of the Consolidated Complaint filed in this action.

7. IBEW Local 98 intends to actively monitor and vigorously pursue this action for the benefit of the Class.

8. IBEW Local 98 will strive to provide fair and adequate representation and work directly with Class counsel to obtain the largest recovery for the Class consistent with good faith and meritorious judgment.

9. IBEW Local 98 will not accept any payment for serving as a class representative on behalf of the class beyond its *pro rata* share of any recovery, except such reasonable costs and expenses (including lost wages) relating to the representation of the Class or approved by the court.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information and belief.

Executed this 29 day of June, 2021.

IBEW Local 98 Pension Fund

By: _____
Todd Neilson
Trustee, IBEW Local 98

## SCHEDULE A

| Trade Date | Transaction Type | Shares | Share Price ($) |
|---|---|---|---|
| 7/24/2015 | Purchase | 400 | 52.53 |
| 7/24/2015 | Purchase | 200 | 52.6 |
| 7/27/2015 | Purchase | 400 | 53.25 |
| 7/28/2015 | Purchase | 600 | 53.16 |
| 7/29/2015 | Purchase | 600 | 53.179 |
| 7/30/2015 | Purchase | 800 | 54.0763 |
| 7/31/2015 | Purchase | 400 | 54.9713 |
| 8/4/2015 | Purchase | 900 | 54.2 |
| 8/14/2015 | Purchase | 200 | 56.72 |
| 8/21/2015 | Purchase | 200 | 56.34 |
| 8/24/2015 | Purchase | 700 | 54.62 |
| 11/20/2015 | Sale | (600) | 60.21 |
| 11/20/2015 | Sale | (1,000) | 60.22 |
| 11/24/2015 | Sale | (400) | 59.55 |
| 12/1/2015 | Sale | (200) | 59.63 |
| 12/4/2015 | Sale | (200) | 59.11 |
| 12/7/2015 | Sale | (500) | 59.45 |
| 2/5/2016 | Sale | (700) | 65.3 |
| 2/8/2016 | Sale | (200) | 65.26 |
| 2/9/2016 | Sale | (400) | 65.27 |
| 2/10/2016 | Sale | (300) | 65.09 |
| 8/22/2016 | Sale | (400) | 72.91 |

| Trade Date | Transaction Type | Shares | Share Price ($) |
|---|---|---|---|
| 8/25/2016 | Sale | (200) | 72.56 |
| 8/29/2016 | Sale | (300) | 71.04 |
| 4/4/2017 | Purchase | 600 | 66.05 |
| 4/5/2017 | Purchase | 200 | 66.24 |
| 4/6/2017 | Purchase | 600 | 66.33 |
| 4/7/2017 | Purchase | 400 | 65.66 |
| 4/7/2017 | Purchase | 1,400 | 66.31 |
| 4/11/2017 | Purchase | 200 | 65.22 |
| 4/11/2017 | Purchase | 200 | 65.26 |
| 4/17/2017 | Purchase | 200 | 66.04 |
| 4/19/2017 | Purchase | 200 | 66.5 |