**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**

INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL 98 PENSION FUND on behalf of itself and all others similarly situated,

Plaintiffs,

vs.

DELOITTE & TOUCHE LLP;
DELOITTE LLP,

Defendants.

Case No. 3:19-cv-3304-MBS

**DEFENDANTS' RESPONSE TO LEAD PLAINTIFF'S MOTION TO CLARIFY THE COURT'S JANUARY 3, 2022 ORDER AND OPINION REGARDING LEAD PLAINTIFF'S MOTION FOR A PROTECTIVE ORDER AND TO QUASH CERTAIN DEPOSITIONS**

Defendants Deloitte & Touche LLP and Deloitte LLP ("Defendants"), by and through their undersigned counsel, submit this Response to Lead Plaintiff International Brotherhood of Electrical Workers Local 98 Pension Fund's ("Lead Plaintiff" or the "Fund") Motion to Clarify the Court's January 3, 2022 Order and Opinion Regarding Lead Plaintiff's Motion for a Protective Order and to Quash Certain Depositions (the "Motion" or "Mot.").

## INTRODUCTION

In connection with the Fund's Motion for Class Certification, this Court must conduct a rigorous analysis of the evidence presented to determine whether the Fund has carried its burden of proving that this case should proceed as a class action. Among the elements that the Fund is required to prove (and not just plead or argue) is that it is an adequate representative of the proposed class. The Fund, however, seeks to avoid that burden at all costs. It hopes instead that it can win class certification without allowing Defendants or the Court the opportunity to inquire meaningfully about the propriety of the Fund itself serving as Lead Plaintiff.

Indeed, the Fund has repeatedly attempted to block discovery on that very topic, going so far as to move for a protective order to prevent the depositions of Brian Burrows and Todd Neilson—the people who were and now are purportedly in charge of this litigation for the Fund—after initially failing to disclose to the Court that Burrows had been indicted for conspiracy and embezzling from the International Brotherhood of Electrical Workers Local 98 Union (the "Union"). Even now, after the Court has ordered certain discovery into the interconnected relationships between the Fund and the Union to proceed—including the depositions of these same two individuals—the Fund seeks to stall, avoid and stonewall yet again, this time by moving to "clarify" this Court's January 3, 2022 order (ECF No. 105, the "Order").

The Order in issue, as the Court knows, granted in part and denied in part the Fund's motion for a protective order. In ordering certain discovery to proceed, the Court held:

> Defendants also wish to explore the "decades-long, intertwined work history" between Burrows and Neilson, as well as Tara Chupka, in-house counsel for both the Fund and the Union, and possibly others, to determine whether Neilson is operating independently of the Union and in the best interests of the Fund and the putative class. The court finds that Burrows and Neilson may be deposed as to these matters.

(Order at 3-4.) The Court also held that "Defendants can obtain information regarding declarations and prior statements made on behalf of the Fund by Burrows and Neilson during the Rule 30(b)(6) deposition." (*Id.* at 3.)

Promptly after that Order, Defendants noticed the depositions of Burrows and Neilson. Defendants also noticed (1) the Rule 30(b)(6) deposition of the Fund on precisely the limited topics that were the subject of the Order: (a) "[i]nformation regarding the decades-long, intertwined work history between Brian Burrows and Todd Neilson, as well as Tara Chupka"; and (b) "[i]nformation regarding declarations and prior statements made on behalf of the Fund by Brian Burrows and Todd Neilson"; and (2) the deposition of Tara Chupka—who would necessarily have relevant and direct knowledge regarding "the 'decades-long, intertwined work history' between Burrows and Neilson, ***as well as Tara Chupka***, in-house counsel for both the Fund and the Union" (emphasis added).

The Fund has flatly refused to produce ***any*** of these witnesses even on the topics that were approved by the Court's Order, renewing once again its efforts to prevent legitimate discovery into its adequacy as a representative of the proposed class. It has no basis whatsoever for doing so:

- The Court specifically ordered that "Burrows and Neilson may be deposed as to these matters" (*id.* at 4), and the Fund's refusal to make them available is a direct violation of the Order.

- The Court also held that "the Rule 30(b)(6) deposition" is the forum in which Defendants could obtain "information regarding declarations and prior statements made on behalf of the Fund by Burrows and Neilson." (*Id.* at 3.) The Rule 30(b)(6) deposition was therefore clearly contemplated by the Order and the Fund's refusal to comply is indefensible.
- Defendants seek Chupka's deposition only after delving further into the murky and troubling connections between the Fund and the Union, and learning that she has information potentially relevant to the Fund's adequacy as the proposed class representative. For example, Chupka serves as in-house counsel for both the Fund and the Union, and is closely connected to John Dougherty, the former Union leader who has been convicted of criminal fraud in connection with Union activities and resigned from his position at the Union only after his November 2021 conviction. Further, according to Neilson, it was Chupka who informed him that he was being appointed as the new representative for the Fund to replace Burrows. The Court's Order did not address Chupka's deposition because Defendants had not noticed it at the time of the Fund's motion for a protective order. However, the propriety of class certification is a continuing issue throughout the case—as it is in all class actions. The deposition notice for Chupka is clearly timely and it seeks evidence relevant to the very issues on which the Court has ordered Burrows and Neilson to be deposed. Simply put, there is no basis for the Fund's refusal to produce Chupka other than a continued desire to bury uncomfortable facts.

The Fund's intransigence notwithstanding, the discovery sought by Defendants is tailored to the very issues highlighted in, and permitted under, the Order. As the Court recognized, the work history between Burrows, Neilson, and Chupka is directly relevant to determining whether the Fund's current representative "Neilson is operating independently of the Union and in the best

interests of the Fund and the putative class." (*Id.* at 4.) There is no reason why Burrows, Neilson, and Chupka should not each be deposed on this issue. The burden is minimal, and the relevance is clear. Similarly, the "declaration and prior statements made on behalf of the Fund" by its purported former representative (Burrows) and its current representative (Neilson) are also relevant to determining whether the Fund can sustain its burden of proof. (*See id.* at 3.) Lead Plaintiff's attempt to preclude the depositions of Chupka and of the Fund's Rule 30(b)(6) designee should be denied.

## STATEMENT OF FACTS

On April 30, 2021, the Fund moved to certify this action as a class action. (ECF Nos. 71-72.) The Fund then admitted that ***it*** would need to ***prove*** that it satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure, including by establishing that the Fund is an adequate representative of the proposed class. (*See* ECF No. 72 at 18-19 (Federal Rule of Civil Procedure "23(a)(4) requires that the class representative will fairly and adequately represent the Class.").)

Defendants have pursued discovery of evidence relevant to that issue. On May 20, 2021, Defendants served a Rule 30(b)(6) deposition notice on the Fund (the "First 30(b)(6) Notice"), as well as deposition subpoenas to Burrows and Neilson in their personal capacities. (ECF No. 94-1; ECF No. 94-2; ECF No. 94-5.) The First 30(b)(6) Notice contained numerous topics, including several relating to the indictment of Burrows and his alleged co-conspirators by the U.S. Attorney's Office for the Eastern District of Pennsylvania (the "Indictment"),[1] and the Department

[1] *See United States v. Dougherty et al.*, No. 2:19-cr-64 (E.D. Pa. Jan. 29, 2019) (the "Criminal Action"), ECF No. 1.

of Labor's complaint against the Union ("DOL Complaint" or "Labor Complaint").[2] Specifically, the First 30(b)(6) Notice included the following topics:

- Topic 30: The allegations in the Indictment.
- Topic 31: Your knowledge of the Criminal Action.
- Topic 32: The claims asserted and allegations in the Labor Complaint.
- Topic 33: Your knowledge of the Labor Action.
- Topic 34: Your knowledge of any other action, proceeding, litigation, investigation, or inquiry in which any director, officer, manager, business manager, or person holding similar managerial positions with [Lead] Plaintiff who was a defendant, target, person of interest, or respondent, or charged with or accused of any crime, illegal conduct, or unlawful conduct.

(ECF No. 94-1 at 5.)

On August 10, 2021, Lead Plaintiff filed a Motion for Protective Order regarding Topics 30-34 and sought to quash the subpoenas of Neilson and Burrows (the "Motion for Protective Order"). (ECF No. 94.) Lead Plaintiff did not move for relief with respect to Chupka; indeed, Defendants had not even subpoenaed her at that time.

A Rule 30(b)(6) deposition of the Fund occurred on September 10, 2021. (*See* ECF No. 99-2 (Neilson Tr.).) Given the pending Motion for Protective Order, however, Lead Plaintiff refused to allow Defendants to elicit testimony on various topics from the Fund's Rule 30(b)(6) designee, who was Neilson. (*See id.* at 83:11-84:10 (Defendants' counsel: "[W]ill it be your instruction that Mr. Neilson is not – will not be answering any questions related to the indictment or the allegations in the indictment or the labor complaint or the allegations in the labor complaint?" Lead Plaintiff's counsel: "That is correct[.]").) The Motion for Protective Order was

---

[2] *See Scalia v. Local 98, Int'l Bhd. Of Elec. Workers*, No. 2:21-cv-96 (Jan. 8, 2021) (the "Labor Action"), ECF No. 1.

fully briefed on August 31, 2021 (*see* ECF No. 96), and the Court held oral argument on December 20, 2021 (*see* ECF No. 103).

On January 3, 2022, the Court granted in part and denied in part the Motion for Protective Order. (Order at 4.) In its Order, the Court held that the "'decades-long, intertwined work history' between Burrows, Neilson, as well Tara Chupka," was a proper topic of discovery. (*Id.* at 3-4.) The Court also held that "Defendants ***can obtain*** information regarding declarations and prior statements made on behalf of the Fund by Burrows and Neilson ***during the Rule 30(b)(6) deposition***, but they are directed to refrain from querying ***the Fund's designee*** regarding the Indictment or DOL complaint." (*Id.* at 3 (emphasis added).)

Pursuant to the Order, on January 12, 2022, Defendants served notices of deposition on Burrows, Neilson, and Chupka. (*See* Ex. 1 (Burrows); Ex. 2 (Neilson); ECF No. 106-3 (Chupka).) That same day, Defendants also served a second Rule 30(b)(6) notice of deposition on Lead Plaintiff that was narrowly focused on the two permissible topics of discovery prescribed by the Court (the "Second 30(b)(6) Notice"). (*See* ECF No. 106-2.) Specifically, the Second 30(b)(6) Notice includes the following topics:

- Topic 35: Information regarding declarations and prior statements made on behalf of the Fund by Brian Burrows and Todd Neilson.
- Topic 36: Information regarding the decades-long, intertwined work history between Brian Burrows and Todd Neilson, as well as Tara Chupka.

(*Id.* at 5.)

In response to the deposition subpoenas—and in direct contravention of the Court's Order—the Fund asserts that Defendants are not entitled to a second Rule 30(b)(6) deposition on the topics expressly identified in the Court's Order and in the Second 30(b)(6) Notice. (*See* Mot. at 5.) The Fund has also refused to produce Chupka for a deposition based on the mistaken theories that Defendants somehow "waived" their right to depose her by not serving a notice of deposition

prior to the filing of Defendants' opposition to Lead Plaintiff's Motion for Class Certification, and that the Court's Order did not "authorize" a deposition of Chupka. (*See id.* at 6.) No such "waiver" occurred, and the notion that the Court needed to "authorize" a deposition that had not even been requested yet and that was not part of the relief sought in the Fund's protective order motion has no basis in the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 30(a)(1) ("A party may, by oral questions, depose any person, including a party, without leave of court except as provided in Rule 30(a)(2)" which is inapplicable here).

Although the Fund now argues that the Court's Order is ambiguous as to whether it authorized the depositions of Chupka and the Fund, even the Fund does not argue that the Order is ambiguous as to Defendants' right to depose Burrows and Neilson, because it is not. Yet, the Fund has refused to produce ***any witness at all*** following the Court's Order. The conclusion is inescapable: the Fund wants to avoid this discovery at all costs—even at the expense of defying the Court's Order explicitly allowing Burrows and Neilson to be deposed and allowing for a continued Rule 30(b)(6) deposition on specific topics. The Court should not indulge the Fund's gamesmanship and should order the requested discovery to proceed.

## ARGUMENT

### A. The Fund Must Produce Burrows and Neilson Pursuant to the Court's Order.[3]

As a threshold matter, the Fund has no basis for refusing to produce Burrows or Neilson in their personal capacities. Lead Plaintiff's refusal to produce Burrows and Neilson is improper and in direct contravention of the Court's Order and Rule 30 of the Federal Rules of Civil Procedure.

---

[3] The Fund's failure to file an affirmation pursuant to Local Rule 7.02 swearing that it "attempted in good faith to resolve the matter contained in the motion" is emblematic of the Fund's apparent goal in filing the Motion, which is to prevent, or at least delay, discovery into the Fund's relationship with the Union. The Fund's failure to comply with Local Rule 7.02 is an independent ground for denying the Fund's motion.

Fed. R. Civ. P. 30(a)(1) ("A party may, by oral questions, depose any person, including a party, without leave of court except as provided in Rule 30(a)(2)" which is inapplicable here).

The Fund repeatedly admits that Defendants have the right to depose Burrows and Neilson. (Mot. at 1, 3-6.) Nevertheless, the Fund has refused to produce any witness, including Burrows and Neilson, following the Court's Order. The Fund claims that "it will provide dates for Messrs. Burrows and Neilson's depositions once the Court has resolved this motion" (Mot. at 4 n.2), but this form of self-help runs afoul of the Court's clear directive "that Burrows and Neilson may be deposed as to these matters" (Order at 4). The Fund's repeated efforts to stall discovery into its adequacy as the proposed class representative betrays its true intentions: to get a second chance at convincing this Court that Burrows and Neilson should not be deposed in the apparent hope that Defendants and the Court will not learn what they have to say under oath. The Court should not condone this behavior or permit it to continue again.

**B. The Rule 30(b)(6) Deposition Is Warranted and Permissible.**

The Fund also has no basis for refusing a second Rule 30(b)(6) deposition. The Court has permitted a second Rule 30(b)(6) deposition of the Fund on the limited issues identified in the Court's Order as permissible topics of discovery. This is precisely what Defendants have requested and what the Fund has refused to provide. Indeed, Topic 36 seeks "[i]nformation regarding the decades-long, intertwined work history between Brian Burrows and Todd Neilson, as well as Tara Chupka"—precisely the information that the Court's Order recognized was a proper topic for discovery. (Order at 3.) Undeterred by the plain language of the Order, the Fund asserts that Topic 36 is an improper topic for a Rule 30(b)(6) deposition because the "Fund has no knowledge or information on that topic beyond the personal knowledge of Burrows and Neilson, if any." (Mot. at 6.) But that makes no sense. To take the obvious example, Chupka—the Fund's

in-house counsel—surely has information about her own "decades-long, intertwined work history" with Burrows and Neilson, and other individuals associated with the Fund are likely to have such information as well. As with any Rule 30(b)(6) deposition topic, the Fund will have a duty to educate its Rule 30(b)(6) designee, which would include knowledge or information ***beyond the personal knowledge of Burrows and Neilson***—such as Chupka's, John Dougherty's,[4] or others' knowledge of the "decades-long, intertwined work history between" Burrows, Neilson, and Chupka.

As to Topic 35—which relates to "[i]nformation regarding declarations and prior statements made on behalf of the Fund by Burrows and Neilson"[5]—the Fund previously prevented Defendants from taking the testimony of Burrows and Neilson in their personally capacities, despite the fact that Neilson and Burrows are the only two people who have signed declarations on behalf of the Fund in connection with this lawsuit. (*See* ECF No. 22-4; ECF No. 44-1; ECF No. 86-1.) Moreover, if Defendants do not learn of the existence of additional relevant information

---

[4] Press reports reflect that Chupka is the adopted daughter of the Union's former business manager, John Dougherty, who was recently convicted of criminal fraud in connection with his Union activities. *See United States v. Dougherty et al.*, No. 2:19-cr-64, ECF No. 251 (minute entry indicating that Dougherty was convicted on eight counts of the indictment on November 15, 2021); Nancy Phillips and Mark Fazlollah, *FBI Digs Deep in Probe of Dougherty and Union*, Phila. Inquirer, July 1, 2017, *available at* https://www.inquirer.com/philly/news/pennsylvania/philadelphia/fbi-digs-deep-in-probe-of-dougherty-and-union-20170701.html ("Tara Chupka lived with Dougherty's family when she was a teen and now works as a lawyer for Local 98."). Chupka may have information about the linkages between the Union and the Fund that may be unknown to both Burrows and Neilson.

[5] The Court held that "Defendants can obtain information regarding declarations and prior statements made on behalf of the Fund by Burrows and Neilson during the Rule 30(b)(6) deposition, but they are directed to refrain from querying the Fund's designee regarding the Indictment or DOL complaint." (Order at 3.) Thus, the Court expressly permitted Defendants to query the Fund's Rule 30(b)(6) designee on Topic 35, while limiting Defendants from "querying the Fund's designee" on specific subjects.

during the depositions of Burrows, Neilson, or Chupka, there would be few, if any, detailed questions remaining on this topic at the Fund's deposition.

Based on the foregoing, Defendants' Second 30(b)(6) Notice is not only proper but is narrowly focused on the discovery expressly permitted by the Court's Order. The Motion should be denied as a result.

**C. Chupka's Testimony Is Relevant and Permissible.**

The Fund asserts that Defendants are procedurally prohibited from deposing Chupka because her deposition purportedly was "not properly noticed in advance of the deadline for Defendants to file their opposition to the motion for class certification." (Mot. at 6.) The Fund cites no requirement under the Federal Rules of Civil Procedure or other authority that a witness must be noticed before the filing of a class certification opposition brief, because there is none.

The Fund also argues that Chupka's deposition may not be taken on the theory that the Court's Order did not authorize it. (*Id.* at 6-7.) This is a red herring because Chupka's deposition had not been previously noticed and was not addressed in either the Fund's Motion for Protective Order or the Court's Order. In addition, the Court's Second Amended Consent Scheduling Order states clearly that fact discovery is open and does not end until May 20, 2022. (*See* ECF No. 92.) When discovery is open, Rule 30(a)(1) provides that "[a] party may, by oral questions, depose any person, including a party, ***without leave of court*** except as provided in Rule 30(a)(2)" which is inapplicable here. Fed. R. Civ. P. 30(a)(1) (emphasis added). Moreover, the inquiry has ongoing relevance throughout the case. Even ***after*** a class action is certified—and this one should not be—the Court has an ongoing obligation to ensure that class action treatment is warranted, meaning that a lead plaintiff's adequacy is at issue throughout the litigation. *See, e.g.*, *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 433 (4th Cir. 2003) (if it becomes apparent that a court's

assessment of Rule 23 requirements "turns out to be inaccurate," the court has the responsibility to decertify the class).[6]

The Fund's remaining arguments as to the relevance of Chupka's testimony are simply wrong. ***First***, Chupka's testimony is directly relevant to the very issues on which the Order permitted discovery—indeed, as even the Fund concedes, the "decades-long, intertwined work history between Burrows and Neilson, as well as ***Tara Chupka***," is a proper subject for discovery on which the Court "permitted depositions." (ECF 106-4 at 2 (Jan. 13 Letter from Cohen Milstein to Milbank) (emphasis added).)

***Second***, Chupka's testimony is particularly relevant to the issue of the Fund's independence from the Union. Neilson testified that Chupka was the in-house counsel to both the Fund ***and the Union*** (ECF No. 99-2 (Neilson Tr.) at 140:12-17; 150:2-11), and that he, as the sole representative of the Fund purportedly given authority to oversee this litigation, ***was taking advice from Chupka*** (*id.* at 155:7-12). Chupka's relationship to the Fund, the Union, Neilson, and Burrows bears directly on whether or not the Fund is acting independently of the Union. Indeed, at the first Rule 30(b)(6) deposition, Neilson referenced Chupka no less than ***twenty-five times***, testifying for example, that it was Chupka who: (1) asked Neilson to take over as the Fund's representative in this litigation (*id.* at 71:25-72:3); (2) told Neilson why he was being asked to take over as representative (*id.* at 72:9-13); and (3) advised Neilson that he would be acting on behalf of the Fund in making decisions in this action (*id.* at 155:7-12).[7] Similarly, Neilson testified that

---

[6] *See also Mazzei v. Money Store*, 829 F.3d 260, 266 (2d Cir. 2016) (a "district court has the affirmative duty of monitoring its class decisions in light of the evidentiary development of the case" such that class decertification is proper if "it appears [to the court] that the requirements of Rule 23 are not in fact met").

[7] Neilson also testified that, prior to taking over for Burrows as Lead Plaintiff's representative in this matter, he had a conversation with Chupka in which she told him what his responsibilities

it was Chupka who informed Burrows that he would no longer have a role in this litigation moving forward. (*Id.* at 147:22-25.)[8]

Given Chupka's intimate and detailed involvement in the substitution of Neilson for Burrows as Lead Plaintiff's representative in this action, as well as her involvement in the litigation more generally, Defendants are entitled to explore with Chupka the "decades-long, intertwined work history" between herself, Burrows, and Neilson at the Union and the Fund, "in order to determine whether Neilson is operating independently and in the best interests of the Fund and the putative class." (Order at 3-4.)

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny the Fund's Motion.

*/s/ Christopher A. Ogiba*
Christopher A. Ogiba, Fed. ID No. 9042
Lesley A. Firestone, Fed. ID No. 11719
Clinton T. Magill, Fed. ID No. 12459
Moore & Van Allen, PLLC
78 Wentworth Street
Charleston, South Carolina 29401
Telephone: 843-579-7066
Facsimile: 843-579-8749
Email: chrisogiba@mvalaw.com
lesleyfirestone@mvalaw.com
clintonmagill@mvalaw.com

would be in the litigation and what was being asked of him in the litigation moving forward. (*See* ECF No. 99-2 (Neilson Tr.) at 48:23-50:22; *see also id.* at 52:12-16 (agreeing that during this conversation, Chupka told Neilson he would have significant responsibilities in connection with the litigation).)

[8] Neilson himself indicated that Chupka has relevant information to the Fund's adequacy to serve as class representative. For example, in response to questions about how the Fund received a document produced in discovery, Neilson testified that such a question "would be something you would have to ask [Chupka]" about and that he "[couldn't] speak for her other than all these documents were put together by her, and how she came about getting them . . . I can't answer to that firsthand[.]". (*See* ECF No. 99-2 (Neilson Tr.) at 116:12-25.)

Mark A. Nebrig
John A. Fagg, Jr.
Nader Raja
Kristen Kenley
Moore & Van Allen, PLLC
100 North Tryon Street
Suite 4700
Charlotte, North Carolina 28202-4003
Telephone: 704-331-3602
Facsimile: 704-339-5974
E-mails: marknebrig@mvalaw.com
johnfagg@mvalaw.com
naderraja@mvalaw.com
kristenkenley@mvalaw.com

Scott A. Edelman
Jed M. Schwartz
Andrew B. Lichtenberg
Kingdar Prussien
Milbank LLP
55 Hudson Yards
New York, New York 10001-2163
Telephone: 212-530-5000
Facsimile: 212-530-5219
Email: sedelman@milbank.com
jschwartz@milbank.com
alichtenberg@milbank.com
kprussien@milbank.com

*Attorneys for Defendants*
*Deloitte & Touche LLP and Deloitte LLP*

Charleston, South Carolina
January 26, 2022