# UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL 98 PENSION FUND, on behalf of itself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>DELOITTE & TOUCHE LLP and DELOITTE LLP,<br><br>Defendants. | Case No. 3:19-cv-3304 |

# LEAD PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO COMPEL AND FOR SANCTIONS

## TABLE OF CONTENTS

Table of Authorities ............................................................................................................... ii

Introduction ........................................................................................................................... 1

Argument ............................................................................................................................... 2

I.    The Undisputed Record Shows Deloitte's Services for Westinghouse Directly Concern and Relate to its Audits of SCANA ............................................................... 2

II.   Deloitte's Opposition Confirms that Sanctions Should Be Issued ........................... 3

      A.  By its Plain Language, the February 23 Order is Not Limited to "Specific Investigations" ............................................................................................... 3

      B.  Deloitte's Frivolous Objections Do Not Justify Its False Discovery Responses................ 4

      C.  Deloitte's Continued Misrepresentations About its Efforts to Withhold Relevant Information Confirm that Sanctions are Warranted............................................ 6

III.  Deloitte Fails to Explain the Vast Discrepancies in its Document Production....................... 10

IV.   Deloitte's Remaining Excuses Do Not Justify its Discovery Violations................................ 12

Conclusion ....................................................................................................................... 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Austin v. Nestle USA, Inc.*,
  2010 WL 4318815 (D.S.C. Oct. 26, 2010) .............................................................................3

*Beach Mart, Inc. v. L & L Wings, Inc.*,
  302 F.R.D. 396 (E.D.N.C. 2014) ................................................................................. *passim*

*Belk v. Charlotte-Mecklenburg Bd. of Educ.*,
  269 F.3d 305 (4th Cir. 2001) ...............................................................................................13

*Cap. Ventures Intern. v. J.P. Morgan Mortg. Acquisition Corp.*,
  2014 WL 1431124 (D. Mass. Apr. 14, 2014) .........................................................................4

*Classic Soft Trim, Inc. v. Albert*,
  2021 WL 724974 (M.D. Fla. Feb. 10, 2021) ..........................................................................9

*David v. Alphin*,
  2010 WL 1404722 (W.D.N.C. Mar. 30, 2010) .......................................................................9

*U.S. ex rel. Davis v. Prince*,
  753 F. Supp. 2d 561 (E.D. Va. 2010) .....................................................................................8

*Dillon v. BMO Harris Bank, N.A.*,
  2016 WL 5679190 (M.D.N.C. Sept. 30, 2016)........................................................................7

*Fagnant v. Johnson*,
  2013 WL 6388485 (D.S.C. Dec. 6, 2013) ...............................................................................6

*First Am. Title Ins. Co. v. Borniva*,
  2022 WL 684128 (D. Md. Mar. 8, 2022)....................................................................9, 12, 13

*Flame S.A. v. Indus. Carriers, Inc.*,
  39 F. Supp. 3d 752 (E.D. Va. 2014) ...............................................................................12, 13

*Garcia v. Garibay*,
  2021 WL 2476840 (E.D. Cal. June 17, 2021) ......................................................................13

*Gilmore v. Jones*,
  2021 WL 5280970 (W.D. Va. Nov. 12, 2021) ......................................................................12

*Goro v. Flowers Foods, Inc.*,
  2019 WL 6252499 (S.D. Cal. Nov. 22, 2019) ........................................................................4

*Hosch v. BAE Sys. Info. Sols., Inc.*,
    2014 WL 1681694 (E.D. Va. Apr. 24, 2014) ........................................................14

*King Cnty. v. Merrill Lynch & Co., Inc.*,
    2011 WL 3438491 (W.D. Wash. Aug. 5, 2011) ......................................................4

*Klipsch Grp., Inc. v. ePRO E-Commerce Ltd.*,
    880 F.3d 620 (2d Cir. 2018)..................................................................................13

*Knight v. Domtar Paper Co., LLC*,
    2013 WL 1682779 (D.S.C. Apr. 17, 2013)............................................................13

*In re MI Windows & Doors, Inc. Products Liab. Litig.*,
    2013 WL 268206 (D.S.C. Jan. 24, 2013)..................................................................9

*N.J. Carpenters Health Fund v. DLJ Mortg. Cap., Inc.*,
    2012 WL 13135408 (S.D.N.Y. Mar. 2, 2012) ..........................................................4

*Patrick v. Teays Valley Trs., LLC*,
    297 F.R.D. 248 (N.D.W. Va. 2013) ..........................................................................5

*Priester v. Futuramic Tool & Engr. Co.*,
    2017 WL 193577 (D.S.C. Jan. 18, 2017)................................................................13

*Schaefer v. Fam. Med. Centers of S.C., LLC*,
    2019 WL 5893632 (D.S.C. Aug. 5, 2019) (Seymour, J.) ........................................4

*Shatsky v. Syrian Arab Republic*,
    312 F.R.D. 219 (D.D.C. 2015)................................................................................14

*U.S. v. Wallis*,
    6:14-CV-00005, 2015 WL 13858921 (W.D. Va. Aug. 3, 2015) ...........................14

*Victor Stanley, Inc. v. Creative Pipe, Inc.*,
    250 F.R.D. 251 (D. Md. 2008).................................................................................10

*In re Weatherford Int'l.. Sec. Litig.*,
    2013 WL 5788687 (S.D.N.Y. Oct. 28, 2013) ..........................................................3

*Weidman v. Ford Motor Co.*,
    340 F.R.D. 106 (E.D. Mich. 2021) ...........................................................................9

*Wellin v. Wellin*,
    2014 WL 3496514 (D.S.C. July 14, 2014) ...............................................................9

*Westchester Surplus Lines Ins. Co. v. Clancy & Theys Const. Co.*,
    2013 WL 6058203 (E.D.N.C. Nov. 15, 2013) .......................................................14

*Williams v. Big Picture Loans, LLC*,
  2019 WL 8107922 (E.D. Va. May 28, 2019) ...........................................................7

*Wolfe v. Reed*,
  2018 WL 1257095 (D. Md. Mar. 12, 2018) ...........................................................14

*Wollam v. Wright Med. Grp., Inc.*,
  2011 WL 1899774 (D. Colo. May 18, 2011) ...........................................................4

**Other Authorities**

Fed. R. Civ. P. 26 .......................................................................................6, 8, 13

Fed. R. Civ. P. 37 ...................................................................................................6

# INTRODUCTION

Though it is full of bluster, Deloitte's opposition does not dispute any fact or piece of evidence that Plaintiff presented in support of its Motion.[1] Deloitte does not dispute that it provided services to each member of the Consortium both prior to and during the Class Period, that its services for each member of the Consortium involved the accounting for the V.C. Summer project, or that it advised Westinghouse on its valuation of its construction contracts for the V.C. Summer project. Nor does Deloitte contest that when the Securities and Exchange Commission ("SEC") investigated Westinghouse's nuclear business in 2016, the SEC specifically subpoenaed Deloitte for documents concerning its assistance to Westinghouse on the valuation of the V.C. Summer project. And Deloitte does not disagree that, despite all these facts, it told Plaintiff that its productions in connection with the SEC's and DOJ's investigation of SCANA were the only documents it had produced related to this case, represented that it did not perform any services for the Consortium, refused to produce documents about those services after Plaintiff discovered them, and then redacted relevant information about those services in emails about the SCANA audits.

Instead, Deloitte tries to paint its concealment of relevant information as part of "a run-of-the-mill discovery dispute" based on "a difference of opinion." In Deloitte's view, it told the truth when it told Plaintiff that it never worked for the Consortium, because it is Deloitte's opinion that Plaintiff only asked whether it worked for the "Consortium itself," not the parties to the Consortium, as defined in Plaintiff's Requests for Production. Nor did Deloitte violate the Court's discovery order, Deloitte contends, because—despite its plain language—it is Deloitte's opinion that the order only applied to "investigations of SCANA." And there is nothing improper about its redactions, Deloitte says, because it is Deloitte's opinion that the Confidentiality Order granted it authority to withhold whatever it wants, so long as it decides that it is "other client material." And as for its document productions, Deloitte says there is nothing troublesome about its failure to

---

[1] Unless otherwise indicated, exhibits ("Ex.") referenced in this memorandum are exhibits to Plaintiff's Motion to Compel and for Sanctions, ECF No. 118 ("Mot.").

produce tens of thousands of documents responsive to agreed-upon search terms, because it is Deloitte's opinion that those documents are not relevant to Plaintiff's case.

But there is nothing routine about Deloitte's conduct. And Deloitte's opinions are no more than *post hoc* and contrived justifications for its refusal to produce clearly relevant information. Deloitte's interpretation of the Court's order cannot be squared with the order's plain text, its construction of Plaintiff's document requests is nonsensical and factually baseless, its reliance on the Confidentiality Order is contradicted by its acknowledgment that the Parties later reached a redaction agreement that it violated, and its explanations for discrepancies in its document production only confirm that its production is deficient. It is thus clear that Deloitte's explanations have no possible justification other than Deloitte's desire to avoid disclosure and accountability. Because Deloitte's preferences are not a sufficient basis to withhold relevant information, the Court should grant Plaintiff's motion, issue appropriate sanctions, and order Deloitte to comply with its discovery obligations.

## ARGUMENT

### I.    The Undisputed Record Shows Deloitte's Services for Westinghouse Directly Concern and Relate to its Audits of SCANA

In its Motion, Plaintiff provided concrete evidence showing that, from at least 2011 to 2018, Deloitte provided extensive services for both members of the Consortium—Westinghouse and Stone & Webster—along with Westinghouse's Japanese parent company, Toshiba Corporation, and that those services were directly relevant to its SCANA audits. Mot. 9. Deloitte disputes none of these facts, which it scarcely cares to mention, and cites no contrary facts of its own in its opposition. Because it must, Deloitte thus concedes the following:

- Deloitte provided extensive services for each member of the Consortium, which were led by and involved multiple members of the SCANA audit team (Mot. at 9);
- Deloitte's services for Westinghouse included valuation and goodwill impairment services related to Westinghouse's estimate to complete the V.C. Summer project (Mot. at 9-10 & n.16);
- The SEC subpoenaed and Deloitte produced to the SEC information about its assistance to Westinghouse regarding its valuation and goodwill impairment testing of the V.C. Summer project (Mot. at 15-16 & nn.29-30);

- Deloitte's SCANA audit team regarded Westinghouse's accounting and valuation of its nuclear business to be relevant to the audits of SCANA (Mot. at 13);

- Deloitte's SCANA audit team evaluated the potential related risks to SCANA's financial statements of Westinghouse's valuation of the V.C. Summer project (Mot. at 13); and

- Deloitte's SCANA audit team raised concerns that Deloitte's services for Westinghouse potentially impaired its audit independence with respect to its audits of SCANA and could result in Deloitte violating PCAOB audit standards (Mot. at 8).

Thus, there can be no legitimate question that Deloitte's services for Westinghouse, and the SEC's investigation of those services, both concern and relate to Deloitte's SCANA audits and are directly relevant to the claims and defenses in this case.[2]

## II. Deloitte's Opposition Confirms that Sanctions Should Be Issued

### A. By its Plain Language, the February 23 Order is Not Limited to "Specific Investigations"

Because it cannot dispute that the work it did for Westinghouse and subsequently produced to the SEC is directly related to Deloitte's audits of SCANA, Deloitte instead argues that because the documents were produced in connection with the SEC's investigation of Westinghouse, not SCANA, the documents are "not within the scope" of the Court's Amended Scheduling Order ("February 23 Order"). ECF No. 124 ("Opp."), at 20-21; *see also id.* at 2-3, 9-10, 17-18, 28. But Plaintiff has already shown why that argument is meritless, explaining that nothing in the text of the February 23 Order remotely suggests that it is limited to documents produced in specific in-vestigations. Mot. 23-24. By its terms, the February 23 Order extends to "all *documents*"—not "investigations"—related to or concerning Deloitte's audits of SCANA. And that is also exactly how Deloitte understood the order; as recently as December, Deloitte interpreted this language (correctly) to be coextensive with the scope of relevancy for this case.[3] Mot. at 24. If Deloitte

---

[2] Deloitte claims that "*most* of the documents Deloitte produced in response to the SEC's Toshiba subpoenas bear no connection to SCANA whatsoever." Opp. at 3. But that statement, which it does not otherwise support and which is contradicted by its own bankruptcy counsel's court submissions, only shows that Deloitte produced relevant documents to the SEC that it has withheld.

[3] Deloitte argues (Opp. at 21-22) that it is "inappropriate" to request documents produced in prior litigation. But that is incorrect, as even Deloitte's cited cases show that courts routinely order parties to produce such documents. *See In re Weatherford Int'l.. Sec. Litig.*, 2013 WL 5788687, at *2–3 (S.D.N.Y. Oct. 28, 2013) (ordering defendants to produce "all of the documents" that

wanted to limit the scope of the Court's order to specific investigations, it could have tried to do so at the time. But Deloitte said nothing. Because Deloitte does not dispute that it withheld previously produced documents related to or concerning its audits of SCANA, Deloitte violated the clear terms of the February 23 Order.[4]

### B. Deloitte's Frivolous Objections Do Not Justify Its False Discovery Responses

In response to Plaintiff's document requests, Deloitte objected to producing documents related to its services for the Consortium, stating that it was "not retained by the Consortium" to perform any professional services. That was false because, as Deloitte now admits, it provided extensive

---

defendant "submitted in response to SEC subpoenas"); *Austin v. Nestle USA, Inc.,* 2010 WL 4318815, at *4 (D.S.C. Oct. 26, 2010) (noting production of "cloned discovery" could "save the time and expense of duplicating discovery"); *King Cnty. v. Merrill Lynch & Co., Inc.*, 2011 WL 3438491, at *3 (W.D. Wash. Aug. 5, 2011) (noting that documents produced in government investigations that concerned related investigations were potentially "relevant to Plaintiffs' claims"). The other cases Deloitte cites are distinguishable as they involved documents that were exceedingly broad or duplicative. *Wollam v. Wright Med. Grp., Inc.*, 2011 WL 1899774, at *1–2 (D. Colo. May 18, 2011) (rejecting request for discovery produced "in unknown and unspecified cases"); *Cap. Ventures Intern. v. J.P. Morgan Mortg. Acquisition Corp.*, 2014 WL 1431124, at *2 (D. Mass. Apr. 14, 2014) (denying request for "tens of millions of documents" involving "more than 140 securitizations" in multiple civil litigation and government investigations); *N.J. Carpenters Health Fund v. DLJ Mortg. Cap., Inc.*, 2012 WL 13135408, at *1 (S.D.N.Y. Mar. 2, 2012) (rejecting request for documents produced in investigation "far broader than the limited subject matter of this lawsuit"); *Goro v. Flowers Foods, Inc.*, 2019 WL 6252499, at *18 (S.D. Cal. Nov. 22, 2019) (rejecting request for documents produced in other case because the plaintiffs already requested the documents through separate requests).

[4] Rather than acknowledge fault, Deloitte contends that Plaintiff is the one that has acted unfairly by refusing to meet and confer about its February 2022 offer to produce a "subset" of its document productions to the SEC. Opp. at 18, 22. But Deloitte misrepresents the course of the Parties' discussions to represent itself as compliant. Plaintiff explained to Deloitte that it could not assess its proposal to run search terms without information about the "size, scope, or subject matter of the documents sought or produced." Ex. BB at 6. After all, Plaintiff could not possibly meet and confer about Deloitte's proposal without that information, including how many documents the proposed search terms were expected to yield. *See Schaefer v. Fam. Med. Centers of S.C., LLC*, 2019 WL 5893632, at *5 (D.S.C. Aug. 5, 2019) (Seymour, J.) ("Uncorroborated speculation as to the potential volume of responsive documents is not a sufficient basis on which to object to a relevant discovery request."). But Deloitte ignored Plaintiff's request, failed to explain why search terms are even warranted and, despite Plaintiff's request, provided no basis to conclude that producing the entire production would be more burdensome than running a costly review with search terms. It was clear then, and it is more than clear now, that Deloitte's 11th-hour offer was nothing more than a ruse to run out the discovery clock.

services to both members of the Consortium. *See* Opp. at 14 n.10 (suggesting that it would be unduly burdensome to produce documents relating to any "'income tax, regulatory, consulting, or valuation service' provided to any member of the Consortium").

In its Motion, Plaintiff explained that Deloitte has continued to try to justify its discovery responses by claiming that it understood the term "Consortium" to refer only to the "Consortium itself," relying on its objection to the definition of the term "Consortium" in Plaintiff's document requests. Deloitte had objected to Plaintiff's definition ("the parties to the EPC Contract") as "vague," stating that it would "construe" the term to refer to the "parties to the EPC Contract, collectively." But Plaintiff disputed this objection in the Parties' first meet-and-confer session, as Plaintiff later documented in correspondence, explaining that the term "Consortium" was "hardly open to interpretation given that it is defined in each iteration of the EPC Contract as well as SCANA's SEC filings." Ex. BB at 3 n.5. Deloitte not only accepted that position, but also assured Plaintiff that none of its objections "were intended to evade discovery through gamesmanship or technicalities." *Id.*

Further, Plaintiff has repeatedly explained that Deloitte's definitional objection to the term "Consortium" is meritless. In two separate letters (Ex. V at 3-4; Ex. BB at 3 n.4), and now in its Motion (at 27-28), Plaintiff explained that Deloitte's argument contradicted how it construed the term "SCANA" for an identical document request. Mot. at 28. And Plaintiff also explained that Deloitte's definition did not make its responses any less false. In December 2015, Westinghouse acquired the other member of the Consortium, Stone & Webster. As Deloitte's own audit team for SCANA recognized, Westinghouse then became "the sole member of the Consortium" after it acquired Stone & Webster in December 2015. Despite this insurmountable fact, Deloitte inexplicably refuses to change its position, resting on the remarkable claim that it does not "concede or agree with" its own audit team's conclusion. Opp. 15 n.11.

To find any justification for its self-serving interpretation, Deloitte refers to dictionary definitions, claiming (correctly) that Plaintiff does not argue that Deloitte was retained by the Consortium "itself." Opp. 23. But that is because no reasonable person would ever think that the

5

Consortium *could* retain Deloitte or any other company. As Plaintiff has explained (Mot. at 28), and as the Consortium members themselves explained, "[t]he consortium is *not a legal entity*, but a working arrangement that defines the split of work scope, sharing of risk and dispute resolution between the Consortium Partners."[5] It thus makes no sense to refer to the Consortium to mean an entity that could not retain anyone or any company to do anything. *Patrick v. Teays Valley Trs., LLC*, 297 F.R.D. 248, 257 (N.D.W. Va. 2013) ("A party responding to discovery requests should exercise reason and common sense to attribute ordinary definitions to terms and phrases utilized in [discovery requests].").

In short, Deloitte's explanation for its false discovery responses rests on neither common sense, the plain meaning of the word, nor the Parties' understandings—and it even contradicts its own audit team's understanding of the facts. It is thus clear that Deloitte's *after-the-fact reliance* on its definitional objection is nothing but an effort to "craft objections" to "avoid disclosure." *Beach Mart, Inc. v. L & L Wings, Inc.*, 302 F.R.D. 396, 405 (E.D.N.C. 2014). Such naked gamesmanship is impermissible and sanctionable under Rule 37. *Id.*[6]

### C. Deloitte's Continued Misrepresentations About its Efforts to Withhold Relevant Information Confirm that Sanctions are Warranted

In its Motion, Plaintiff showed how Deloitte redacted and withheld information related to Westinghouse and Toshiba, violating clear terms in the Parties' October 2021 redaction agreement. Mot. 12-15. The Parties' agreement strictly prohibited Deloitte from withholding documents or redacting information that contained an agreed-upon search term, and required that Deloitte provide a log showing that each redaction is "limited to the identity of a client name that is not relevant

---

[5] The Shaw Group, Annual Report (Form 10-K) (Oct. 19, 2012) at 49 (explaining structure and organization of the Consortium for the V.C. Summer project) (emphasis added).

[6] Deloitte claims (at 28-29 n.21) that Rule 37(c) "is completely inapposite" because it only concerns failures to disclose under Rule 26(a). But that is incorrect. Rule 37(c)(1) applies to both failures to disclose under Rule 26(a) and failures to correct or supplement responses under Rule 26(e). *See Fagnant v. Johnson*, 2013 WL 6388485, at *1 (D.S.C. Dec. 6, 2013).

to the claims or defenses in this case."[7] Mot. at 11. Just last month, Deloitte acknowledged that the Parties "came to an agreement" on redactions in October 2021, assuring Plaintiff that it was continuing to comply with its terms. Ex. CC at 4-5.[8]

In seeking to justify its redactions now, though, Plaintiff's opposition doesn't even mention the Parties' October 2021 agreement, claiming (for the first time) that its redactions are authorized instead by the Confidentiality Order entered in this case. Opp. 4, 10-13. But Deloitte has never claimed that the Confidentiality Order had any bearing on its ability to redact or withhold information, and its newfound belief flouts its acknowledgment last month that the Parties reached an express agreement on that practice. More stunningly, Deloitte relies on this made-up agreement to support its claim that it has been "transparent" and "candid" in discovery, pointing to its October 1, 2021 email that asserted a purported "right to redact or withhold information" relating to "other client matters." Opp. at 12. Deloitte makes this argument even though it knows that Plaintiff immediately objected to Deloitte's purported right to redact just three days later and that the Parties reached an agreement on redactions for so-called "other client material" three days after that. Mot. at 11. Deloitte omits these key events even though Plaintiff recounts them in detail in its Motion. *Id.* at 10-11. And then in its very next breath, Deloitte claims that "there has been no 'deceit' or 'trickery'" and that it has "candid with Plaintiff from the outset as to what it reasonably believed to be the permissible scope of discovery." Opp. 12-13. Deloitte's willingness to make such a misrepresentation, and to do so in an effort to persuade the Court about its candor and transparency, should be alone sufficient to warrant sanctions. *Dillon v. BMO Harris Bank, N.A.*, 2016 WL 5679190, at *14 (M.D.N.C. Sept. 30, 2016) (explaining that "the lack of consistency and credibility

---

[7] Deloitte states that it "provided OCM logs (much like privilege logs) to Plaintiff," but its logs are useless; they provide no descriptions for any of the redactions, much less descriptions that establish that the redactions are limited to irrelevant client names. *See* Ex. P (Deloitte Log of Redactions for "Other Client Material" dated Mar. 2, 2022).

[8] Because Plaintiff expressly raised Deloitte's improper redactions in March 2021, there is simply no truth to Deloitte's claim that "Plaintiff never bothered to even raise this issue with Deloitte before filing its Motion." Opp. at 27.

in the *post hoc* explanations provided by Counsel to explain their conduct indicates that Counsel acted in bad faith and meant to mislead the Court").[9]

But even if the Court were to disregard Deloitte's deception, there is no merit to its argument that the Confidentiality Order can be read to permit Deloitte to unilaterally redact non-privileged information or withhold documents.[10] Because the Confidentiality Order is a protective order, it must satisfy the stringent requirements of Rule 26(c), which requires a showing of good cause to protect the information covered by the order. Because the Confidentiality Order is an "umbrella order," permitting parties to designate discovery materials as confidential before a judicial determination of good cause, it must include specific procedures for challenging designations, subject to a final judicial determination of good cause. *See* Confidentiality Order, ECF No. 90, at 5-8 ("Challenges to Designation as Confidential"). But the Confidentiality Order does not provide for any such procedures for redacted or withheld "other client" information. Thus, Deloitte's claim that the Confidentiality Order can be interpreted to permit it to unilaterally redact or withhold information —even information that it concedes is relevant—has no support in the law and conflicts with the clear directives of Rule 26(c), *See U.S. ex rel. Davis v. Prince*, 753 F. Supp. 2d 561, 567 (E.D. Va. 2010) (holding that protective order violated Rule 26(c) "by delegating the good cause determination to the parties, thereby erasing the rule's requirement that there be a *judicial* determination of good cause"). Indeed, while Deloitte claims that its proposed interpretation is "not unusual" and "common in cases such as this one," it cannot cite a single example, let alone a case applying a confidentiality order like Deloitte suggests.

---

[9] Deloitte even argues that the Court should order Plaintiff to pay its fees and expenses because, among other things, "Plaintiff's OCM argument fails to even mention the existence of the OCM Provision in the Confidentiality Order, which Plaintiff negotiated and agreed to before it was entered." Opp. at 34. But that has it exactly backwards.

[10] Deloitte spends several pages listing various ethical and contractual obligations of confidentiality. But Deloitte admits they are inapplicable to legal proceedings and to the extent that Deloitte needs to protect certain client information, the Confidentiality Order provides that protection. *See Williams v. Big Picture Loans, LLC*, 2019 WL 8107922 (E.D. Va. May 28, 2019) (rejecting law firm's request to redact client information because "any obligations" that the firm "has under the ethics rule can be protected by the provisions of the Protective Order").

Lastly, Deloitte does not even try to credibly explain the improper redactions that Plaintiff presented in its Motion. *See* Mot. at 10-15. The most that Deloitte offers is a single sentence, buried in a footnote, suggesting that it properly redacted email correspondence between the two construction experts on the SCANA audit team. Mot. at 21 n.16. In that email correspondence, the two experts discuss that the SCANA audit team was "evaluating the potential related risks" of the Westinghouse accounting investigation. Mot. at 12-13. In the redacted version of that correspondence, Deloitte redacted references to not only the word "Westinghouse," but also the name of its CEO, as well as other important information about the accounting investigation and its potential effect on the SCANA audits. *Id.* Deloitte's only explanation for these redactions is that the "documents have nothing to do with the theory of the case that Plaintiff actually pleaded." Opp. at 21 n.16. Setting aside its mischaracterization of Plaintiff's case, Deloitte is not entitled "to willy-nilly redact information from otherwise responsive documents in the absence of privilege, merely because the [Deloitte] concludes on its own that some words, phrases, or paragraphs are somehow not relevant." *Classic Soft Trim, Inc. v. Albert*, 2021 WL 724974, at *7 (M.D. Fla. Feb. 10, 2021); *accord David v. Alphin*, 2010 WL 1404722, at *7 (W.D.N.C. Mar. 30, 2010) ("[A] party should not take it upon him, her or itself to decide unilaterally what context is necessary for the non-redacted part disclosed, and what might be useless to the case.").[11]

Given that Deloitte has made clear it cannot be trusted to redact information "easily or accurately," the Court should order that "it will not be done at all." *In re MI Windows & Doors, Inc. Products Liab. Litig.*, 2013 WL 268206, at *3 (D.S.C. Jan. 24, 2013).

---

[11] Deloitte also seeks to justify its redactions by noting (Opp. at 27) that it redacted "less than 500 documents in Deloitte's production of over 70,000 documents." But the "number of redactions or whether said redactions are made by a party or non-party are irrelevant." *Weidman v. Ford Motor Co.*, 340 F.R.D. 106, 111–12 (E.D. Mich. 2021); *see also Wellin v. Wellin*, 2014 WL 3496514, at *3–4 (D.S.C. July 14, 2014) ("The redaction of irrelevant information, even when sparingly done, deprives [Plaintiff] of context for the relevant information.").

### III. Deloitte Fails to Explain the Vast Discrepancies in its Document Production

In its Motion, Plaintiff detailed the many significant deficiencies in Deloitte's document production, including that Deloitte has produced only 45,000 of the 104,000 documents responsive to the agreed-upon search terms, with similar discrepancies across nearly every search term. Mot. at 19-20. Deloitte's opposition does not dispute any of these discrepancies, but dismisses them as fully explained by "false positives." In support, Deloitte makes two main arguments that are unpersuasive and only confirm that Deloitte's search, retrieval, and production process was deficient.

*First*, Deloitte argues that it agreed to a "very broad document review" for 26 custodians, claiming to have reviewed over one million pages of ESI for responsiveness. Opp. at 17. But Deloitte has admitted that its collection and review process did not include documents responsive to Plaintiff's document requests related to Deloitte's services for the Consortium. Opp. at 5. Further, Plaintiff's opposition to Deloitte motion for protective order detailed the significant deficiencies in its document production. ECF No.127 at 7-8. Deloitte's opposition rests on additional misleading and false assertions to support its claims that its document production has been" extensive." For instance, Deloitte also asserts it produced "vast sets of audit workpapers" for the 2013, 2014, and 2017 audit years. Opp. at 17, 20, 30. But Deloitte has not produced any workpapers for 2013 and has produced only 199 for 2014, withholding critical workpapers that address issues relevant here. Deloitte also asserts that it produced "hundreds of thousands of pages of ESI from twenty-six custodians." Opp. at 20. But it has produced only 16 text messages, 5 voicemails, 0 call records, and 0 instant message and chat records. ECF No. 127 at 7-8. And Deloitte also says it has produced personnel records and policies and procedures. Opp. at 20. But it has produced only 8 personnel file documents for 3 custodians and has produced none of the manuals that Plaintiff requested last July. ECF No. 127 at 7-8; Ex. Y at 7-8.

*Second*, Deloitte dismisses Plaintiff's metrics showing that it has withheld up to 60,000 documents responsive to the agreed-upon search terms, suggesting that this number is fully explained by "false positives." But Deloitte's explanation is hardly credible. The only support that Deloitte offers for its explanation is a single assertion in a declaration from counsel, stating that Deloitte

has reviewed "over one million pages of ESI for responsiveness," and three documents that it cites as examples of "false positives." Opp. at 17, 20, 24-27. To begin with, Deloitte's vague statement that it has reviewed "over one million pages" does not even confirm that Deloitte has completed its review, let alone provide enough information to carry its burden to show the reasonableness of its document search and production efforts. *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 250 F.R.D. 251, 262 (D. Md. 2008).[12] Nor do Deloitte's three examples of "false positives" show that the 60,000 missing documents were withheld on proper grounds. Indeed, Deloitte only provides examples of supposed "false positives" for the search terms "Dominion," "Addison," and "Bechtel." Opp. at 24-26. Those three examples cannot explain the most significant gap in Deloitte's production for the search terms "SCANA" (38,894 of 72,895 produced), "Scana.com" (17,173 of 29,961 produced), and "SCE&G" (11,2896 out of 23,412).

Nor do Deloitte's examples establish that Deloitte has correctly withheld only unresponsive documents. Deloitte's example for the search term "Bechtel," for instance, is a January 2017 email received by Sean Bird, the lead partner on the SCANA audit team, that consists of news alerts focused on the energy and utility industry, including news about nuclear power. ECF No. 124-16. Deloitte's only explanation for why it believes this document is unresponsive is that the email does not mention "SCANA or the Nuclear Project." Opp. at 26. But that is not a remotely sufficient

---

[12] Indeed, in Deloitte's cited cases, unlike here, the producing party provided detailed information to support the reasonableness of its production. For instance, Deloitte cites *FlowRider Surf, Ltd. v. P. Surf Designs,* but in that case, the producing party submitted a declaration from a representative  of the party, not from counsel, that provided a detailed description that showed why a particular search term yielded a large number of unresponsive documents. 2016 WL 6522807, at *8 (S.D. Cal. Nov. 3, 2016). Deloitte has not provided any such information here. Similarly, in *Makowski vs. SmithAmundsen LLC,* the court "conducted an *in camera* review of each of the withheld documents that was specifically identified in Plaintiff's brief" to "ensure that Defendants were not improperly withholding documents," concluding that "[b]ased on this sampling," the defendants had not done so., 2012 WL 1634832, at *3 (N.D. Ill. May 9, 2012). No such review would ever be feasible here, given the vast numbers of documents that Deloitte has withheld. Lastly, Deloitte cites *Palmer v. Cognizant Tech. Sols. Corp.,* but in that case, the plaintiff sought an order compelling the defendants to produce all documents that hit on agreed-upon search terms *before* a responsiveness or privilege review had taken place. 2021 WL 3145982, at *7 (C.D. Cal. July 9, 2021). But here, Deloitte says that it has already completed that review.

explanation for concluding that this document is unresponsive. If Deloitte's method for determining responsiveness is limited to determining whether the document mentions "SCANA or the Nuclear Project," it would defeat the purpose of using any other search terms. That raises serious questions about whether Deloitte conducted its responsiveness review in good faith. Indeed, Deloitte's explanations suggest that it has been reviewing documents not for responsiveness, but for relevance. But Plaintiff is entitled to nonprivileged documents that are responsive to its document requests, not documents that satisfy Deloitte's own self-serving standard of relevance. *Gilmore v. Jones*, 2021 WL 5280970, at *8 (W.D. Va. Nov. 12, 2021) ("[O]pposing counsel doesn't get to decide what's important to the other side's case.").[13]

## IV. Deloitte's Remaining Excuses Do Not Justify its Discovery Violations

Deloitte's opposition offers three remaining arguments, claiming that sanctions are inappropriate because Deloitte acted in bad faith, that extensions of time minimize any possible prejudice, and that the public availability of certain documents renders its conduct harmless. None of these arguments have merit.

*First,* Deloitte claims (at 30) that sanctions are not warranted because it has "consistently acted in good faith." But while the Court need not find that Deloitte's actions were "willful or in bad faith to impose sanctions," *Beach Mart,* 302 F.R.D, at 412, there is more than enough evidence to make such a finding here. Deloitte admits that it redacted, withheld, and failed to produce relevant information based solely on its (unreasonable) belief about what is important to Plaintiff's case.

---

[13] Further, Deloitte notes that its examples for the search terms "Dominion" and "Addison" yielded results for "Dominion Country Club" and a Deloitte employee with the last name Addison. But Deloitte never told Plaintiff that these search terms were yielding these sorts of results. Had Deloitte notified Plaintiff earlier, the Parties could have met and conferred about revising the search terms to be more accurate. Indeed, Plaintiff proposed at the outset that Deloitte use more targeted search terms, proposing particularized search terms for each document request. For example, Plaintiff's proposed search term for Jimmy Addison sought documents that contained the word "Addison" in close proximity to the name "Jimmy" or "Jim." Similarly, Plaintiff's search terms for Dominion included the word "Dominion" along with various other keywords related to this case. *See* Ex. Y, App'x B. But Deloitte rejected Plaintiff's approach and insisted that the Parties use a purportedly "simpler approach to ESI searching." *See* ECF No. 127 at 4.

*Supra* at 9. Throughout discovery, Deloitte repeatedly asserted boilerplate proportionality objections and "failed to fully explain why it did not produce discovery as ordered," *Flame S.A. v. Indus. Carriers, Inc.*, 39 F. Supp. 3d 752, 764 (E.D. Va. 2014), and "craft[ed] objections to requests for production of documents…to avoid disclosure." *Beach Mart, Inc. v. L & L Wings, Inc.*, 302 F.R.D. 396, 405 (E.D.N.C. 2014). *See supra* at 6. Deloitte disobeyed the Court's discovery order, misled Plaintiff and the Court about its compliance with that order, "parsed words and narrowly interpreted Court orders for its own benefit," and "gave inconsistent answers when explaining its noncompliance," and "parsed words and narrowly interpreted Court orders for its own benefit." *Flame*, 39 F. Supp. 3d at 764; *see Belk v. Charlotte-Mecklenburg Bd. of Educ.*, 269 F.3d 305, 348 (4th Cir. 2001) (finding bad faith where party blamed its failure to supplement its interrogatories on an unreasonable interpretation of the district court's order). And Deloitte's opposition "offers new excuses for non-compliance and continues to profess that its interpretations of [the Court's] orders were correct." *Flame,* 39 F. Supp. 3d at 764. Finally, Deloitte violated the Parties' agreements and then misled the Court about those agreements to support its opposition. *Supra* at 6-9. "Instead of using discovery to 'expose the facts and illuminate the issues,'" it is clear that Deloitte has sought "to use the rules to shield it violations." *Beach Mart*, 302 F.R.D. at 414–15 (finding bad faith where party justified its nondisclosures with hypertechnical objections and downplayed the importance of the withheld information).

*Second,* Deloitte claims that an extension of time to complete discovery would "minimize any prejudice" caused by its discovery violations. But courts have rejected the notion that belated disclosure renders discovery violations harmless. *Priester v. Futuramic Tool & Engr. Co.*, 2017 WL 193577, at *5 (D.S.C. Jan. 18, 2017) ("In short, Rule 26 imposes a duty on Plaintiffs; it grants them no right to produce information in a belated fashion.").[14] After all, "[a]n alternative rule

---

[14] None of Deloitte's cited cases suggest otherwise. *Knight v. Domtar Paper Co., LLC*, 2013 WL 1682779, at *4–5 (D.S.C. Apr. 17, 2013) (granting motion for sanctions in part and ordering the plaintiff to respond to document requests and pay costs and fees for second deposition); *First Am. Title Ins. Co. v. Borniva*, 2022 WL 684128, at *4 (D. Md. Mar. 8, 2022) (denying request for entry of default judgment, but concluding that an admonition sanction was appropriate); *Garcia v.*

would encourage dilatory tactics, and compliance with discovery orders would come only when the backs of counsel and the litigants were against the wall." *Klipsch Grp., Inc. v. ePRO E-Commerce Ltd.*, 880 F.3d 620, 631 (2d Cir. 2018). Here, Plaintiff has been forced to expend "considerable time and incurred significant monetary expenses" because of Deloitte's "failures to comply with its discovery obligations," requiring detailed written correspondence and multiple motions to obtain discovery that should have been provided months ago. *Hosch v. BAE Sys. Info. Sols., Inc.*, 2014 WL 1681694, at *6 (E.D. Va. Apr. 24, 2014) (finding prejudice because movant incurred "considerable time and monetary expenses" because of nonmovant's "refusal to abide by its discovery obligations").

*Third,* Deloitte claims that Plaintiff has suffered "no prejudice" because Deloitte's "consulting work for Westinghouse was a matter of public record." That is absurd. Courts have rejected such arguments as "preposterous" and "simply not supported by the law." *Shatsky v. Syrian Arab Republic*, 312 F.R.D. 219, 226–27 (D.D.C. 2015) (holding that the "public availability of certain documents does not render plaintiffs' failure to timely produce them harmless"). To discover that Deloitte's discovery responses were false, Plaintiff had to sift through more than 4,600 court filings in Westinghouse's bankruptcy proceedings. Plaintiff need not "scour the public domain" for information relevant to its case. *Id.* "[E]ven where a requesting party already has documents in its possession, or could otherwise access those documents, the disclosing party may not withhold those documents." *Beach Mart*, 302 F.R.D. at 410–11 (rejecting argument that nondisclosure of contractual agreements was harmless because the documents had been previously filed in other litigation); *accord Westchester Surplus Lines Ins. Co. v. Clancy & Theys Const. Co.*, 2013 WL 6058203, at *7 (E.D.N.C. Nov. 15, 2013) ("The happenstance that Clancy already has such information, even if true, is not a valid ground for withholding those portions of the claim file.").[15]

---

*Garibay*, 2021 WL 2476840, at *3 (E.D. Cal. June 17, 2021) (holding that failure to provide timely initial disclosures were harmless because disclosures were hand-delivered four months before close of discovery).

[15] Deloitte's cases are inapposite. *U.S. v. Wallis*, 6:14-CV-00005, 2015 WL 13858921, at *2 (W.D. Va. Aug. 3, 2015) (denying government's motion for default judgment because the

Deloitte's suggestion that Plaintiff had the responsibility to "independently discover" that Deloitte provided services to Westinghouse and Toshiba, despite Deloitte's emphatic statement that it did not do so, "improperly attempt[s] to shift the burden of discovery onto the requesting party." *Beach Mart,* 302 F.R.D. at 410. Such arguments "are inappropriate and against the spirit and purpose of the discovery rules." *Id.*[16]

## CONCLUSION

For the reasons set forth in Plaintiff's Motion and above, Plaintiff's Motion to Compel and for Sanctions should be granted.

---

government knew about the nondisclosed information); *Wolfe v. Reed*, 2018 WL 1257095, at *3 (D. Md. Mar. 12, 2018) (finding minimal prejudice for nondisclosure because defendant knew about missing information, but holding that defendant could seek to depose expert at plaintiff's expense).

[16] In the event that the Court denies this Motion in whole or in part, the Court should reject Deloitte's request for an award of fees or expenses. Opp. at 33-34. There is no question that Plaintiff's Motion is substantially justified and Deloitte's suggestion otherwise is belied by its meritless arguments and misrepresentations offered in support of its opposition.

Date: May 11, 2022                    Respectfully submitted,

                                      /s/ William Tinkler

                                      TINKLER LAW FIRM LLC
                                      William Tinkler (D.S.C. Bar Number 11794)
                                      PO Box 31813
                                      Charleston, SC 29417-1813
                                      Tel.: (843) 853-5203
                                      Fax: (843) 261-5647
                                      williamtinkler@tinklerlaw.com

                                      *Liaison Counsel for the Proposed Class*

                                      COHEN MILSTEIN SELLERS & TOLL PLLC
                                      Laura H. Posner
                                      Ji Eun Kim (Jessica)
                                      88 Pine Street, 14th Floor
                                      New York, NY 10005
                                      Tel: (212) 220-2925
                                      Fax: (212) 838-7745
                                      lposner@cohenmilstein.com
                                      jekim@cohenmilstein.com

                                      Steven J. Toll
                                      Jan E. Messerschmidt
                                      Molly J. Bowen
                                      1100 New York Ave. NW, Suite 500
                                      Washington, D.C. 20005
                                      Tel: (202) 408-4600
                                      Fax: (202) 408-4699
                                      stoll@cohenmilstein.com
                                      jmesserschmidt@cohenmilstein.com
                                      mbowen@cohenmilstein.com

                                      *Lead Counsel for Lead Plaintiff and the Proposed
                                      Class*

                                      GORDON BALL PLLC
                                      Gordon Ball (TN BPR #001135)
                                      7001 Old Kent Drive
                                      Knoxville, TN 37919
                                      Tel: (865) 525-7028
                                      Fax: (865) 525-4679
                                      gball@gordonball.com

EDWARD D. SULLIVAN LAW OFFICE
Edward David Sullivan
PO Box 11714
Columbia, SC 29211
Telephone: (803) 451-2775
Facsimile: (803) 451-2770
Email: esullivan@esullivanlaw.com

DARYL G. HAWKINS LAW OFFICE
Daryl G. Hawkins
1331 Elmwood Avenue, Suite 305
Columbia, SC 29201
Telephone: (803) 733-3531
Facsimile: (803) 799-9202
Email: dgh@dghlaw.net

*Additional Counsel for the Proposed Class*

## CERTIFICATE OF SERVICE

I certify that on May 11, 2022, I electronically filed Lead Plaintiff's Reply Memorandum in Support of its Motion to Compel and for Sanctions using the Court's CM/ECF system. A copy of this filing will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

*/s/ William Tinkler*