UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL 98 PENSION FUND on behalf of itself and all others similarly situated,<br><br>    Plaintiffs,<br><br>vs.<br><br>DELOITTE & TOUCHE LLP; DELOITTE LLP,<br><br>    Defendants. | Case No. 3:19-cv-3304 |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR PROTECTIVE ORDER
REGARDING PLAINTIFF'S NOTICE OF DEPOSITION OF DEFENDANTS**

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT .................................................................................................................................. 5

    I.    DISCOVERY-ON-DISCOVERY IS UNWARRANTED ..................................... 5

        a.    There Are No Discovery Deficiencies Warranting Discovery-on-Discovery ........................................................................................................ 5

        b.    The Discovery-on-Discovery Plaintiff Seeks Bears no Nexus to the Claimed Discovery Deficiencies and is Unduly Burdensome and Disproportionate to the Needs of the Case ................................................. 11

    II.    DISCOVERY PREMISED ON SEPARATE REGULATORY INVESTIGATIONS OR ON NON-PARTY SUBPOENAS IN OTHER CASES IS INAPPROPRIATE ............................................................................... 13

    III.    TOPIC 1 REMAINS OVERBROAD AND UNDULY BURDENSOME ........... 15

CONCLUSION ............................................................................................................................. 15

# TABLE OF AUTHORITIES

**Cases**                                                                                                       Page(s)

*Allen v. City of Graham*,
   2021 WL 2037983 (M.D.N.C. May 21, 2021) ........................................................................5

*Alley v. MTD Prods., Inc.*,
   2018 WL 4689112 (W.D. Pa. Sept. 28, 2018) .........................................................................5

*Burd v. Ford Motor Co.*,
   2015 WL 4137915 (S.D.W. Va. July 8, 2015) ........................................................................5

*In re Caesars Ent. Operating Co., Inc.*,
   2018 WL 2431636 (Bankr. N.D. Ill. May 29, 2018) ...............................................................5

*Cap. Ventures Int'l v. J.P. Morgan Mortg. Acquisition Corp.*,
   2014 WL 1431124 (D. Mass. Apr. 14, 2014) .......................................................................14

*Freedman v. Weatherford Int'l Ltd.*,
   2014 WL 3767034 (S.D.N.Y. July 25, 2014) .......................................................................11

*In re Jemsek Clinic, P.A.*,
   2013 WL 3994666 (Bankr. W.D.N.C. Aug. 2, 2013) ............................................................12

*Martin v. Allstate Ins. Co.*,
   292 F.R.D. 361 (N.D. Tex. 2013) .....................................................................................2, 12

*Moore v. Publicis Groupe*,
   287 F.R.D. 182 (S.D.N.Y. 2012) ............................................................................................8

*Palmer v. Cognizant Tech. Sols. Corp.*,
   2021 WL 3145982 (C.D. Cal. July 9, 2021) ...........................................................................9

*Raymond James & Assocs., Inc. v. 50 N. Front St. TN, LLC*,
   2020 WL 4572356 (W.D. Tenn. Aug. 7, 2020) ......................................................................8

*Ruiz-Bueno v. Scott*,
   2013 WL 6055402 (S.D. Ohio Nov. 15, 2013) .......................................................................5

*Scott Hutchison Enters., Inc. v. Cranberry Pipeline Corp.*,
   318 F.R.D. 44 (S.D.W. Va. 2016) ..........................................................................................8

*Slocum v. Int'l Paper Co.*,
   2019 WL 8918747 (E.D. La. Mar. 15, 2019) .....................................................................6, 7

*In re Smith & Nephew Birmingham Hip Resurfacing Hip Implant Prod. Liab.
   Litig.*,
   2020 WL 4286876 (D. Md. July 27, 2020) ............................................................................5

# TABLE OF AUTHORITIES

*Turner v. United States*,
   736 F.3d 274 (4th Cir. 2013) ...............................................................................................10

*In re Weatherford Int'l Sec. Litig.*,
   2013 WL 5788687 (S.D.N.Y. Oct. 28, 2013).........................................................................14

*Wesolek v. Wesolek*,
   2021 WL 7502540 (M.D. Fla. Apr. 16, 2021)..................................................................3, 11

*Youngevity Int'l Corp. v. Smith*,
   2017 WL 6541106 (S.D. Cal. Dec. 21, 2017)...........................................................................8

**Other Authorities**

*Sedona Principles, Third Edition*, 19 SEDONA CONF. J. 1, Cmt. 6.b, 123-24 (2018).......................5

Defendants, by and through their undersigned counsel, respectfully submit this reply brief in support of their Motion for Protective Order (ECF 119, the "Motion" or "Mot.") and in response to Plaintiff's Opposition to Defendants' Motion (ECF 127, the "Opposition" or "Opp.").[1]

## PRELIMINARY STATEMENT

Plaintiff's Opposition brief is more remarkable for what it does not say than for what it does. Though the indignation exuding from that brief rivals that of its Motion to Compel, Plaintiff concedes that all but one of the Topics and Requests to which Deloitte has objected seek *discovery about Deloitte's discovery process*, *i.e.*, "discovery-on-discovery." Plaintiff likewise does not dispute that before a party is entitled to get such discovery-on-discovery, it must show that the information it seeks is relevant and proportional to the needs of the case on the basis that the other "party's discovery compliance has reasonably been drawn into question." Opp. at 15 (quotations omitted, alterations incorporated). And yet, while it repeatedly impugns Deloitte's candor and condemns its discovery responses as deficient, inadequate, disorganized, or worse, the spurious bases Plaintiff offers for taking discovery about discovery, rather than discovery about its claim, boil down to one mischaracterization after another. Simply put, Deloitte has complied with its discovery obligations, and Plaintiff fails to demonstrate that it should be permitted to waste substantial time and money scrutinizing Deloitte's discovery processes and procedures in this case —let alone Deloitte's discovery processes and procedures at large, which, remarkably, is what the 30(b)(6) Notice seeks.

As Plaintiff well knows and again does not contest, Deloitte produced to Plaintiff *over a year ago* all of the audit workpapers for the Relevant Audits, which are the formal record of D&T's audit work that Plaintiff challenges in this case. Plaintiff's counsel has acknowledged that those

---

[1] Capitalized terms not defined herein are defined in the Motion.

- 1 -

documents are the most important ones in this case. As Plaintiff also does not contest, Deloitte subsequently made a series of substantial document productions as summarized in the Motion including workpapers from D&T's audits of SCANA before and after the 2015 and 2016 audits challenged in this case, and ESI—including emails and other electronic documents—from no fewer than *26 custodians*. On that record alone, not to mention the myriad other ways Deloitte has sought to accommodate Plaintiff's increasingly unreasonable discovery demands, Plaintiff's assertions that Deloitte has shirked its obligations or hidden the proverbial ball lack any credibility. A wholesale and costly investigation of Deloitte's discovery practices is simply unwarranted.

As the Court has likely realized, Plaintiff's ill-conceived 30(b)(6) Notice is of a piece with the similarly ill-conceived discovery it seeks on its Motion to Compel. That Motion will be heard alongside this one, and for good reason: in both instances, Plaintiff seeks to misuse the tools of civil discovery to figuratively turn Deloitte upside down, shake it, and see what falls out. Among other things, the Motion to Compel seeks vast amounts of information pertaining to entities *other than SCANA* and is premised on demonstrably false assumptions about whether all search term "hits" are automatically subject to production. Plaintiff's Notice—which includes some *15 pages* of examination topics, instructions, definitions, and document requests—is equally baseless, seeking to turn discovery in this case into an investigation of Deloitte's preservation and discovery practices rather than a means of obtaining information relevant to its claim and proportional to the needs of the case. Just as the discovery sought in the Motion to Compel should be denied, the Court should enter a protective order with respect to the Notice. *See, e.g.*, *Martin v. Allstate Ins. Co.*, 292 F.R.D. 361, 364 (N.D. Tex. 2013) (Rule 30(b)(6) testimony on defendant's document retention policies, computer systems, and discovery responses denied as overbroad and irrelevant where defendant provided a "plausible" explanation regarding its document production process).

Moreover, the law makes clear that discovery-on-discovery of the kind Plaintiff now seeks is *necessarily* disproportionate to the needs of the case because there is no nexus between the complained-of document deficiencies and Deloitte's methods of document retention, collection, or production. *See, e.g.*, *Wesolek v. Wesolek*, 2021 WL 7502540, at *4 (M.D. Fla. Apr. 16, 2021) (discovery-on-discovery is not appropriate unless the party seeking it explains "in sufficient factual detail" why the document production was deficient "*as a result of the methods used to preserve, collect, identify, process, or produce those documents*") (emphasis in original). Here, Plaintiff has not even attempted to connect the dots between the alleged discovery deficiencies and the broad discovery it seeks. Indeed, though it refuses to admit it, Plaintiff's grievances turn almost entirely on retroactively revising its own interpretations of terms like "SCANA audits" and "Consortium" to suit the needs of the hour. Plaintiff simply fails to explain how discovery of Deloitte's document preservation and production policies and practices could shed any light on its own tactical attempt to shift the goalposts, cry foul, and blame Deloitte.

Put plainly, the discovery-on-discovery sought by Topics 4–12 and Requests 3–11 is improper, unnecessary, wasteful, and wholly disproportionate to the needs of the case. Even so, and contrary to Plaintiff's suggestion, Deloitte has not asked the Court to "totally prohibit a deposition" here. Opp. at 12. In fact, Deloitte has already offered to designate a witness on Topic 2 in the Notice and offered a declaration on Topic 3. The critical difference between those Topics and the others in Plaintiff's Notice is that *Topics 2 and 3 could at least be related to the substance of Plaintiff's securities claim* and, once limited by Deloitte's reasonable objections, are not so overbroad as to be entirely unworkable and inappropriate. That is not the case for Plaintiff's other Topics and Document Requests that are all about *discovery*, not substance. Nor is it the case for Topic 1 which, for similar reasons, remains overbroad even in Plaintiff's revised formulation.

The impropriety of Plaintiff's Notice is readily apparent in the broader context of the case and what discovery has shown thus far. The sole basis on which Plaintiff told this Court its claim was not time barred was Plaintiff's allegation that Deloitte had the "Bechtel Report" in its possession prior to issuing the two audit opinions challenged in this case.[2] But discovery from Deloitte and from Bechtel has put the lie to this allegation. Indeed, Plaintiff subpoenaed Bechtel and received over 8,000 documents from it over five months ago, on November 29, 2021. Plaintiff has raised no objection to that production. It has not sought to compel any further documents from Bechtel, nor even chosen to seek testimony from any Bechtel witness. That alone is striking, given that Plaintiff pinned its entire case to the Bechtel Report. Yet, *nothing* in Bechtel's production, or in the more than 700,000 pages produced by Deloitte, corroborates Plaintiff's allegation that Deloitte knew of the Bechtel Report when performing the Relevant Audits. Undeterred, Plaintiff has represented yet again to this Court that it has "identified evidence showing Deloitte was aware of both the Bechtel assessment and all the facts that Bechtel relied on." Opp. at 2. But here Plaintiff offers only its counsel's say-so without a scrap of supporting evidence in any of the more than *40 exhibits* filed with the pending motions or anywhere else. That, of course, is because the evidence does not exist. Deloitte, and perhaps the Court, are left to wonder whether Plaintiff's overwrought discovery demands are just a desperate reaction to the fact that its core scienter allegation has proven completely unsupportable.

The bottom line is clear: Plaintiff's demand for discovery-on-discovery is inappropriate and unwarranted, and the discovery it seeks in Topic 1 is vastly overbroad, even as Plaintiff proposes to modify it. Deloitte's Motion for Protective Order should be granted.

---

[2] *See* Plaintiff's Motion to Dismiss Opposition Brief, ECF 53 at 50.

**ARGUMENT**

I. **DISCOVERY-ON-DISCOVERY IS UNWARRANTED**

   a. **There Are No Discovery Deficiencies Warranting Discovery-on-Discovery**

Plaintiff concedes that all but one of the challenged Topics and Requests constitute discovery-on-discovery, Opp. at 20, which is presumptively improper. A "party cannot seek discovery of another party's discovery processes without any showing of bad faith or unlawful withholding of documents." *Alley v. MTD Prods., Inc.*, 2018 WL 4689112, at *2 (W.D. Pa. Sept. 28, 2018) (internal quotations omitted). Plaintiff comes nowhere close to making this required showing and therefore fails to rebut the presumption that discovery-on-discovery is "not an appropriate topic of discovery." *Allen v. City of Graham*, 2021 WL 2037983, at *7 n.13 (M.D.N.C. May 21, 2021) (quoting *Fish v. Air & Liquid Sys. Corp.*, 2017 WL 697663 (E.D.N.C. Dec. 28, 2017)); *In re Smith & Nephew Birmingham Hip Resurfacing Hip Implant Prod. Liab. Litig.*, 2020 WL 4286876, at *2 (D. Md. July 27, 2020) (same, also quoting *Fish*).[3]

To be sure, Plaintiff asserts repeatedly that there are material discovery deficiencies in Deloitte's production of documents. But those assertions lack any basis in reality. For example, Plaintiff urges that Deloitte somehow misled it about the meaning of the word "Consortium," when

---

[3] As it has done before, Plaintiff relies on cases that are totally inapposite (*e.g.*, where a party failed to issue a litigation hold, made no effort to search for key documents, or refused to share any details about its ESI search). *See, e.g.*, *In re Caesars Ent. Operating Co., Inc.*, 2018 WL 2431636 (Bankr. N.D. Ill. May 29, 2018) (party failed to issue litigation hold after commencement of litigation); *Burd v. Ford Motor Co.*, 2015 WL 4137915 (S.D.W. Va. July 8, 2015) (employees searched hard drives without looking for documents concerning the central factual issue in the case); *Ruiz-Bueno v. Scott*, 2013 WL 6055402 (S.D. Ohio Nov. 15, 2013) (permitting discovery-on-discovery because defendants "have been reluctant to share" information about their ESI searches with plaintiffs). In any event, even these inapposite cases generally support the proposition that the burdens associated with discovery-on-discovery may be justified only where the requesting party has shown "specific, tangible, evidence-based indicia . . . of a material failure by the responding party to meet its [discovery] obligations." *The Sedona Principles, Third Edition*, 19 SEDONA CONF. J. 1, Cmt. 6.b, 123–24 (2018). Plaintiff's grievances come nowhere near that standard.

in fact Deloitte construed that term exactly as Plaintiff itself defined it in its Complaint and RFPs; namely, as a collective of companies rather than the individual companies that make up that collective.⁴  The current dispute over the meaning of "Consortium" arises only from Plaintiff's recent decision to disavow its prior definition—not to mention plain English and common sense— and instead reinterpret the term in order to create an unwarranted discovery dispute.  This "gotcha" approach to litigation is improper under any circumstances; it certainly does not meet the threshold requirements for obtaining invasive discovery from Deloitte about discovery itself.

Moreover, even if it were somehow reasonable for Plaintiff now to reject its own earlier definition of "Consortium," this dispute would boil down to no more than a question of whether additional documents should be produced if the term "Consortium" were now ***reinterpreted*** according to Plaintiff's new definition.  And even if the Court were to adopt that reinterpretation (which it should not), discovery-on-discovery would still be unwarranted, both because there was no bad faith or improper withholding of documents in the first place and because the definitional issue has nothing to do with the process or methodologies of discovery.  *See Slocum v. Int'l Paper Co.*, 2019 WL 8918747, at *4–7 (E.D. La. Mar. 15, 2019) (denying discovery-on-discovery where dispute was "regarding relevance," not "method of locating documents").

The same is true of Plaintiff's attempt to rewrite the Amended Scheduling Order (which Plaintiff hardly references in the Opposition).  As the Court is aware, in the interest of compromise, Deloitte has repeatedly offered to produce to Plaintiff all documents it produced to the SEC in the SEC's investigation of Toshiba, to the extent those documents hit on search terms such as "SCANA," "V.C. Summer," "New Nuclear Development," or "NND."  In the face of this very reasonable proposal by Deloitte—which Plaintiff has flatly rejected—there is no basis to allow the

---

⁴ *See* Opposition to Plaintiff's Motion to Compel, ECF 124 ("MTC Opp.") at 13–15, 23–24.

- 6 -

costly and burdensome discovery-on-discovery Plaintiff demands. The Parties' dispute here is at most a disagreement as to the proper scope of production, not an issue concerning the integrity of the production process itself. Discovery-on-discovery is unwarranted for that reason as well. *See Slocum*, 2019 WL 8918747, at *4–7.

Plaintiff's Opposition also grossly mischaracterizes the Parties' negotiations and agreement regarding Deloitte's ESI search and review. But the record is clear: Plaintiff's demands were overly burdensome, Deloitte proposed an alternative, and Deloitte ultimately produced to Plaintiff much more than was reasonably necessary. For example, Plaintiff initially proposed *nine pages* of search terms, with exceptionally complex search strings including up to ***354 terms and connectors for a single request***. ECF 124-11, Appendix B at 12–20. Faced with such an unwieldy discovery demand, Deloitte proposed "a simpler approach to ESI searching"—*i.e.*, "one set of search terms that essentially asks two questions: (1) does this electronic document relate to SCANA?; and (2) does this electronic document relate to the nuclear project? If the answer to these questions is yes, Defendants will review the document." ECF 124-12 at 2. Plaintiff responded a week later demanding broader search terms across the board, and an even "broader set of search terms" for six specific individuals, including the audit partner, the managers who worked under her, and the engagement quality control review partner—who Plaintiff termed the "Group 1" custodians. ECF 124-6 at 1. In the same letter, Plaintiff also demanded information about hours billed on the audits by ***32*** other individuals, which Deloitte promptly provided. ECF 124-6 at 3–4; ECF 127-2 at 5–6. After much back and forth, Deloitte agreed to a considerably broader scope of ESI discovery than it had initially proposed, namely, agreeing to: (1) the 95 search terms that Plaintiff proposed; (2) the six Group 1 custodians that Plaintiff demanded; and (3) an additional 20 custodians that Plaintiff selected as Group 2 custodians. ECF 124-7. In short,

- 7 -

Deloitte ultimately gave Plaintiff virtually all of what it demanded to avoid burdening the Court and the parties with this unnecessary and costly motion practice.

Plaintiff's assertions about production of search term "hits" are even further off base. Plaintiff asserts that Deloitte's document production exhibits "significant deficiencies," "discrepancies," and "shortfalls for nearly every search term," because Deloitte did not produce all of the documents that hit on Plaintiff's search terms. Opp. at 7. But as any sophisticated litigant well knows, a document that hits on an agreed search term is not necessarily responsive to an RFP or even relevant to the case at all—instead, such a document must be reviewed to ensure that it is in fact responsive, and not, for example, a "false positive." *See* MTC Opp. at 24; *Youngevity Int'l Corp. v. Smith*, 2017 WL 6541106, at *10 (S.D. Cal. Dec. 21, 2017) ("a hit on the parties' proposed search terms" is not synonymous with "responsiveness"); *Moore v. Publicis Groupe*, 287 F.R.D. 182, 191 (S.D.N.Y. 2012) (search terms "often are over-inclusive, that is, they find responsive documents but also large numbers of irrelevant documents."). There is nothing novel, much less nefarious or suspect, about the fact that Deloitte performed a review for responsiveness. Indeed, it is required. *See Raymond James & Assocs., Inc. v. 50 N. Front St. TN, LLC*, 2020 WL 4572356, at *2–3 (W.D. Tenn. Aug. 7, 2020) (sanctioning party who failed to conduct responsiveness review); *Scott Hutchison Enters., Inc. v. Cranberry Pipeline Corp.*, 318 F.R.D. 44, 54 (S.D.W. Va. 2016) (document dumps improperly "bury relevant evidence and force the receiving party to expend considerable time and expense parsing through documents" for relevant information).

The Parties' correspondence amply demonstrates the Parties' mutual understanding that Deloitte was to review for responsiveness. *See, e.g.*, ECF 124-6 at 1 (Plaintiff's counsel recognizing Deloitte's "burden of reviewing documents for relevance" prior to production); ECF 124-12 at 2 (stating that Defendants would "review the document[s]" hitting on search terms).

Ignoring this clear record, Plaintiff muddies the waters by suggesting that the percentage of documents produced for certain search terms is drastically lower than Plaintiff would have expected. But Plaintiff offers no explanation of what it thinks the mystical "correct" percentage would be, much less why it thinks that. Instead, it simply contrasts the volume of hits against the volume of documents produced and concludes from the difference that Deloitte's extensive production must be deficient. Courts have paid no heed to such arguments. *See Palmer v. Cognizant Tech. Sols. Corp.*, 2021 WL 3145982, at *9 (C.D. Cal. July 9, 2021) ("[T]he Court determines that plaintiffs' arguments that the statistics are 'surprisingly low,' or that 'most custodians have inexplicably low production rates considering the relevance of the search terms,' and other such statements, lack foundation.").

Moreover, as Deloitte has explained, many "hits" on Plaintiff's search terms simply turned up material that was not responsive to any RFP. *See* MTC Opp. at 25–27 (explaining irrelevant search term hits); *see also Palmer*, 2021 WL 3145982, at *9 ("The Court further finds that defendants' explanations for the statistical differences . . . are reasonable and persuasive."). For example, many hits on the search term "Bechtel" were news articles or industry blast publications that mentioned Bechtel but were unrelated to SCANA or to Deloitte's audits of SCANA. MTC Opp. at 26–27 & Ex. O thereto. This is unsurprising: Bechtel is one of the largest private companies in the United States with 55,000 employees and thus provides services to many companies other than SCANA.[5] Other false positive hits were for a Deloitte employee with the last name Bechtel. Ex. A. Another false positive related to a Boy Scout trip to "the Summit Bechtel Reserve" in West Virginia. Ex. B. None of these examples—and Deloitte could provide

---

[5] *See* Forbes, America's Largest Private Companies, available at https://www.forbes.com/largest-private-companies/list/#tab:rank.

many more—has anything at all to do with SCANA, Deloitte's 2015 and 2016 audits of SCANA, or any other aspect of this case.[6] Plaintiff's attempt to recast routine document review procedures as an effort to hide information is truly a waste of the Court's time.

The same is true of other issues Plaintiff raises. For example, Plaintiff complains about the lack of ESI data for a few members of the SCANA audit team. Opp. at 23. But even though Plaintiff fails to acknowledge it now, Deloitte specifically *notified* Plaintiff prior to running any ESI search terms that there was no ESI available for three former employees. ECF 127-2. One of those former employees worked only nine hours on the SCANA engagement and received a litigation hold notice prior to leaving Deloitte—however, as Defendants explained, that individual possessed no relevant materials. *Id.* at 6 n.3. The other two former employees left Deloitte in 2015 and 2016—years before this litigation was filed and well before the Nuclear Project was abandoned. ECF 127-3 at 5. As such, their data was not preserved in the ordinary course of business when they left Deloitte. Plaintiff's insinuation that these circumstances evidence bad faith by Deloitte is almost comical; these basic and unremarkable facts are hardly uncommon and, in any event, they were made known to Plaintiff many months ago.

Likewise, Plaintiff's claim that "Deloitte failed to produce . . . entire categories of documents" such as instant messages, text messages and voicemails is at best misleading and at worst a mischaracterization of the facts. Opp. at 7–8. Plaintiff here attempts to enlarge the duty to preserve to encompass periods before the litigation began (and when ESI was being collected and searched). That attempt must fail. *See Turner v. United States*, 736 F.3d 274, 282 (4th Cir. 2013) ("Generally, it is the filing of a lawsuit that triggers the duty to preserve evidence."). As

---

[6] Although Deloitte does not believe it is necessary to resolve this dispute, if the Court would find it helpful, Deloitte would submit the unproduced "Bechtel" search hits—or any other non-privileged documents—to the Court or a Magistrate Judge for *in camera* review.

with many large organizations, and as Plaintiff has known for many months now, instant messages, text messages, and voicemails at Deloitte are not centrally stored and, in many cases, are discarded in the ordinary course—well before there is any conceivable need to preserve them. *See* ECF 118-18 at 4 (Deloitte's October 7, 2021 Letter to Plaintiff: "As for chats, voicemails, and texts, please note that they are not maintained centrally in non-custodial systems or repositories . . . each preservation notice recipient has been specifically instructed to preserve any such ESI . . . [and any such] documents will be collected and reviewed, and any responsive, nonprivileged items will be produced."). There is nothing improper about this and no legitimate reason for Plaintiff to make an issue of it now.[7]

### b. The Discovery-on-Discovery Plaintiff Seeks Bears no Nexus to the Claimed Discovery Deficiencies and is Unduly Burdensome and Disproportionate to the Needs of the Case

Discovery-on-discovery is unwarranted unless there exists a clear nexus between the alleged discovery deficiency and the specific discovery-on-discovery sought. *See, e.g., Wesolek*, 2021 WL 7502540, at *4 (party seeking discovery-on-discovery "must . . . explain in sufficient factual detail" why the "document production was insufficient *as a result*" of the methods used to collect and produce documents; "Plaintiff is warned that the Court will not permit or abide a general fishing expedition through the use of unwarranted 'discovery on discovery' as a distraction from the merits of the litigation") (emphasis in original); *Freedman v. Weatherford Int'l Ltd.*, 2014 WL 3767034, at *3 (S.D.N.Y. July 25, 2014) (denying discovery-on-discovery where the "suggested remedy is not suited to the task"). Such a nexus is plainly lacking here. The Parties'

---

[7] Plaintiff also complains that "Deloitte has not produced a single document" (Opp. at 11) from audit tools and data repositories, ignoring the audit workpapers that it has had for over a year. ECF 119-21 at 7. Moreover, Plaintiff ignores that Deloitte had already planned to make supplemental productions in the coming weeks, which will provide Plaintiff voicemails and other non-privileged documents that pertain to the SCANA audits (as opposed to personal matters, Firm matters, other clients of Deloitte, or any other topic not relevant to this case). *See* Mot. at 7 n.4.

- 11 -

primary discovery dispute is about the proper scope of document production in light of Plaintiff's attempted redefinition of the term "Consortium," its misreading of the Amended Scheduling Order, and its flawed position on the production of ESI that hits on search terms. Plaintiff, however, seeks extensive discovery about Deloitte's preservation and production methodologies, computer systems, and the like. Yet Plaintiff fails to explain how discovery into these topics even relates to the core discovery dispute, much less why such intrusive and costly discovery would be required to remedy the purported discovery violations or proportionate to the needs of the case. This alone is sufficient reason to grant the protective order.

A protective order should also be granted for the additional reason that Plaintiff's proposed deposition topics and document requests are overly broad and unduly burdensome. *See, e.g.*, *Martin*, 292 F.R.D. at 363–64 (granting protective order denying deposition topics "concerning [d]efendant's document preservation and production policies," and "agree[ing] with [d]efendant that [the Topics were] overbroad and irrelevant" where "there is no evidence to suggest that [defendant] lost or destroyed any documents in this case"); *In re Jemsek Clinic, P.A.*, 2013 WL 3994666, at *9 (Bankr. W.D.N.C. Aug. 2, 2013) (granting protective order against discovery of irrelevant document retention policies, finding the request "so broad, so expensive, and so attenuated that it should be disallowed"). As Defendants have explained, Plaintiff's Notice is exceptionally broad and burdensome. Several of the Topics and Requests in Plaintiff's Notice include multiple subparts; for example, Topic 4 has *8 subtopics*, and Topic 12 has *23 subtopics*. The sheer volume and breadth of information sought, which bears no connection to the substance of the case, would likely require preparation of several witnesses to testify on the myriad topics

set forth in Plaintiff's deposition notice.[8]  *See* Mot. at 9, 19–20.  Plaintiff asserts that it was just providing "examples" that do not burden Defendants.  Opp. at 25.  That makes no sense.  By definition, each of Plaintiff's "examples" and more would be covered by the Topics.  By listing those "examples," the Notice would obligate Defendants to prepare a witness on each of those "examples" (*i.e.*, subtopics), in addition to the topic more generally, and Plaintiff has not argued otherwise.  In short, the discovery-on-discovery that Plaintiff seeks is wholly disproportionate to the needs of this case and should be precluded.

### II. DISCOVERY PREMISED ON SEPARATE REGULATORY INVESTIGATIONS OR ON NON-PARTY SUBPOENAS IN OTHER CASES IS INAPPROPRIATE

Topic 8—which seeks discovery about discovery in other litigations and regulatory investigations—highlights the very reasons why that discovery is inappropriate and unwarranted here.  Plaintiff seeks to rewrite the Court's Amended Scheduling Order to manufacture a discovery violation and argue from that supposed violation that all materials related to other regulatory investigations must be produced.  Plaintiff's argument fails in its premise.  As Deloitte has explained, ***there was no violation of any order***.  Mot. at 8; MTC Opp. at 17–18, 20–21.  Deloitte fully satisfied its obligations to produce "[a]ll documents previously produced by Defendants to third parties or the government related to or concerning Defendants' audits of SCANA" with its March 31, 2021 production, which included every document Deloitte produced to the SEC and USAO in connection with their investigations of SCANA.  No matter how many times Plaintiff contests it, documents relating to Deloitte's consulting services for Toshiba and Westinghouse are just not the same as documents "***related to or concerning Defendants' audits of SCANA***."  Indeed, had Plaintiff accepted Deloitte's offer to produce all Toshiba/Westinghouse Documents that hit on

---

[8] Even beyond the very onerous requests made of Deloitte, the Notice even calls for testimony about technology and systems used by SCANA.  ECF 119-2, Topic 4.

- 13 -

SCANA-related search terms, Plaintiff would already know that these documents do not relate to D&T's audits of SCANA.

In any event, discovery into "Deloitte's receipt of, responses to, and communications about subpoenas and documents requests Deloitte received in connection with" government investigations is irrelevant. Opp. at 26. Whether Deloitte received subpoenas and produced documents even in connection with the SEC's SCANA investigation—let alone the SEC's separate Toshiba investigation—has no bearing on Plaintiff's civil claim at issue in this litigation. *See, e.g.*, *In re Weatherford Int'l Sec. Litig.*, 2013 WL 5788687, at *3 (S.D.N.Y. Oct. 28, 2013) ("That the subject matter of the subpoenas is relevant may explain why documents *produced* to the SEC are discoverable, but not why disclosure of internal discussions, communications, or preparations related to those subpoenas is warranted."); *Cap. Ventures Int'l v. J.P. Morgan Mortg. Acquisition Corp.*, 2014 WL 1431124, at *3 (D. Mass. Apr. 14, 2014) (denying request for all of defendants' communications with regulators where defendants had already agreed to produce documents produced to the regulators that hit on search terms).

Similarly, Plaintiff's assumption that it is entitled to any and all documents produced in, or communications about, other civil cases is simply wrong. *See* Mot. at 21 n.12 (citing cases). Moreover, Plaintiff's rather ham-handed effort to embarrass Deloitte by stating that Deloitte identified a civil subpoena in one ratepayer case but not in another is a red herring. Although Deloitte did receive civil subpoenas in both *Cook v. Santee Cooper* and in *Lightsey v. SCE&G,* it ultimately *did not produce a single document in connection with either subpoena*. The confusion Plaintiff now seeks to exploit stemmed from the fact that the plaintiffs in *Lightsey* and *Cook* were both represented by the same counsel. But since nothing was ultimately produced in connection with either subpoena, there is no need for the Court to address the issue any further.

**III.     TOPIC 1 REMAINS OVERBROAD AND UNDULY BURDENSOME**

While it does not seek discovery-on-discovery, Topic 1 of the Notice is incredibly overbroad, seeking testimony on the entirety of Deloitte's organizational structure and reporting relationships, protocols, practices, and quality controls across all Deloitte firms and operations in the United States for more than five years encompassing at least the years 2014 through 2018. The vast majority—if not all—of this information would be entirely irrelevant to Plaintiff's claim and would be very burdensome to provide given the sheer breadth of the request. *See* Mot. 23–24.

Even as revised by Plaintiff, Topic 1 remains disproportionate to the needs of the case. Indeed, instead of asking about Deloitte's policies, procedures and controls at large, Plaintiff's proposed compromise seeks testimony on the same very broad set of topics to the extent they may be "related to or concerning Deloitte's provision of professional services to SCANA, Dominion Energy, Westinghouse Electric Company LLC, Chicago Bridge & Iron Company, Stone & Webster, and Toshiba Corporation." Opp. at 11. But Plaintiff's claim is about Deloitte's audits of *SCANA's* 2015 and 2016 financial statements. It is not about any and all other services that any Deloitte entity in the United States may have provided to the other listed entities—let alone every policy, procedure, or control conceivably related thereto. Thus, Topic 1 even as modified by Plaintiff remains vastly overbroad and disproportionate to the needs of the case. The Court should enter a protective order on Topic 1.

**CONCLUSION**

For the foregoing reasons, Defendants respectfully request that this Court grant their Motion for Protective Order in its entirety.

      /s/ Christopher A. Ogiba
Christopher A. Ogiba, Fed. ID No. 9042
Lesley A. Firestone, Fed. ID No. 11719
Clinton T. Magill, Fed. ID No. 12459
Moore & Van Allen, PLLC
78 Wentworth Street
Charleston, South Carolina 29401
Telephone:  843-579-7066
Facsimile:   843-579-8749
Email: chrisogiba@mvalaw.com
          lesleyfirestone@mvalaw.com
          clintonmagill@mvalaw.com

Mark A. Nebrig
John A. Fagg, Jr.
Nader Raja
Kristen Kenley
Moore & Van Allen, PLLC
100 North Tryon Street
Suite 4700
Charlotte, North Carolina 28202-4003
Telephone: 704-331-3602
Facsimile:  704-339-5974
E-mails:  marknebrig@mvalaw.com
          johnfagg@mvalaw.com
          naderraja@mvalaw.com
          kristenkenley@mvalaw.com

Scott A. Edelman
Jed M. Schwartz
Andrew B. Lichtenberg
Milbank LLP
55 Hudson Yards
New York, New York 10001-2163
Telephone: 212-530-5000
Facsimile:  212-530-5219
Email:   sedelman@milbank.com
          jschwartz@milbank.com
          alichtenberg@milbank.com

*Attorneys for Defendants*
*Deloitte & Touche LLP and Deloitte LLP*

Charleston, South Carolina
May 13, 2022