# Exhibit B

AMENDED AND RESTATED
AGREEMENT AND DECLARATION OF TRUST
FOR THE

LOCAL UNION NO. 98 IBEW PENSION PLAN

AGREEMENT AND DECLARATION OF TRUST made this 31st day of December , 1975, by and among The Philadelphia Division of the Penn-Del-Jersery Chapter of the National Electrical Contractors Association (hereinafter referred to as "Association") and International Brotherhood of Electrical Workers, Local Union 98 (hereinafter called "Local No. 98").

W I T N E S S E T H:

WHEREAS, there has heretofore been established a Local Union 98 IBEW Pension Plan, effective November 21, 1961 (hereinafter referred to as "Plan"); and

WHEREAS, an Agreement and Declaration of Trust, as amended, effective August 31, 1961, was made by and between the Association and Local No. 98; and

WHEREAS, the Association and the Union desire to make a new Agreement and Declaration of Trust which will supersede and replace the aforesaid amended Agreement and Declaration of Trust, in order to conform its provisions to the requirements of the Employee Retirement Income Security Act of 1974;

NOW, THEREFORE, in consideration of the premises and mutual covenants and agreements herein contained, it is hereby agreed as follows:

## ARTICLE I

### DEFINITIONS

Section 1.1  <u>Pension Plan</u>.  The term "Pension Plan" and "Plan" mean the plan, program, method and procedure originally adopted and as amended from time to time by the Individual Trustees setting forth and pertaining among other things, to the payment of retirement benefits to eligible Employees.

Section 1.2  <u>Association</u>.  The term "Association" shall mean The Philadelphia Division of the Penn-Del-Jersey Chapter of the National Electrical Contractors Association.

Section 1.3  <u>Covered Employer</u>.  The terms "Covered Employer" or "Covered Employers" mean any Employer which has become a party to the Plan and shall include any association, individual, partnership or corporation, including any wholly owned subsidiary, any affiliate, predecessor or successor engaged in the electrical construction industry as defined in the Pension Plan.  Employers may become Covered Employers of the Plan, provided they are signatories to a collective bargaining agreement with Union requiring contributions to the Trust Fund,

-2-

CONFIDENTIAL

Pltf-Local 98-0000050

and provided further that they are accepted as Covered Employers by the Board of Trustees.

Section 1.4  <u>Union</u>.  The term "Union" shall mean International Brotherhood of Electrical Workers, Local Union No. 98.

Section 1.5  <u>Effective Date</u>.  The "Effective Date" of the Plan means September 1, 1961.

Section 1.6  <u>Anniversary Date</u>.  The "Anniversary Date" of the Plan means September 1, 1962 or the September 1st of the year after 1962.

Section 1.7  <u>Plan Year</u>.  The term "Plan Year" means the period of four (4) months ending December 31, 1961, hereinafter referred to as the first Plan Year, or any calendar year after 1961.

Section 1.8  <u>Employee</u>.  The term "Employee" means exactly what it is defined to mean in Section 3(6) of the Act.

Section 1.9  <u>Collective Bargaining Agreement</u>.  The term "Collective Bargaining Agreement" means any labor agreement between the Union and a Covered Employer pursuant to which the Employer is required to make contributions to the Trust Fund.

Section 1.10  <u>Participant</u>.  The term "Participant" means exactly what it is defined to mean in Section 3(7) of the Act.

-3-

CONFIDENTIAL

Pltf-Local 98-0000051

Section 1.11 Pensioner. The term "Pensioner" means a former Participant who is receiving a retirement or disability pension under the Plan. A person cannot at the same time be a Pensioner and an Employee.

Section 1.12 Beneficiary. The term "Beneficiary" shall mean a person designated by a participant or pensioner or by the terms of the Pension Plan, who is or may become entitled to a benefit.

Section 1.13 Individual Trustees. The term "Individual Trustees" shall mean the Trustees named pursuant to Section 3 of this Trust Agreement and as constituted from time to time in accordance with the provisions of this Agreement.

Section 1.14 Contributions. The term "contributions" or "Payments" shall mean the money paid into the Pension Fund by a Covered Employer on behalf of its Employees.

Section 1.15 Pension Fund. The terms "Pension Fund," "trust Fund," "Trust" and "Fund" shall mean the entire trust estate of the Local Union No. 98 IBEW Pension Trust Fund as it may, from time to time, be constituted, including, but not limited to all funds received in the form of contributions, together with all contracts (including dividends, interests, refunds, and other sums payable to the Trustees on account of such contracts), all

-4-

CONFIDENTIAL

Pltf-Local 98-0000052

investments made and held by the Trustees, all income, increments, earnings, and profits therefrom, and any and all other property or funds received and held by the Trustees by reason of their acceptance of this Agreement and Declaration of Trust.

Section 1.16  Trust Agreement.  The terms "Trust Agreement" and "Agreement and Declaration of Trust" shall mean this instrument, including all amendments and modifications as may from time to time be made.

Section 1.17  Corporate Trustee.  The term "Corporate Trustee" shall mean the bank, trust or insurance company or other financial institution selected by the Board of Trustees to act as custodian of the cash, securities, or other assets of the Trust Fund.  In addition to acting as custodian, the Corporate Trustee shall assume such additional obligations as are agreed upon in the Corporate Trust Agreement, as well as such obligations as are imposed upon corporate trustees by the Act.  Initially, the Corporate Trustee shall be "The Fidelity Bank."

Section 1.18  Corporate Trust Agreement.  The term "Corporate Trust Agreement" shall mean the Agreement between the Corporate Trustee and the Board of Trustees engaging the services of the Corporate Trustee, setting forth the powers and duties of the Corporate Trustee, and containing the terms and conditions under which the Corporate Trustee shall serve.

-5-

CONFIDENTIAL                                           Pltf-Local 98-0000053

Section 1.19 Investment Manager. The term "Investment Manager" shall mean exactly what it is defined to mean in Section 3(38) of the Act. The Corporate Trustee may, if agreed between itself and the Board of Trustees, serve as an Investment Manager.

Section 1.20 Act. The term "Act" shall mean the Employee Retirement Income Security Act of 1974, including any amendments as may from time to time be made and any regulations or rulings as may from time to time be promulgated pursuant to the provisions of the Act.

ARTICLE II

CREATION AND PURPOSES OF FUND

Section 2.1 The Trust Fund is created, established and maintained, and the Trustees agree to receive, hold and administer the Trust Fund, for the purpose of providing such benefits as now are, or hereafter may be, authorized or permitted by law for Participants and their Beneficiaries and in accordance with the provisions herein set forth and the Pension Plan. It is intended that this Trust Fund and Pension Plan be a "multi-employer plan" as that term is defined in Section 3(37) of the Act.

ARTICLE III

BOARD OF TRUSTEES

Section 3.1 Number, Appointment, Term.

(a) The Pension Fund shall jointly be administered

-6-

CONFIDENTIAL                                          Pltf-Local 98-0000054

by six (6) Trustees, three (3) of whom shall be appointed by the President of the Union and shall act as Employee Trustees, and three (3) of whom shall be appointed by the Association and shall act as Employer Trustees.

(b)    Trustees shall serve at the pleasure of the respective group which they represent but no group shall have the right to remove a Trustee until a successor is appointed.  A vacancy shall occur whenever a Trustee resigns or when a Trustee is removed as provided in Section 3.2, or by reason of death or incapacity.  Each of the Individual Trustees shall continue to serve as such until his death or incapacity, resignation or re- moval as hereinafter provided.

Section 3.2  Resignation and Removal.  An Individual Trustee may resign by giving thirty (30) days' notice in writing to the remaining Individual Trustees, or such shorter notice as the remaining Trustees may accept as sufficient.  Such notice shall state a date when such resignation shall take effect; and such resignation shall take effect on the dates specified in the notice unless a successor Individual Trustee shall have been appointed at an earlier date, in which event such resignation shall take effect immediately upon the appointment of such suc- cessor Trustee.  After the effective date of his resignation, such Individual Trustee shall become and remain fully discharged from any further duty or responsibility hereunder.

-7-

CONFIDENTIAL                                                                        Pltf-Local 98-0000055

The President of the Union may remove from the office of Trustee any Employee Trustee by mailing or delivering to said Trustee and each of the remaining Trustees and the Association a copy of the appropriate action taken by him. The Association may remove from the office of Trustee any Employer Trustee by mailing or delivering to said Trustee and each of the remaining Trustees and the Union a copy of the appropriate action taken by the Association.

Section 3.3  **Successor Trustees, Appointment.**  If any Employer Trustee shall die, become incapable of acting hereunder, resign, or be removed, a successor Employer Trustee shall be immediately appointed by the Association and a written certification by the Association to the Trustees shall be satisfactory evidence of such appointment. If any Employee Trustee shall die, become incapable of acting hereunder, resign, or be removed, a successor Employee Trustee shall be immediately appointed by the President of the Union and a written copy of the appointment duly certified by the Recording Secretary of the Union to the Trustees shall be satisfactory evidence of such appointment.

Section 3.4  **Successor Trustee, Assumption of Office.**  Any successor Individual Trustee shall, immediately upon his appointment as a successor Trustee and his acceptance of the Trusteeship in writing, become vested with all the property,

-8-

Pltf-Local 98-0000056

rights, powers and duties of an Individual Trustee hereunder with like effect as if originally named and all Individual Trustees then in office and the Corporate Trustee shall be immediately notified.

Section 3.5  <u>Acceptance of the Trust by Trustees</u>.  A Trustee shall execute a written acceptance in a form satisfactory to the Trustees and consistent with the Act and thereby shall be deemed to have accepted the Trust created and established by this Trust Agreement and to have consented to act as Trustee and to have agreed to administer the Trust Fund as provided herein. Such written acceptance shall be filed with the Fund's Administrator who shall notify the remaining Trustees of the receipt of such acceptance.

Section 3.6  <u>Trustees to Act without Compensation</u>.  The Trustees shall act in such capacity without compensation, but they shall be entitled to reimbursement for the expenses properly and actually incurred in the performance of their duties with the Trust Fund, including, without limitation, attendance at meetings and other functions of the Board of Trustees or its committees or while on business of the Board of Trustees, attendance at institutes, seminars, conferences or workshops for or on behalf of the Trust Fund.

Section 3.7  <u>Limitation of Liability of Trustees</u>.  The Trustees shall not be liable for the acts or omissions of any

-9-

Investment Manager, attorney, agent or assistant employed by them
pursuant to this Trust Agreement, if such Investment Manager,
attorney, agent or assistant was selected pursuant to this Trust
Agreement and such person's performance was periodically reviewed
by the Trustees who found such performance to be satisfactory;
provided that nothing herein shall relieve any Corporate Trustee
of any liability with regard to the performance of its employees.
The Trustees shall be entitled to rely upon all tables, evalua-
tions, certificates and reports furnished by the actuary, upon
all certificates and reports made by any Investment Manager or
custodian of the Fund, or by any certified public accountant duly
appointed by the Trustees, and upon all opinions given by any
legal or other expert duly appointed by the Trustees and shall be
fully relieved of all liability with respect to any action taken
or permitted by them which is reasonable under the circumstances
and is in good faith in reliance thereon.

Section 3.8  Office of the Fund.  The principal office
of the Trust Fund shall, so long as such location is feasible, be
located and maintained at McGee and Company, Two Girard Plaza,
Philadelphia, Pennsylvania 19102.  The location of the principal
office shall be made known to the parties interested in the Trust
Fund.  At such office, and at such other places as may be required
by law, there shall be maintained the books and records pertaining
to the Trust Fund and its administration.

-10-

CONFIDENTIAL                                    Pltf-Local 98-0000058

**Section 3.9** **Officers.** A Chairman of the Board of Trustees and a Secretary of the Board of Trustees shall be selected from among the Trustees. The Chairman and the Secretary positions shall rotate between the Employer and the Employee Trustees on an annual basis. The Employee Trustees shall choose their representative and the Employer Trustees shall choose their representative. Replacement shall be made in the same manner, it being expressly understood that neither the Employee Trustees nor the Employer Trustees may participate in the selection of a replacement for the other.

**Section 3.10** **Power to Act in Case of Vacancy.** If one of the offices of Employer Trustee is at any time vacant (vacancy means a post which is unfilled), one Employee Trustee shall be disqualified from acting or voting until the vacancy has been filled. Similarly, if the vacancy results from the lack of an Employee Trustee, an Employer Trustee shall be disqualified from acting or voting until the vacancy has been filled. However, no vacancy or vacancies on the Board of Trustees shall impair the power of the remaining Trustees, acting in the manner provided by this Trust Agreement, to administer the affairs of the Trust Fund notwithstanding the existence of such vacancy or vacancies.

**Section 3.11** **Meetings; Notices.** Periodic meetings of the Board of Trustees shall be held not less than two (2) times a

-11-

Pltf-Local 98-0000059

year. The dates of such meetings shall be fixed by the Chairman and in the event of his inability or refusal to act, then by a majority of the remaining Trustees, and may be called at any time providing that all individual Trustees are notified in writing at least five (5) days prior to the date of the meeting, setting forth the time and place it is to be held. Notification may be by registered mail, telegram, personal delivery or by telephone if immediately followed by a confirming letter; provided, however, that it shall not be necessary to give notice to any Individual Trustee who, either before, during, or after the meeting, waives such notice either orally or in writing. When a meeting is called, the letter of notification shall state the purpose of the meeting and the subject matter to be discussed. In the event all Individual Trustees shall concur in writing on the stated subject matter to be presented at a regularly scheduled meeting, such meeting may be deemed to have been formerly held, the business transacted and adjourned.

   **Section 3.12 Attendance at Meetings; Minutes**. All official meetings of the Trustees shall be attended only by the Trustees and shall not be open to the public, except that there may attend such other persons as may be designated by the Trustees or when invited so to do, and as may be otherwise required by law. Written minutes, a copy of which shall be furnished with

CONFIDENTIAL

Pltf-Local 98-0000060

reasonable promptness to each Trustee, shall be kept of all business transacted and of all matters upon which voting shall have occurred.

Section 3.13   Quorum; Voting; Action without Meeting.
Four (4) of the Individual Trustees present at any meeting shall constitute a quorum for the transaction of any business, provided that such number includes two (2) Employer Trustees and two (2) Employee Trustees, but less than a quorum may adjourn any meeting from time to time, and such meeting may be held as adjourned without further notice.

(a)   When a quorum is present at any meeting, a majority of the Individual Trustees present and voting shall decide any questions brought before such meeting, and the action of such quorum as defined above shall be valid and binding as the action of the Individual Trustees; provided, however, that in voting on any and all transactions involving the investment of principal and income of the Pension Funds and all questions of major policy in the administration of the Pension Fund and Pension Plan, the Individual Employee Trustees as a group shall have one (1) vote, the Individual Employer Trustees as a group shall have one (1) vote, and such action shall require the approval of both groups.  The one (1) vote of each group shall be cast in accordance with the decision of a majority of the Individual Trustees comprising such group.  The Individual Trustees may take action by

-13-

CONFIDENTIAL

Pltf-Local 98-0000061

unanimous consent without a meeting, but such consent must be confirmed in writing.

(b)  Any Individual Trustee may, by power of attorney or other written authorization, empower any other Individual Trustee to act in his behalf, and use his name for execution or signature of any documents for the purpose of this Agreement and of the Trust hereby created and of the Pension Plan.

Section 3.14  Manner of Acting in the Event of Deadlock.

(a)  If the Trustees shall fail to reach a majority vote on any issue, such issue shall be submitted by the Trustees to an impartial umpire promptly after such failure to reach a majority vote, but it is clearly understood that the umpire shall not have the power to alter any of the terms of this Trust Agreement or the Plan.  If the Trustees fail to agree upon an umpire within fifteen (15) days, the issue shall be submitted to the American Arbitration Association under the voluntary labor arbitration rules.  If within ten (10) days after the submission to the American Arbitration Association an impartial arbitrator has not been selected, any trustee or group trustees may petition the United States District Court for the Eastern District of Pennsylvania for the appointment of an impartial arbitrator.  The reasonable compensation of such umpire and the costs and expenses

-14-

CONFIDENTIAL

(including, without limitation, attorneys' and reporter's fees) incidental to any proceedings instituted to break a deadlock shall be paid by the Trust Fund.

(b)  The umpire shall upon notice to the Trustees hear the issues involved.  His decision shall be submitted in writing within a reasonable time fixed by the Trustees and shall be final and binding upon the Trustees.  The scope of any such proceeding before any such umpire shall be limited to the provisions of this Trust Agreement, the rules, regulations and by-laws adopted by the Trustees, and the Plan.  The umpire shall have no jurisdiction or authority to change or modify the provisions of this Trust Agreement or the Plan or to decide any issue arising under or involving the interpretation of any collective bargaining agreement.

Section 3.15  Removal of Trustee (Violation of Act).
The Board of Trustees shall initiate action to cause the removal of any fellow member Trustee who may be serving as a Trustee in violation of the Act.  The vacancy or vacancies caused by such a removal shall be filled in accordance with Section 3.3 of this Article.

ARTICLE IV

CONTRIBUTIONS AND COLLECTIONS

Section 4.1  Covered Employer Contributions.

(a)  Each Covered Employer shall make prompt contributions or payments to the Trust Fund in such amount and under

-15-

CONFIDENTIAL

Pltf-Local 98-0000063

the terms as are provided for in the applicable collective bar-
gaining agreement by and between the Union and the Association or
between the Union and a Covered Employer then in effect.  The
Covered Employer agrees that all contributions shall constitute
an absolute obligation to the Trust Fund, and such obligation
shall not be subject to set-off or counterclaim which the Covered
Employer may have for any liability of the Union or of an Employee.

       (b)  Contributions to the Fund shall be paid to
the Trustees or to such depository as the Trustees shall desig-
nate, only by check, bank draft, money order or other recognized
written method of transmitting money or its equivalent.  The
payment of contributions shall be made periodically at such times
as the Trustees shall specify by rules and regulations.

       (c)  Each Covered Employer shall be responsible
only for the contributions payable by it on account of its Employees
except as may be otherwise provided by law or by agreement be-
tween such Covered Employer and the Fund.  In the absence of such
agreement the Association or any Covered Employer shall not be
responsible for the contributions, payments or other obligations
of any other Covered Employer, or otherwise.

      Section 4.2  Receipt of Payment and Other Property of
Trust.  The Trustees or such other person or entity designated or
appointed by the Trustees in accordance with Section 5.7 of Arti-
cle V (Plan Administrator), are hereby designated as the persons

-16-

CONFIDENTIAL                                                    Pltf-Local 98-0000064

to receive the payments heretofore or hereafter made to the Trust Fund by the Covered Employers and Employees. The Trustees are hereby vested with all right, title and interest in and to such moneys and all interest which may be accrued thereon, and are authorized to receive and be paid the same.

Section 4.3    Collection and Enforcement of Payments. The Trustees, or such committee of the Trustees as the Board of Trustees shall appoint, or the Plan Administrator when directed by such committee or by the Board of Trustees, shall have the power to demand, collect and receive Covered Employer payments and all other money and property to which the Trustees may be entitled, and shall hold the same until applied to the purposes provided in this Trust Agreement. They shall take such steps, including the institution and prosecution of, or the intervention in, such legal or administrative proceedings as the Trustees in their sole discretion determine to be in the best interest of the Trust Fund for the purpose of collecting such payments, money and property, without prejudice, however, to the rights of the Union to take whatever steps it may be entitled to take under an applicable collective bargaining agreement and wishes to undertake for such purposes.

Section 4.4    Production of Records. Each Covered Employer shall promptly furnish to the Trustees on demand, the names of its Employees, their social security numbers, the hours

-17-

CONFIDENTIAL

Pltf-Local 98-0000065

worked by each Employee and such other information as the Trustees may reasonably require in connection with the administration of the Trust Fund and for no other purpose.  The Trustees shall have the right at all times to ask and receive from any Covered Employer or the Union all pertinent information concerning any or all of its Participants, former Participants, and Pensioners, which is required by the Trustees for the proper discharge of their duties, and such Covered Employer or Union shall furnish information as promptly as possible to the Trustees, the Plan Administrator, the Investment Manager, the Actuary or counsel for the Board of Trustees, as the case may be.  The Trustees may, at such reasonable times as they shall determine, have an audit made of the records, which are directly related to the operation of the Pension Plan, of any Covered Employer.

Section 4.5  The Trustees may require the payment by Covered Employers of liquidated damages (as may be provided in a schedule established by the Trustees) and of other costs and expenses (such as, without limitation, attorneys' fees, filing fees and cost of service of papers) incurred by the Trustees and arising out of the collection of such Covered Employers' delinquent contributions.

Section 4.6  Non-payment, by any Covered Employer, of any contribution or other moneys owed to the Fund shall not

-18-

CONFIDENTIAL

Pltf-Local 98-0000066

relieve any other Covered Employer from his or its obligation to make required payments to the Trust Fund.

## ARTICLE V

## POWERS AND DUTIES OF TRUSTEES

Section 5.1   Conduct of Trust Business.  The Trustees shall have general supervision of the operation and administration of this Pension Fund and Pension Plan and shall conduct the business and activities of the Trust Fund in accordance with this Trust Agreement and applicable law.  The Trustees shall hold, manage and protect the Trust Fund and collect the income there-from and contributions thereto.  The Trustees may, in the course of conducting the business of the Trust, execute all instruments in the name of Local Union No. 98 IBEW 98 Pension Trust Fund, which instruments shall be signed by at least one (1) Employer Trustee and one (1) Employee Trustee, provided, however, any one duly authorized Trustee may execute legal documents to commence and process law suits to enforce trust collections on behalf of the Trustees.

Section 5.2   Use of Fund to Provide Benefits.  The Trustees shall have the power, authority and duty to use and apply the Trust Fund to pay or provide for the payment of re-tirement and related benefits to eligible Participants and Bene-ficiaries in accordance with the terms, provisions and conditions

-19-

CONFIDENTIAL                                              Pltf-Local 98-0000067

of the Pension Plan to be formulated and agreed upon hereunder by the Trustees.

Section 5.3    Use of Fund for Expenses.    The Trustees shall also have the power and authority to use and apply the Trust Fund to pay or provide for the payment of all reasonable and necessary expenses (i) of collecting the Covered Employer contributions and payments and other moneys and property to which they may be entitled and (ii) of administering the affairs of this Trust, including the employment of such administrative, legal, expert and clerical assistance, the purchase or lease of such premises, materials, supplies and equipment and the performance of such other acts, as the Trustees, in their sole discretion, find necessary or appropriate in the performance of their duties.

Section 5.4    Investments.

(a)    The Trustees shall have the power and authority, in their sole discretion, to invest and reinvest such funds as are not necessary for current expenditures or liquid reserves, as they may from time to time determine, in such investments as are legal investments under applicable State and Federal law relating to the investment of employee pension trust funds, not limited, however, by any limitation restricting investments in common stocks to a percentage of the Fund or to a percentage of

-20-

CONFIDENTIAL

Pltf-Local 98-0000068

the total market value of the Fund. The Trustees may sell, exchange, mortgage, encumber or otherwise dispose of such investments at any time and, from time to time, as provided in Section 5.9(f). The Trustees shall also have power and authority (in addition to, and not in limitation of, common law and statutory authority) to invest in any stocks, bonds or other property, real or personal, including improved or unimproved real estate and equity interests, in real estate, where such an investment appears to the Trustees, in their discretion and consistent with their fiduciary obligations, to be in the best interest of the Trust Fund and its Participants and Beneficiaries, (judged by then prevailing business conditions and standards). The Trustees shall have the authority, in respect to any stocks, bonds or other property, real or personal, held by them as Trustees, to exercise all such rights, power and privileges as might be lawfully exercised by any person owning similar stocks, bonds or other property in his own right.

      (b)   <u>Delegation and Allocation of Investment Functions</u>.

      (1)   The Trustees are authorized, in their discretion, by resolution, to allocate to a committee of the Board of Trustees such duties and responsibilities to invest and reinvest such Fund assets as they shall specify in such allocation in accordance with Section 5.6(d).

-21-

CONFIDENTIAL

Pltf-Local 98-0000069

(2)    The Trustees shall also have the power and authority to appoint one or more Investment Managers (as defined in Section 3(38) of the Act) who shall be responsible for the management, acquisition, disposition, investing and reinvesting of such of the assets of the Trust Fund as the Trustees shall specify.  The fees of any such Investment Manager, and his or its expenses to the extent permitted by law, shall be paid out of the Trust Fund.

(3)    In connection with any allocation or delegation of investment functions under paragraphs (1) and (2) of this subsection (b), the Trustees shall, from time to time, adopt appropriate investment policies or guidelines.

Section 5.5  Allocation and Delegation of Fiduciary Responsibilities.  The Trustees may, by resolution or by-law or by provisions of this Trust Agreement, allocate fiduciary responsibilities and various administrative duties to committees or subcommittees of the Board of Trustees, and they may delegate such responsibilities and duties to other individuals as they may deem appropriate or necessary in their sole discretion and consistent with the Act.  The Trustees also may employ from time to time such legal and other experts, including, but not limited to, investment advisors, as they may deem necessary to advise them.

-22-

CONFIDENTIAL    Pltf-Local 98-0000070

the Trustees have not specified to be managed by an Investment
Manager appointed pursuant to Section 5.4(b)(2) of this Article,
and subject to such limitations and requirements as may be con-
tained in this Trust Agreement or in the Act, the Trustees may
allocate to the Finance Committee the authority to authorize and
approve the investment of Trust Fund assets in investments per-
mitted under Section 5.4(a), subject to pertinent investment
policies and guidelines adopted by the Board of Trustees.

Section 5.7 <u>Plan Administrator</u>.  The Trustees may
employ or contract for the services of an individual, firm or
corporation, to be known as the "Plan Administrator," who shall,
under the direction of the Trustees or under the direction of any
appropriate committee of the Trustees, administer the office or
offices of the Trust Fund, coordinate and administer the account-
ing, bookkeeping and clerical services; provide for the coordina-
tion of actuarial services furnished by the consulting actuary;
prepare (in cooperation where appropriate with Fund counsel, the
consulting actuary or independent auditor) all reports and other
documents to be prepared, filed or disseminated by or on behalf
of the Trust in accordance with law; assist in the collection of
contributions required to be paid to the Trust Fund by Member
Companies; and perform such other duties and furnish such other
services as may be assigned, delegated, directed or contracted
for by or on behalf of the Trustees.  The Plan Administrator

-24-

CONFIDENTIAL                                          Pltf-Local 98-0000071

**Section 5.6**  **Committees of the Board of Trustees.**

(a)  The Trustees may appoint such standing committees of the Board of Trustees as the Trustees may wish to create by by-law or resolution.

(b)  Appointment of Committee Members.  Each committee shall consist of an equal number of Employer and Employee Trustees.  A quorum of a committee shall be a majority of the members of the committee.  If the Employee Trustee group and/or the Employer Trustee group, respectively, nominate a Trustee of their group for membership on any committee, the Chairman shall appoint such nominee in filling any vacancy.  Appointment as a member of any committee shall be communicated to the appointee by the Plan Administrator in writing.  Any resignation of a Trustee as a committee member shall be submitted, in writing, to the Plan Administrator who shall promptly notify the Trustees thereof.

(c)  Removal of Committee Members.  Any appointed member of any committee may be removed from membership in such committee by the group of trustees appointing him at any time for any reason.

(d)  Finance Committee.  Any Finance Committee appointed by the Trustees shall review the investment policies of the Trustees and the activities of any Investment Managers which may have been appointed by the Trustees.  It shall make appropriate recommendations to the Board of Trustees on any matter entrusted to it.  With respect to assets of the Trust Fund which

-23-

Pltf-Local 98-0000072

shall be the custodian on behalf of the Trustees of all documents and other records of the Trustees and of the Trust Fund.

Section 5.8  By-Laws, Rules and Regulations.

(a)  The Trustees are hereby empowered and authorized to adopt by-laws and to promulgate any and all necessary rules and regulations which they deem necessary or desirable to facilitate the proper administration of the Trust Fund, provided the same are not inconsistent with the terms of this Trust Agreement and Pension Plan.  All by-laws, rules and regulations adopted by action of the Trustees shall be binding upon all parties hereto, all parties dealing with the Trust Fund and all persons claiming any benefits hereunder.

(b)  No by-law, regulation, rule, action or determination made or adopted by the Trustees, nor any decision or determination made by any impartial umpire appointed pursuant to Section 3.14 of this Agreement, shall in any manner conflict or be inconsistent (1) with any provision of an applicable collective bargaining agreement then in effect, or which may be made, between a Covered Employer and the Union; (2) with this Trust Agreement; or (3) with any applicable Federal, State or local law.

Section 5.9  Additional Authority.  The Trustees are hereby empowered, in addition to such other powers as are set

-25-

CONFIDENTIAL                                                     Pltf-Local 98-0000073

forth herein or conferred by law,

(a) to enter into any and all contracts and agreements for carrying out the terms of this Trust Agreement and for the administration of the Trust Fund, and to do all acts as they, in their discretion, may deem necessary or advisable, and such contracts and agreements and acts shall be binding and conclusive on the parties hereto and on the Participants, Pensioners and Beneficiaries involved;

(b) to keep property and securities registered in the names of the Trustees or of the Fund or in the name of any other individual or entity duly designated by the Trustees;

(c) to establish and accumulate as part of the Trust Fund such reasonable reserve funds as the Trustees, in their sole discretion, deem necessary or desirable to carry out the purposes of such Trust Fund;

(d) to pay out of the Trust Fund all real and personal property taxes, income taxes, and other taxes of any and all kinds levied or assessed under existing or future laws upon or in respect to the Trust Fund, or any money, property, or securities forming a part thereof;

(e) to do all acts, whether or not expressly authorized herein, which the Trustees may deem necessary or proper for the protection of the property held hereunder;

(f) to sell, exchange, lease, convey, mortgage or dispose of any property, whether real or personal, at any time

-26-

CONFIDENTIAL

Pltf-Local 98-0000074

forming a part of the Trust Fund upon such terms as they may deem proper, and to execute and deliver any and all instruments of conveyance, lease, mortgage and transfer in connection therewith;

(g)  to establish and carry out a funding policy and method consistent with the objectives of the Pension Plan and the Act;

(h)  to permit an Employer to become a Covered Employer; and

(i)  To decide, if they so choose, to invest a portion of the Pension Fund in insurance or annuity contracts; and to retain, administer, surrender, or assign any insurance or annuity contracts purchased; to pay the premiums thereon; and to exercise all of the rights, privileges and options provided in any such insurance or annuity contracts.

Section 5.10  Bonds.  The Trustees shall obtain from an authorized surety company such bonds as may be required by law, covering such persons and in such amounts (but not less than required by law) as the Trustees, in their discretion, may determine.  The cost of premiums for such bonds shall be paid out of the Trust Fund.

Section 5.11  Insurance.  The Trustees may in their discretion obtain and maintain policies of insurance, to the extent permitted by law, to insure themselves, the Trust Fund as

-27-

CONFIDENTIAL

Pltf-Local 98-0000075

such, as well as employees or agents of the Trustees and of the
Trust Fund, while engaged in business and related activities for
and on behalf of the Trust Fund (1) with respect to liability to
others as a result of acts, errors or omissions of such Trustee
or Trustees, employees or agents, respectively, provided such
insurance policy shall provide recourse by the insurer against
Trustees where such recourse may be required by law; and (2) with
respect to injuries received or property damage suffered by them.
The cost of the premiums for such policies of insurance shall
where permitted by law be paid out of the Trust Fund.

Section 5.12   <u>Information to Participants, Pensioners,
Beneficiaries, Covered Employers and Union</u>.  The Trustees shall
provide Participants, Pensioners and Beneficiaries such informa-
tion as may be required by the Act.  The Trustees shall also
prepare and make available appropriate forms for use by Member
Companies and Participants.

Section 5.13   <u>Accountants and Actuaries</u>.
(a)  The Trustees shall engage one or more in-
dependent certified public accountants and one or more enrolled
actuaries to perform all services as may be required by applic-
able law and such other services as the Trustees may deem neces-
sary.  The accountants and actuaries shall serve for so long as
is mutually agreeable to each of them respectively and the Trust-
ees.

-28-

CONFIDENTIAL                                                      Pltf-Local 98-0000076

(b)  The actuary shall do such technical and advisory work as the Trustees may direct, including critical examinations of the experience of the Plan from time to time, recommendations as to changes in the actuarial assumptions and/or method of funding, and shall submit an annual report to the Trustees containing a critical review of the experience of the Plan for the preceding Plan Year and an actuarial balance sheet showing the financial condition of the Plan as of the end of the preceding Plan Year.

Section 5.14    Records and Reports of Trustee Transactions.

(a)  The Trustees shall maintain or cause to be maintained such records and to make, receive and file such reports as may be necessary for the proper administration of the Plan.  Such records and reports shall include, but shall not be limited to, the records prepared by the Covered Employers in support of their contributions, annual reports of Participants, former Participants, Pensioners and Beneficiaries to be prepared for the use of the actuary, annual reports by the Investment Manager as to the financial operation and status of the Trust Fund, annual reports of the actuary as to the operation of the Plan and such records and reports as are required to be made, maintained or filed by law.

-29-

CONFIDENTIAL

Pltf-Local 98-0000077

(b)  Those reports required by law to be signed by one or more Trustees shall be signed by all of the Trustees, provided that all of the Trustees may appoint in writing, or by resolution adopted and recorded in the minutes, one or more of their members to sign such reports on behalf of the Trustees.

(c)  At least once a year, the Trustees shall have an audit made of the funds received by, disbursed by and held by the Investment Manager.  A statement of the results of such audit shall be available for inspection by interested persons at the principal office of the Trust Fund.

Section 5.15  Construction and Determinations by Trustees.  Subject to the stated purposes of the Fund and the provisions of this Agreement, the Trustees shall have full and exclusive authority to determine all questions of coverage and eligibility, methods of providing or arranging for benefits and all other related matters, including but not limited to, the amount of benefits payable to any Participant, Pensioner or Beneficiary in accordance with the provisions of the Plan.  The Trustees shall have full power to construe the provisions of this Trust Agreement, the terms used herein and the by-laws and regulations issued thereunder.  Any such determination and any such construction adopted by the Trustees in good faith shall be binding upon all of the parties hereto, the Participants, Pensioners and Beneficiaries hereunder.  No matter respecting the foregoing or

-30-

Pltf-Local 98-0000078

any difference arising thereunder or any matter involved in or arising under this Trust Agreement shall be subject to the grievance or arbitration procedure established in any collective bargaining agreement between the Association or any Covered Employer and the Union, provided, however, that this clause shall not affect the rights and liabilities of any of the parties under any of such collective bargaining agreements.

Section 5.16    Liability.  The Trustees, to the extent permitted by applicable law, shall incur no liability in acting upon any instrument, application, notice, request, signed letter, telegram or other paper or document believed by them to be genuine and to contain a true statement of facts, and to be signed by the proper person.

Section 5.17    Reliance on Written Instruments.  Any Trustee, to the extent permitted by applicable law, may rely upon any instrument in writing purporting to have been signed by a majority of the Trustees as conclusive evidence of the fact that a majority of the Trustees have taken the action stated to have been taken in such instrument.

Section 5.18    Reliance by Others.  No party dealing with the Trustees shall be obligated (a) to see the application to the stated Trust purposes, of any funds or property of the Trust Fund or (b) to see that the terms of this Trust Agreement have been

-31-

CONFIDENTIAL

Pltf-Local 98-0000079

complied with or (c) to inquire into the necessity or expediency of any act of the Trustees. Every instrument executed by the Trustees shall be conclusive evidence in favor of every person relying thereon (a) that at the time of the execution of said instrument, the Trust was in full force and effect, (b) that the instrument was executed in accordance with the terms and conditions of this Trust Agreement and (c) that the Trustees were duly authorized and empowered to execute the instrument.

Section 5.19  Discharge of Liability.  The receipt by the Trustees of any money or property or checks (after such checks are honored at the bank and paid to the Trust Fund) shall discharge the person or persons paying or transferring the same.

Section 5.20  Establishment of Plan.  The Trustees shall formulate a Pension Plan for the payment of such retirement pension benefits, permanent disability pension benefits, death benefits, and related benefits, as are feasible. Such Pension Plan shall at all times comply with all applicable State and Federal statutes and regulations and to the provisions of this Trust Agreement. The Trustees shall not be under any obligation to pay any pension if the payment of such pension will result in loss of the Trust Fund's tax exempt status under the then applicable Internal Revenue Code and any regulations or rulings issued pursuant thereto. The Trustees shall draft procedures,

-32-

CONFIDENTIAL

Pltf-Local 98-0000080

regulations, and conditions for the operation of the Pension Plan, including, by way of illustration and not limitation; conditions of eligibility for Participants and Beneficiaries, procedure for claiming benefits, schedules of type and amount of benefits to be paid, and procedure for the distribution of benefits. The Trustees may also provide for the payment of partial pensions, and may enter into agreements with other trustees of pension plans which conform to the applicable sections of the then applicable Internal Revenue Code for purposes of tax deductions for the reciprocal recognition of service credits and payments of pension benefits based upon such service credits.

Section 5.21  Amendments. The provisions of this Agreement and Declaration of Trust, as well as the provisions of the Pension Plan, may be amended by an instrument in writing executed by a majority of the Individual Employee Trustees and by a majority of the individual Employer Trustees; provided, however, that such amendment has been voted upon and approved by both groups of Trustees, each voting as a unit as provided in Article III, Section 3.13; and provided further, that no amendment shall, (1) divert any of the assets of the Pension Fund from the purposes of this Trust, or (2) eliminate the use of a Corporate Trustee.

-33-

## ARTICLE VI

### CONTROVERSIES AND DISPUTES

Section 6.1  Reliance on Records.  In any controversy, claim, demand, suit at law or other proceeding between any Participant, Pensioners, Beneficiary or any other person and the Trustees, the Trustees shall be entitled to rely upon any facts appearing in the records of the Trustees, any instruments on file with the Trustees, with the Union or with the Covered Employers, any facts certified to the Trustees by the Union or the Covered Employers, any facts which are of public record and any other evidence pertinent to the issue involved.

Section 6.2  Submission to Trustees.  All questions or controversies, of whatsoever character, arising in any manner or between any parties or persons in connection with the Trust Fund or the operation thereof, whether as to any claim for any benefits preferred by any Participant, Pensioner, Beneficiary or any other person, or whether as to the construction of the language or meaning of the by-laws, rules and regulations adopted by the Trustees or this instrument, or as to any writing, decision, instrument or accounts in connection with the operation of the Trust Fund or otherwise, shall be submitted to the Trustees and the decision of the Trustees shall be binding upon all persons dealing with the Trust Fund or claiming benefits thereunder.

-34-

CONFIDENTIAL

Pltf-Local 98-0000082

Section 6.3  <u>Settling Disputes</u>.  The Trustees may in their sole discretion compromise or settle any claim or controversy in such manner as they think best, and any majority decision made by the Trustees as provided in Article III, Section 3.13 in compromise or settlement of a claim or controversy, or any compromise or settlement agreement entered into by the Trustees, shall be conclusive and binding on all parties interested in this Trust.

ARTICLE VII

<u>BENEFICIAL RIGHTS</u>

Section 7.1  <u>No Right, Title or Interest of Member Companies and Union</u>.  No Covered Employer or the Union, or Employees, or Participants and their Beneficiaries or Pensioners shall have any right, title or interest in or to the Trust Fund or any part thereof other than that to which they may be entitled under the Pension Plan.  There shall be no pro-rata or other distribution of any of the assets of the Trust Fund as a result of the Union, any Covered Employer or group of Employees or Covered Employers or Participants and their Beneficiaries or Pensioners, ceasing their participation in this Trust Fund for any purpose or reason, except as required by law.

Section 7.2  <u>Limitations upon Beneficial Rights of Employees</u>.  All the benefits, while undistributed and in the possession of the Trustees or their designee, even though vested

-35-

Pltf-Local 98-0000083

or distributable, shall be free from the interference and control of any creditor. No benefits shall be subject to any assignment or other anticipation, nor to seizure or to sale under any legal, equitable or any other process. In the event that any claim or benefit shall, because of any debt incurred by or resulting from any other claim or liability against any Employee, Participant, Pensioner or Beneficiary, by reason of any sale, assignment, transfer, encumbrance, anticipation or other disposition made or attempted by said Employee, Participant, Pensioner or Beneficiary, or by reason of any seizure or sale or attempted sale under any legal, equitable or other process, or in any suit or proceeding, become payable, or be liable to become payable to any person other than the Participant, Pensioner or Beneficiary for whom the same is intended, as provided herein, pursuant hereto, the Trustees shall have power to withhold payment of such benefit to such Participant, Pensioner or Beneficiary until such assignment, transfer, encumbrance, anticipation or other disposition, writ or legal process is cancelled or withdrawn in such manner as shall be satisfactory to the Trustees. Until so cancelled or withdrawn, the Trustees shall have the right to use and apply the benefits as to the Trustees may seem best, directly for the support and maintenance of such Participant, Pensioner or Beneficiary.

-36-

CONFIDENTIAL

### Section 7.3  Incompetence of Pensioner or Beneficiary.

If any Pensioner or Beneficiary is, in the judgment of the Trustees, legally, physically or mentally unable to care for his affairs, the Trustees may direct that any payment due (unless prior claim theretofore shall have been made by a duly qualified guardian or any other legal representative), be paid to the spouse, parent, brother or sister or other person deemed by the Trustees to be maintaining or having custody of the Pensioner or Beneficiary otherwise entitled to payment.  Any such payment shall be a payment for the account of the Pensioner or Beneficiary and shall be a complete discharge of any liability of the Plan and of the Trustees therefor.

### ARTICLE VIII

### TERMINATION OF TRUST

### Section 8.1  Conditions of Termination.  This Trust

Agreement shall cease and terminate upon the happening of any one or more of the following events:

> (a)  In the event the Trust Fund shall, in the opinion of the Trustees, be inadequate to carry out the intent and purpose of this Trust Agreement, or be inadequate to meet the payments due or to become due under this Trust Agreement and under the plan of benefits to

-37-

CONFIDENTIAL

Pltf-Local 98-0000085

Pensioners and Beneficiaries already
drawing benefits;

(b)  In the event of termination by action of
the Association and Union;

(c)  In the event of termination as may be
otherwise provided by law.

Section 8.2  Procedures in Event of Termination.  In
the event of termination, the Trustees shall terminate the Plan,
and distribute its assets in accordance with the procedures set
forth in Title IV, Subtitle C of the Act.

ARTICLE IX

MISCELLANEOUS

Section 9.1  Law Applicable.  This Trust is created and
accepted in the Commonwealth of Pennsylvania and all questions per-
taining to the validity or construction of this Trust Agreement
and of the acts and transactions of the parties hereto shall be
determined in accordance with the laws of the Commonwealth of
Pennsylvania, except as to matters governed by Federal law.

Section 9.2  Savings Clause.  Should any provision of
this Agreement and Declaration of Trust be held to be unlawful,
or unlawful as to any person or instance, such fact shall not
adversely affect the other provisions herein contained or the

-38-

CONFIDENTIAL

Pltf-Local 98-0000086

application of said provisions to any other person or instance, unless such illegality shall make impossible the functioning of this Fund.

Section 9.3  Reciprocity Agreements.  The Trustees may, in their sole discretion, enter into such reciprocity agreement or agreements with other pension funds as they determine to be in the best interests of the Trust Fund, provided that any such reciprocity agreement or agreements shall not be inconsistent with the terms of this Trust Agreement or the collective bargaining agreements under which this Trust Agreement is maintained.

Section 9.4  Merger.  The Trustees shall have the power to merge with any other fund established for similar purposes as this Trust Fund under terms and conditions mutually agreeable to the respective Boards of Trustees, subject to the approval of the Union and the Association.

Section 9.5  Refund of Contributions.  In no event shall any Covered Employer, directly or indirectly, receive any refund on contributions made by it to the Trust (except in case of a bona fide erroneous payment or overpayment of contributions, to the extent permitted by law) nor shall a Covered Employer directly or indirectly participate in the disposition of the Trust Fund or receive any benefits from the Trust Fund.  Upon payment of contributions to the Trustees, all responsibilities of

-39-

CONFIDENTIAL

the Covered Employer for each contribution shall cease, and the Covered Employer shall have no responsibilities for the acts of the Trustees, nor shall the Covered Employer be obliged to see to the application of any funds or property of the Trust or to see that the terms of the Trust have been complied with.

Section 9.6  Judicial Settlements.  The Trustees shall be entitled, at any time, to have a judicial settlement of their accounts and to seek judicial protection by any action or proceeding they determine necessary and, further, to obtain a judicial determination or declaratory judgment as to any question of construction of this Trust Agreement or for instructions as to any action thereunder and, further, as to any question relating to the discharge of their duties and obligations under, or in connection with the administration of, this Trust and as to the distribution of assets belonging to the Trust.  Any such deter-mination, decision or judgment shall be binding upon all parties to, or claiming under, this Trust Agreement.

Section 9.7  Withholding Payment.  In the event any question or dispute shall arise as to the proper person or per-sons to whom any payments shall be made hereunder, the Trustees may withhold such payment until there shall have been made an adjudication of such question or dispute which, in the Trustees' sole judgment, is satisfactory to them, or until the Trustees

-40-

Pltf-Local 98-0000088

shall have been fully protected against loss by means of such indemnification agreement or bond as they, in their sole judgment, determine to be adequate.

Section 9.8  Gender.  Whenever any words are used in this Trust Agreement in the masculine gender, they shall also be construed to include the feminine or neuter gender in all situations where they would so apply; and whenever any words are used in the singular, they shall also be construed to include the plural in all situations where they would so apply and wherever any words are used in the plural, they shall also be construed to include the singular.

Section 9.9  Article and Section Titles.  The Article and Section titles are included solely for convenience and shall, in no event, be construed to affect or modify any part of the provisions of this Trust Agreement or be construed as part thereof.

IN WITNESS WHEREOF, the Association and Union have caused this Agreement and Declaration of Trust to be executed on the day and year first above written.

PHILADELPHIA DIVISION OF THE
PENN-DEL-JERSEY CHAPTER OF THE
NATIONAL ELECTRICAL CONTRACTORS
ASSOCIATION

Attest _____        _____
                    Secretary                                      President

-41-

CONFIDENTIAL                                      Pltf-Local 98-0000089

INTERNATIONAL BROTHERHOOD OF
ELECTRICAL WORKERS, LOCAL
UNION 98

Attest _____          _____
                    Secretary                                    President

      The undersigned Trustees by their execution of this
Amendment do hereby accept the trusteeship and declare that they
will receive and hold the Pension Fund as Trustees by virtue of
this Amendment for the uses, purposes and trust herein set forth
and with the powers and duties herein set forth and none others.

-42-

CONFIDENTIAL

LOCAL UNION NO. 98 IBEW
PENSION TRUST FUND

AGREEMENT AND DECLARATION OF TRUST
(Including Amendment No. 1)

THIS AGREEMENT AND DECLARATION OF TRUST made and entered into this 31st day of August, 1961, in the City of Philadelphia, State of Pennsylvania, by and between INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL UNION NO. 98, affiliated with the AFL-CIO (hereinafter called "LOCAL NO. 98"), acting for and on behalf of its members and the Trustees, alternates and successors as hereinafter designated,

W I T N E S S E T H :

WHEREAS, the Philadelphia Division of the Penn-Del-Jersey Chapter of the National Electrical Contractors Association (hereinafter called "ASSOCIATION"), acting for and on behalf of its members (hereinafter called "Employers"), and LOCAL NO. 98 entered into a collective bargaining agreement, dated September 5, 1960, as modified on May 19, 1961, in which each Employer agreed to deduct certain sums from the wages of its employes and to forward the sums deducted to a Trustee for the purpose of establishing a PENSION FUND to provide retirement benefits for eligible employes; and

WHEREAS, the members of LOCAL NO. 98 at a regularly scheduled meeting approved such agreement; and

WHEREAS, the collective bargaining agreement provides for the execution of a Trust Agreement and the appointment of a Corporate Trustee and an Advisory Committee consisting of individual Trustees for the purpose of administering the Pension Plan; and this Agreement and Declaration of Trust is intended to be the Trust Agreement referred to in the collective bargaining agreement;

NOW THEREFORE, in consideration of the promises and the mutual covenants contained herein, parties agree that a trust is hereby created and further agree:

ARTICLE I
DEFINITIONS

Section 1.  The term "PENSION FUND" or "TRUST FUND" or "TRUST" means Local Union No. 98 IBEW Pension Trust Fund. PENSION FUND shall further mean and include the corpus and earnings, appreciations, or additions thereon and thereto held by the Trustees for the uses, purposes and trusts set forth in this Agreement and Declaration of Trust, and in any amendments which may be made to this Agreement and Declaration of Trust.

Section 2.  The term "ASSOCIATION" means Philadelphia Division of the Penn-Del-Jersey Chapter of the National Electrical Contractors Association.

Section 3.  The term "UNION" shall mean International Brotherhood of Electrical Workers, LOCAL UNION NO. 98.

Section 4.  The term "Individual Trustees" means the Trustees named pursuant to Article III of this Trust Agreement and as constituted from time to time in accordance with the provisions of this Agreement; and the term "Corporate Trustee" means the bank, trust or insurance company or other financial institution appointed pursuant to Article V hereof.

Section 5.  The term "PENSION PLAN" means the plan, program, method and procedure originally adopted and as amended from time to time by the Individual Trustees setting forth and pertaining, among other things, to the payment of retirement benefits to eligible employes.

Section 6.  The term "EMPLOYE" means an individual who is in Covered Employment as defined in the PENSION PLAN at the time of reference or an individual who has been so engaged and whose Continuous Service as defined in the PENSION PLAN has not been broken at the time of reference.

Section 7.  The term "RETIRED EMPLOYE" means an Employe who is receiving Retirement Benefits under the PENSION PLAN.

Section 8.  The term "COVERED EMPLOYER" or "COVERED EMPLOYERS" shall include an association, individual, partnership or corporation, including any wholly owned subsidiary,

-2-

Pltf-Local 98-0000092

any affiliate, any predecessor or successor as defined in the PENSION PLAN.

Section 9.  The term "EFFECTIVE DATE" means September 1, 1961.

Section 10.  The terms "CONTRIBUTIONS" and "PAYMENTS" mean the money paid into the PENSION FUND by an EMPLOYER on behalf of its employes.


ARTICLE II
NAME AND PURPOSE


Section 1.  The PENSION FUND or TRUST FUND or TRUST is hereby established as a trust fund to be known as "LOCAL UNION NO. 98, IBEW PENSION TRUST FUND".

Section 2.  The purpose of the PENSION FUND shall be to provide retirement benefits in accordance with the PENSION PLAN, as contemplated by the collective bargaining agreement.


ARTICLE III
DESIGNATION AND REMOVAL OF INDIVIDUAL
TRUSTEES; MEETINGS OF TRUSTEES


Section 1.  Subject to the provisions of Article V, the PENSION FUND shall be administered by five (5) Individual Trustees designated by the President of LOCAL NO. 98.  The initial Individual Trustees shall be Joseph G. Harrison, Harold Mars, William C. Anderson, Henry P. Fornara and Thomas Kleinz.

Section 2.  The Individual Trustees shall, my majority vote, elect a Chairman of the Board of Individual Trustees (hereinafter sometimes called the "Board of Trustees"), from among such Trustees.

Section 3.  Each of the initial Individual Trustees named in Section 1 of this Article III, shall continue to serve as such until his death or incapacity, or resignation, or removal on or after September 15, 1965, as hereinafter provided in this Section 3.  On September 1, 1965, and thereafter on September 1st of each succeeding year up to and including

-3-

                                                    Pltf-Local 98-0000093

September 1, 1969, the President of Local No. 98 shall appoint one trustee to replace one of the initial Individual Trustees. Each Trustee appointed on or after September 1, 1965 shall be appointed to serve for a five (5) year term, so that on September 1st of each year beginning on September 1, 1965, and ending on September 1, 1969, the term of one of the initial Individual Trustees will expire. Simultaneously with the appointment of each succeeding trustee, the President of Local No. 98 shall designate the initial Individual Trustee being replaced. Each of the initial Individual Trustees may be appointed to succeed himself.

Section 4. An Individual Trustee may resign by giving thirty (30) days' notice in writing to the remaining Individual Trustees, or such shorter notice as the remaining Trustees may accept as sufficient. Such notice shall state a date when such resignation shall take effect; and such resignation shall take effect on the date specified in the notice unless a successor Individual Trustee shall have been appointed at an earlier date, in which event such resignation shall take effect immediately upon the appointment of such successor Trustee. After the effective date of his resignation, such Individual Trustee shall become and remain fully discharged from any liability for anything occurring after his resignation.

Section 5. (a) Each Individual Trustee appointed on or after September 1, 1965, shall continue to serve as such until his five (5) year term has expired, his death, or incapacity, or resignation, or removal by the President of Local No. 98. Provided, however, that the President of Local No. 98 shall not have the right to remove an Individual Trustee without the approval of a majority of the Trustees and without a successor being simultaneously designated. The President of Local No. 98 may, with the approval of a majority of the Trustees, remove from office any Individual Trustee by mailing or delivering to said Trustee, to each of the remaining Trustees, and to the Corporate Trustee, a copy of the appropriate action taken by him.

(b) If an Individual Trustee shall die, become incapable of acting hereunder, resign, or be removed, a successor Individual Trustee shall be appointed immediately by the President of Local No. 98 and a written notice by the President of Local No. 98 shall be delivered to the Board of Trustees and shall be satisfactory evidence of such appointment.

-4-

Section 6.  Any successor Individual Trustee shall, immediately upon his appointment as a successor Trustee and his acceptance of the trusteeship in writing, become vested with all the property, rights, powers and duties of an Individual Trustee hereunder with like effect as if originally named and all the Individual Trustees then in office and the Corporate Trustee shall be immediately notified.

Section 7.  Periodic meetings of the Board of Trustees shall be held not less than two (2) times a year.  The dates of such meetings shall be fixed by the Chairman and in the event of his inability or refusal to act, then by a majority of the remaining Trustees, and may be called at any time providing that all Individual Trustees are notified in writing at least five (5) days prior to the date of the meeting, setting forth the time and place it is to be held.  Notification may be by registered mail, telegram, or personal delivery, or it may be by telephone, if followed up by a letter; provided, however, it shall not be necessary to give notice to any Individual Trustee who, either before, during, or after the meeting, waives such notice either orally or in writing.  When a meeting is called, the letter of notification shall state the purpose of the meeting and the subject matter to be discussed.  In the event all Individual Trustees shall concur in writing on the stated subject matter to be presented at a regularly scheduled meeting, such meeting may be deemed to have been formally held, the business transacted and adjourned.

Section 8.  Four (4) of the Individual Trustees shall constitute a quorum for the transaction of any business at any meeting, but less than a quorum may adjourn any meeting from time to time, and such meeting may be held as adjourned without further notice.

Section 9.  When a quorum is present at any meeting, a majority of the Individual Trustees present and voting shall decide any questions brought before such meeting, and the action of such quorum as defined above shall be valid and binding as the action of the Individual Trustees; provided, however, that any and all transactions involving the investment of principal and income of the PENSION FUND and all questions of major policy in the administration of the PENSION FUND and PENSION PLAN shall be subject to the unanimous approval of all of the Individual Trustees.  The Individual Trustees may take action by unanimous consent without a meeting, but such consent must be confirmed in writing.

-5-

CONFIDENTIAL                                                    Pltf-Local 98-0000095

Section 10.  Any Individual Trustee may, by power of attorney or other written authorization, empower any other Individual Trustee to act on his behalf, and use his name for execution or signature of any documents for the purposes of these presents and of the Trust hereby created, and of the PENSION PLAN, without being responsible or liable for any loss in connection therewith.

Section 11.  If in the administration of the PENSION FUND or PENSION PLAN any matter arises upon which the Individual Trustees cannot agree, the Trustees shall promptly select an Impartial Arbitrator to decide the question in dispute.  In the event of failure of the Trustees to agree upon an Impartial Arbitrator within fifteen (15) days after the dispute has arisen, any two of the Trustees may petition the American Arbitration Association for the appointment of an Impartial Arbitrator.  All costs of the arbitration shall be paid out of the funds of the PENSION FUND.

ARTICLE IV
POWERS OF INDIVIDUAL TRUSTEES

Section 1.  In operating and administering the PENSION FUND and PENSION PLAN, the Individual Trustees shall have the power:

(a)  To establish the policy and the rules pursuant to which the PENSION FUND and PENSION PLAN are to be operated and administered;

(b)  To formulate, adopt, amend and administer a PENSION PLAN for the benefit of covered and eligible employes in order to provide retirement benefits for such employes;

(c)  In connection with the administration and operating of the PENSION PLAN and in order to effectuate the purpose thereof, to formulate and establish the conditions of eligibility with respect to age and length of service; to formulate all other provisions, including all details pertaining to insurance policies or annuity contracts, if any, which may be decided upon in order to carry out the intent and purpose of the establishment of this PENSION FUND and the PENSION PLAN;

-6-

Pltf-Local 98-0000096

(d) To receive and collect all contributions or payments due to and payable to the PENSION FUND. In so doing, the Individual Trustees, in their sole discretion, shall have the right to institute and maintain any and all actions and legal proceedings necessary for the collection of the contributions or payments herein provided for, and to prosecute, defend, compromise, settle, abandon or adjust, by arbitration or otherwise, any actions, suits, proceedings, disputes or claims relating to the PENSION FUND;

(e) To verify the accuracy of statements and information submitted by any Covered Employer and by any covered and eligible employes on contribution forms, application forms, and other forms. In furtherance of this right and duty, the Individual Trustees may require any Covered Employer to furnish such information and reports as they deem appropriate to the performance of their work as Trustees and the Covered Employer shall furnish such information and reports when required to do so by the Trustees;

(f) To decide, if they so choose, to invest a portion of the PENSION FUND in insurance or annuity contracts; and to retain, administer, surrender, or assign any insurance or annuity contracts thus purchased; to pay the premiums thereon; and to exercise all of the rights, privileges and options provided in any such insurance or annuity contracts;

(g) To sell, exchange, convey, transfer or dispose of, and also grant options with respect to, any property, whether real or personal, at any time held in the PENSION FUND; to make any sale by negotiated contract or by auction, and no persons dealing with the Individual Trustees or the Corporate Trustee shall be required to see to the application of the money or to inquire into the validity, expediency, or propriety of any such sale or other disposition of property held in the PENSION FUND; to retain, manage, operate, repair, improve, or mortgage for any period any real estate held in the PENSION FUND; to make, effectuate, and deliver any and all deeds, assignments, documents, or transfers, and any other instruments that may be necessary or appropriate to carry out the powers herein granted;

(h) To pay and provide for the payment of all reasonable and necessary expenses of collecting the Covered Employer contributions or payments; to pay and provide for the payment of all expenses which may be incurred in connection

-7-

with the establishment and operation of the PENSION FUND and the PENSION PLAN, such as expenses for the employment of administrative, legal, actuarial, and other expert or clerical assistance, the purchase or lease of premises to be used and occupied by the PENSION FUND, the purchase or lease of such materials, supplies, and equipment as the Individual Trustees, in their discretion, find necessary or appropriate in the exercise of their rights and duties;

(i)   To keep true and accurate books of account and records of all the transactions of the PENSION FUND and PENSION PLAN and to have an audit made of all books and accounts by a certified public accountant at least annually, which report, in writing, shall be sent to the UNION and the Corporate Trustee, and shall also be placed in the office where the business of the PENSION FUND and PENSION PLAN is transacted, there to be available for inspection by any employe;

(j)   To determine from time to time whether and to what extent, and to what times and places and under what conditions and regulations, the books of the PENSION TRUST shall be open for inspection. The UNION or an employe shall have the right to inspect any book or document at reasonable times and in accordance with such conditions and regulations, if any, as may be prescribed from time to time by the Individual Trustees;

(k)   To issue at least annually such financial statements or other reports as they may deem proper and to determine when and how such statements shall be issued and distributed;

(l)   To borrow money with or without security, on such terms as they in their discretion may deem desirable, and to issue notes, bonds or other obligations and to pledge the property of the PENSION FUND or any part thereof, in connection with such loans;

(m)   To delegate to any agent or employe engaged by them or to any one or more of the Individual Trustees themselves the privilege of performing ministerial duties for the Individual Trustees;

(n)   To make, adopt, amend or repeal by-laws, rules and regulations not inconsistent with the terms of this Agreement and Declaration of Trust and the PENSION PLAN as the

-8-

CONFIDENTIAL

Pltf-Local 98-0000098

Individual Trustees may deem necessary or deisrable; to amend the PENSION FUND and PENSION PLAN, provided that the amendments comply with the purpose hereof and do not militate against the qualification of the PENSION FUND under any applicable law or regulation or deprive contributions to the PENSION FUND of their exempt status under the tax laws; and further provided that any such amendments shall be signed by the Individual Trustees and a copy shall be sent to the UNION;

(o)  To interpret, apply and construe the terms and provisions of this Agreement and Declaration of Trust, the PENSION PLAN, and all other supplementary and amendatory documents, and any interpretation, application or construction adopted by the Individual Trustees in good faith shall be binding upon all persons who may be involved or affected;

(p)  To submit the PENSION PLAN, and any amendments thereto, for approval to the United States Treasury Department, so that it may be ruled to be qualified and exempt under the provisions of the Internal Revenue Code, as it exists or may be amended; to submit the PENSION PLAN and any amendments thereto to any other governmental agency whose approvel is or may be required by law; to make whatever changes are or may at any time be or become necessary in the PENSION PLAN in order to receive and retain such qualification, exemptions and approval;

(q)  To value the PENSION FUND annually;

(r)  To perform and do any and all acts and things that may be properly incidental to the exercise of the powers, rights, duties and responsibilities of the Individual Trustees;

(s)  To permit an Employer to become a Covered Employer.


ARTICLE V
CORPORATE TRUSTEE


Section 1.  The Individual Trustees shall appoint a bank, trust or insurance company, or other financial institution as Corporate Trustee and shall enter into and execute a

-9-

Pltf-Local 98-0000099

Supplementary Trust Agreement with such Corporate Trustee, which agreement shall contain provisions for the proper management of the PENSION FUND. Upon the execution of such Supplementary Trust Agreement, the Individual Trustees shall transfer to the Corporate Trustee all or such part of the assets of the PENSION FUND as they, in their sole discretion, deem proper and advisable. Any powers granted herein to the Individual Trustees may be delegated by them to the Corporate Trustee.

    Section 2. In addition to such powers as may be expressly delegated to it by the Individual Trustees, the Corporate Trustee shall have the power:

    (a) To invest and reinvest the principal and income of the PENSION FUND and to keep the same invested without distinction between principal and income, in securities and stocks of any class or kind or any other kind of property, real or personal, including any common trust funds maintained by the Corporate Trustee for the collective investment of funds of pension trusts qualifying for exemption under the Internal Revenue Code, and to hold such investments as the Corporate Trustee deems advisable, all without being confined to any limitations now or hereafter imposed by law more restrictive than the standard prescribed by this clause. The Corporate Trustee shall have the right from time to time to reserve from investment and keep unproductive of income such amounts of cash as it may deem advisable to provide for anticipated current disbursements from the PENSION FUND without liability to pay interest on such amounts. Any part of the TRUST FUND held uninvested at any time may be deposited with any banking or savings institution, including the banking department of the Corporate Trustee.

    (b) To cause any investment of the PENSION FUND, whether it be in the form of securities or other property, to be registered in, or transferred into, its name as Corporate Trustee, or the name or names of its nominee or nominees, or to retain such investment unregistered or in such form as will permit transfer by delivery, but the books and records of the Individual Trustees and the Corporate Trustee shall at all times show that all such investments are part of and belong to the PENSION FUND;

    (c) To vote in person or by proxy on any securities held in the PENSION FUND; and to exercise by attorneys or in any other manner, any of the rights of whatsoever nature

-10-

CONFIDENTIAL

Pltf-Local 98-0000100

pertaining to securities or any other property held by the Individual Trustees at any time; to consent to, dissent from, or oppose the reorganization, recapitalization, consolidation, sale, merger or dissolution of any corporation or properties in which the PENSION FUND holds an interest, upon such terms and conditions as it may deem wise and to accept any securities (whether or not the TRUSTEES would otherwise be authorized hereunder to invest in such securities) which may be issued upon any such reorganization, recapitalization, consolidation, sale or merger; to exercise any option or options, make any agreement or subscription, and pay any expense in connection with securities held by the PENSION FUND; and to hold and retain any property acquired by means of the exercise of any of the foregoing powers to the extent that the Corporate Trustee, in its discretion, deems advisable;

      (d)  To dispose of any of the investments, securities, or other property constituting the PENSION FUND for such prices and on such terms as it may deem fit and proper, and to make, execute and deliver to the purchasers thereof good and sufficient deeds of conveyance therefor, and all assignments, transfers and other legal instruments either necessary or convenient for passing title and ownership thereto, free and discharged of all trusts and without liability on the part of such purchasers to see to the application of the purchase money;

      (e)  When directed by the Individual Trustees, to distribute from time to time cash or other assets from the PENSION FUND to the persons, in the amounts, and at the times, specified by the Individual Trustees, and to distribute the PENSION FUND at the termination of the Trust hereby created, in accordance with the terms of the Plan.

ARTICLE VI

LIABILITY OF TRUSTEES, INDEMNIFICATION OF

TRUSTEES, REIMBURSEMENT FOR EXPENSES

      Section 1.  Each of the Trustees shall be protected in acting in good faith upon any paper or document believed to be genuine and believed to have been made, executed or delivered. Except for acts of willful misconduct, bad faith, or gross negligence, no Trustee shall be held personally answerable or personally liable for either (1) any liability or debts contracted

-11-

                    Pltf-Local 98-0000101

on behalf of the PENSION FUND, or (2) for the non-fulfillment of contracts, or (3) for any error of judgment or for any loss arising out of any act or omission in the execution of the Trust, or (4) for the actions or omissions of any Trustee, or of any employe, agent, or attorney elected or appointed by or working for the PENSION FUND.

Section 2.  No Trustees shall be liable for the proper application of any part of the PENSION FUND or for any other liability arising in connection with the administration or operation of the PENSION FUND and PENSION PLAN except as herein provided.

Section 3.  The Individual Trustees and the Corporate Trustee may from time to time consult with legal counsel for the PENSION FUND and PENSION PLAN and shall be fully protected in acting and relying upon the advice of such legal counsel in the administration or application of the PENSION FUND and PENSION PLAN.

Section 4.  The Individual Trustees and the Corporate Trustee may seek protection by any act or proceeding they may deem necessary to settle their accounts and may seek a judicial determination or declaratory judgment as to any question of construction of this Agreement and Declaration of Trust or as to any act thereunder.

Section 5.  Any Trustee may require the other Trustees as well as the UNION to execute a release after an audit of the PENSION FUND by a certified public accountant discloses that all affairs are in proper order.  A release executed by the UNION shall be binding on all members of the UNION, on all others covered by the definition "EMPLOYE" as set forth in Article I, Section 6 hereof, on all beneficiaries of Employes and on the heirs, executors and administrators of each Covered Employer and each beneficiary of an Employe.  In the event of the death, resignation or removal of a Trustee in the interim between the regular audits, then, following the next succeeding audit, such Trustee, or his or their heirs, executors or administrators in the event of the death of an Individual Trustee, shall be entitled to receive a release as of the date of death, resignation or removal, which release shall be executed in the manner hereinabove described; provided, however, that such release shall be granted only if the next succeeding audit of the PENSION FUND by a certified public accountant discloses that all affairs of the PENSION FUND were in proper order at the time of such Trustee's death, resignation or removal.

-12-

CONFIDENTIAL                                    Pltf-Local 98-0000102

Section 6.  The costs and expenses of any action, suit or proceeding brought by or against the Trustees or any of them, which costs and expenses shall include counsel fees, shall be paid from the PENSION FUND, except in relation to matters as to which it shall be adjudged in such action, suit or proceeding that the Trustees were acting in bad faith or were grossly negligent or guilty of willful misconduct.

Section 7.  The Individual Trustees shall not be bound by any notice, declaration, regulation, advice, or request unless and until it shall have been received by them at the announced principal place of business of the PENSION FUND located in Philadelphia, Pennsylvania.

Section 8.  No person, partnership, corporation, or association dealing with the Individual Trustees or the Corporate Trustee shall be obligated to see to the application of any funds or property of the PENSION FUND or to see that the terms of the PENSION PLAN have been complied with or be obligated to inquire into the necessity or expediency of any act of the Trustees, and every instrument effected by either the Individual Trustees or the Corporate Trustee shall be conclusive in favor of any person, partnership, corporation, or association relying thereon that:  (a) at the time of delivery of said instrument the TRUST was in full force and effect, and (b) that the said instrument was effected in accordance with the terms and conditions of this Agreement and Declaration of Trust; and (c) the party signing the same was authorized to execute such instrument.

Section 9.  The Individual Trustees shall receive no compensation for their services, but shall be reimbursed for all reasonable and necessary expenses which they incur in the performance of their duties.  However, an Individual Trustee may be compensated if specially designated by the Board of Trustees to perform work of an administrative nature, beyond his work as Trustee, for the PENSION FUND and PENSION PLAN.

Section 10.  A majority of the Individual Trustees may require that the Individual Trustees and all employes of the PENSION FUND and PENSION PLAN be bonded by a duly authorized surety company in an amount designated by the Board of Trustees.  The cost of the premiums of such bond or bonds shall be paid out of the PENSION FUND.

-13-

CONFIDENTIAL                                                    Pltf-Local 98-0000103

## ARTICLE VII
## CONTRIBUTIONS OR PAYMENTS TO THE PENSION FUND

Section 1. The contributions or payments of the Covered Employer on behalf of its employes shall be made in the amount or amounts set forth in the collective bargaining agreement or agreements, extension or extensions, amendment or amendments thereto presently in existence or hereafter in existence by and between UNION and ASSOCIATION or between UNION and a Covered Employer.

Section 2. The Individual Trustees may, when they deem such action practical and advisable, compel and enforce the payment of the contributions in any manner which they may deem proper.

Section 3. No Covered Employer shall have the duty or obligation to collect, receive, or pay over any of the contributions or payments required to be made and to be paid by another Covered Employer, nor shall a Covered Employer or the UNION be deemed guarantors or sureties in respect to any such contributions or payments from another Covered Employer.

## ARTICLE VIII
## EMPLOYE'S RIGHTS

Section 1. No Employe nor any person claiming by or through any Employe by reason of having been named a beneficiary in any certificate of insurance or otherwise, nor any Covered Employer nor the UNION nor any other person, partnership, corporation, or association shall have any right, title or interest in or to the PENSION FUND or any part thereof. Title to all of the money, property and income paid into, acquired by or accrued to the PENSION FUND shall be vested in and remain exclusively in the Trustees of the PENSION FUND and it is the intention of the parties hereto that the PENSION FUND shall constitute an irrevocable trust and that no benefits or monies payable from the PENSION FUND shall be subject in any manner to anticipation, alienation, sale, transfer, assignment, pledge, encumbrance, or charge, and any attempt to so anticipate, alienate, sell, transfer, assign, pledge, encumber or charge the same shall be void. The monies to be paid into the PENSION FUND shall not constitute or be deemed monies due to the individual Employes, nor shall said monies in any

-14-

CONFIDENTIAL                                    Pltf-Local 98-0000104