# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL 98 PENSION FUND on behalf of itself and all others similarly situated,<br><br>        Plaintiff,<br><br>vs.<br><br>DELOITTE & TOUCHE, LLP; DELOITTE LLP,<br><br>        Defendants. | Case No. 3:19-cv-3304<br><br>**CLASS ACTION** |

## LEAD PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................... 1

FACTUAL BACKGROUND ........................................................................................... 2

LEGAL STANDARD ...................................................................................................... 5

ARGUMENT .................................................................................................................... 6

I.   The Fund Has Article III Standing ......................................................................... 6

II.  The Trust Agreement Does Not Require A Majority Of IBEW Local 98 Pension Fund's Board Of Trustees To Have Voted For Or Formally Authorized This Lawsuit ...................... 8

   A.  The Trust Agreement Does Not Address Securities Litigation .......................................... 8

   B.  Like Most Taft-Hartley Funds, The Chairman Of IBEW Local 98 Pension Fund Has Signed Certifications Authorizing The Filing Of Lead Plaintiff Motions In Securities Litigation Cases On Behalf Of IBEW Local 98 Pension Fund For Decades .................. 13

III. The Taft-Hartley Act Does Not Require A Majority Of IBEW Local 98 Pension Fund's Board Of Trustees To Have Voted To Authorize This Lawsuit ............................................. 14

IV.  Even If There Were An Issue With IBEW Local 98 Pension Fund's Standing, It Would Easily Be Cured .................................................................................................. 15

   A.  The Statute of Limitations Does Not Foreclose Ratification ........................................... 15

   B.  Even If IBEW Local 98 Pension Fund Lacked Standing That Could Not Be Cured, The Case Should Still Not Be Dismissed ................................................................. 18

CONCLUSION ................................................................................................................ 20

## **TABLE OF AUTHORITIES**

**Page(s)**

CASES

*Albano v. Warner Chilcott Ltd. et al*,
No. 1:06-cv-11515, ECF No. 13-2 (S.D.N.Y. Nov 01, 2006) ...................................................3

*Alfarone v. Bernie Wolff Const. Corp.*,
788 F.2d 76 (2d Cir. 1986)...................................................................................................11

*Am. Pipe and Constr. v. Utah*,
414 U.S. 538 (1974)........................................................................................................18, 19

*Birmingham Steel Corp. v. Tenn. Valley Auth.*,
353 F.3d 1331 (11th Cir. 2003) ...........................................................................................18

*California Pub. Employees' Ret. Sys. v. ANZ Sec., Inc.*,
137 S. Ct. 2042, 198 L. Ed. 2d 584 (2017) ...........................................................................19

*Cont'l Bank, N.A. v. Caton*,
No. 88-1611, 1990 WL 129452 (D. Kan. Aug. 6, 1990) .........................................................13

*Crown, Cork & Seal Co. v. Parker*,
462 U.S. 345, 103 S. Ct. 2392, 76 L.Ed.2d 628 (1983)..........................................................18

*In Re Evergreen Ultra Short Opportunities Fund Sec. Litig.*,
No. 1:08-cv-11064, ECF No. No. 17-4 (D. Mass. Jun 23, 2008) ..............................................3

*F.E.C v. NRA*,
115 S. Ct. 537 (1994).....................................................................................................12, 16

*First Telebanc Corp. v. First Union Corp.*,
No. 02-80175, 2007 WL 9702557 (S.D. Fla. Aug. 6, 2007) .......................................... *passim*

*Haas v. Pittsburgh Nat'l Bank*,
526 F.2d 1083 (3rd Cir.1975) ..............................................................................................19

*Hurn v. Ret. Fund Tr. of Plumbing, Heating & Piping Indus. of S. California*,
703 F.2d 386 (9th Cir. 1983) ...............................................................................................15

*IBEW Local 98 Pension Fund et al v. Cent. Vt. Pub. Serv. Corp. et al*,
No. 5:11-cv-00222, ECF No. 1-2 (D. Vt. Sep 15, 2011) ..........................................................3

*IBEW Local 98 Pension Fund v. CPI Corp. et al*,
No. 4:12-cv-00075, ECF No. 16-2 (E.D. Mo. Jan 13, 2012)....................................................3

*Jones v. Safeway*,
No. 12-03547, 2014 WL 6871586 (D. Md. Dec. 3, 2014).....................................................6, 7

ii

*Kerns v. U.S.*,
    585 F.3d 187 (4th Cir. 2009) .................................................................................5

*Kilkenny v. Guy C. Long, Inc.*,
    288 F.3d 116 (3d Cir. 2002)...............................................................................11

*Kivun Mut. Funds Ltd v. 21st Century Holding Co., et al*,
    No. 07-61057, ECF No. 24-3 (S.D. Fla. July 7, 2007) ........................................3

*In re LexinFintech Holdings Ltd. Sec. Litig.*,
    No. 3:20-CV-1562, 2021 WL 5530949 (D. Or. Nov. 24, 2021) ...........................19

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
    572 U.S. 118 (2014).............................................................................................7

*Mauro v. Liberty Tax, Inc. et al*,
    No. 1:18-cv-00245, ECF No. 11-2 (E.D.N.Y. Jan 12, 2018) .................................3

*NLRB v. Amax Coal Co.*,
    453 U.S. 322 (1981).............................................................................................15

*Oil & Gas Co. v. Duryee*,
    9 F.3d 771 (9th Cir. 1993) ...................................................................................13

*Phillips v. Ford Motor Co.*,
    435 F.3d 785 (7th Cir. 2006) ...............................................................................18

*Popoola v. Md-Individual Prac. Ass'n, Inc.*,
    230 F.R.D. 424 (D. Md. 2005)...............................................................18, 19, 20

*Pyramid Holdings Inc. v. Inverness Med. Innovations Inc. et al*,
    No. 1:08-cv-10615, ECF No. 12-4 (D. Mass. Apr 10, 2008) .................................3

*Richards v. Zumiez Inc. et al*,
    No. 2:07-cv-01980, ECF No. 23-4 (W.D. Wash. Dec 10, 2007)............................3

*Riston v. Klausmair*,
    No. 17-03766, 2018 WL 4333752 (D. Md. Sept. 11, 2018)...................................7

*Rose v. Ark. Valley Envtl. & Util. Auth.*,
    562 F.Supp. 1180 (W.D.Mo.1983) ......................................................................19

*Se. Penn. Transp. Auth. v. Orrstown Fin. Servs. Inc.*,
    12 F.4th 337 (3d Cir. 2021) .................................................................................19

*U.S. v. Day*,
    700 F.3d 713 (4th Cir. 2012) .................................................................................7

*U.S. for use of Delval Equip. Corp., Inc. v. E. Coast Welding & Constr. Co., Inc.*,
   No. 21-1244, 2022 WL 717046 (D. Md. Mar. 10, 2022) ........................................6

*Union de Empleados de Muelles de P.R., AFL-CIO, Loc. 1901, ILA v. Int'l
   Shipping Agency, Inc.*,
   No. 12-2056, 2014 WL 12726555 (D.P.R. Feb. 19, 2014) ................................7, 12

*Va. House of Delegates v. Bethune-Hill*,
   139 S. Ct. 1945 (2019) ...........................................................................................12

*Wieburg v. GTE Southwest, Inc.*,
   272 F.3d 302 (5th Cir. 2001) ...............................................................................6, 8

STATUTES

29 U.S.C.A. § 141(b) ...................................................................................................14

29 U.S.C. § 1002(21)(A) .............................................................................................10

29 U.S.C. § 1132(a)(2), (3) .........................................................................................10

Employee Retirement Income Security Act of 1974 .......................................... *passim*

Labor Management Relations Act ...................................................................11, 14, 15

Private Securities Litigation Reform Act ("PSLRA") .................................................14

OTHER AUTHORITIES

Fed. R. Civ. P. 12 ..................................................................................................5, 6, 7

Fed. R. Civ. P. 15 .........................................................................................................17

Fed. R. Civ. P. 17 ..............................................................................................6, 7, 17

Fed. R. Civ. P. 23 ...................................................................................................16, 19

## PRELIMINARY STATEMENT

Just five days before the Court was scheduled to hold a hearing on IBEW Local 98 Pension Fund's ("Plaintiff" or the "Fund") Motion to Compel and for Sanctions (ECF No. 118), Deloitte filed what it calls a "motion to dismiss for lack of subject matter jurisdiction." (ECF No. 132) (the "MTD"). But Deloitte's motion presents no grounds for dismissing this case or for finding that the Court lacks jurisdiction. Instead, Deloitte's motion misinterprets the terms of the Fund's Trust Agreement and misrepresents the deposition testimony of the Fund's representatives in a desperate effort to conjure grounds for dismissal that do not exist and deflect away from the fact that it has engaged in sanctionable discovery conduct that hid clearly relevant information about its fraud from Plaintiff and the Court.

In brief, Deloitte's argument is that because the Fund did not "vote" on a resolution authorizing Mr. Burrows and later Mr. Neilson to prosecute this case, that the Fund "lacks standing," the Court lacks jurisdiction over the case, and the case should be dismissed with prejudice. But none of those claims are true. First, no such vote was required under the Trust Agreement and the actions of the Fund in initiating and overseeing this litigation are entirely consistent with the Trust Agreement and the manner in which the Fund has been operating for decades. Second, there is no question that the Fund has standing. Even if Defendants are correct—which they are not—that the Fund acted inconsistently with its Trust Agreement, no one disputes that the Fund invested in SCANA securities during the Class Period and lost money, therefore giving it "standing" as a member of the Class regardless of whether the Board needed to authorize its involvement as a lead plaintiff via a vote or not. Third, this case is a class action. It was initially filed by Mr. Floyd, not the Fund, and it was filed on behalf of all members of the proposed Class, including the Fund. The Fund's status as the lead plaintiff in the case is simply as a representative of a class of thousands of investors in SCANA stock. As such, this Court's jurisdiction to hear the

case does not rise and fall on the Fund's compliance with the technicalities of its own internal procedures, and would exist regardless of the Fund's involvement in it. <u>Finally</u>, for the same reason, Deloitte's argument that the Fund's ratification (to the extent necessary) of its involvement in this case would come too late because the statute of limitations has now passed makes little sense. Any actions taken by the Fund now would indisputably "relate back" to the initially filed Floyd complaint, and as such, would make their actions timely.

Accordingly, Deloitte's motion to dismiss is without merit and should be denied.

## FACTUAL BACKGROUND

On November 22, 2019, Samuel R. Floyd, III, "individually and on behalf of all others similarly situated," filed a class action complaint alleging securities fraud against Defendants Deloitte & Touche, LLP and Deloitte, LLP ("Deloitte") regarding their audit of SCANA's 2014, 2015, 2016, and 2017 financial statements. ECF No. 1. On January 24, 2020, the Fund moved for appointment as lead plaintiff, ECF No. 22, and on February 18, 2020, the Court granted that motion. ECF No. 37. The Court reaffirmed the appointment of the Fund as Lead Plaintiff on July 14, 2021. ECF No. 88.

Like all Taft-Hartley plans, the Fund operates under a Trust Agreement that is consistent with the requirements of the Employee Retirement Income Security Act of 1974 ("ERISA"). Because the Trust Agreement does not include any specific provisions applicable to securities litigation, such litigation is governed by Section 5.9 of the Trust Agreement, under which the Trustees are empowered to "to do all acts, whether or not expressly authorized herein, which the Trustees may deem necessary or proper for the protection of the property held hereunder." Contrary to Deloitte's assertions, the manner in which such litigation is authorized, instituted and conducted is an administrative matter internal to the Fund and, as to third parties, is not subject to any procedural prerequisites or limitations under the Trust Agreement. *See* Ex. A

2

(Trust Agreement at Section 5.9) (Pltf-Local 98-0000074). Notably, the Trust Agreement expressly provides that the Trustees alone have "full power to construe the provisions of this Trust Agreement" and "any [] construction adopted by the Trustees in good faith shall be binding." *Id.* at Section 5.15 (Pltf-Local 98-0000078-9). The Fund has uniformly and consistently interpreted this language as permitting the Fund to institute and conduct securities litigation against third parties to recover investment losses for decades. Indeed, pursuant to this provision, the Fund's various Chairs have filed certifications authorizing the filing of a lead plaintiff motion on behalf of the Fund in more than a dozen securities litigation cases in the past two decades.[1]

Under the Trust Agreement, the only items requiring majority vote by the Trustees involve ERISA specific requirements or pertain to the Fund's business operations, such as operating expenses, bill payments, and pension approvals. *Id.* at Section 5.15 (Pltf-Local 98-0000078-9); Ex. B (Neilson Dep.) at 77:24-81:17. Because securities litigation cases are unrelated to ERISA related requirements and "ha[ve] nothing to do with the operations of the fund," do not "cost the fund any money," incur "no liability to the fund," and because "any money that . . . ever [would] come back to th[e] fund w[ould] be money that this pension fund would see for free," the Trust Agreement does not require any sort of vote.  Ex. C (Burrows Dep.) at 53:22-54:3; *see also id.* at 44:1-46:7.

---

[1] *See, e.g., Mauro v. Liberty Tax, Inc. et al*, No. 1:18-cv-00245, ECF No. 11-2 (E.D.N.Y. Jan. 12, 2018); *IBEW Local 98 Pension Fund v. CPI Corp. et al*, No. 4:12-cv-00075, ECF No. 16-2 (E.D. Mo. Jan. 13, 2012); *IBEW Local 98 Pension Fund et al v. Cent. Vt. Pub. Serv. Corp. et al*, No. 5:11-cv-00222, ECF No. 1-2 (D. Vt. Sep. 15, 2011); *In Re Evergreen Ultra Short Opportunities Fund Sec. Litig.*, No. 1:08-cv-11064, ECF No. No. 17-4 (D. Mass. Jun. 23, 2008); *Pyramid Holdings Inc. v. Inverness Med. Innovations Inc. et al*, No. 1:08-cv-10615, ECF No. 12-4 (D. Mass. Apr. 10, 2008); *Richards v. Zumiez Inc. et al*, No. 2:07-cv-01980, ECF No. 23-4 (W.D. Wash. Dec. 10, 2007); *Kivun Mut. Funds Ltd v. 21st Century Holding Co., et al*, No. 07-61057, ECF No. 24-3 (S.D. Fla. July 7, 2007); *Albano v. Warner Chilcott Ltd. et al*, No. 1:06-cv-11515, ECF No. 13-2 (S.D.N.Y. Nov. 01, 2006).

For the nearly two and a half years since its appointment as Lead Plaintiff, the Fund has actively and adequately overseen this litigation. After overseeing the drafting of a comprehensive amended complaint and prevailing on Defendants' first motion to dismiss, the Fund moved to certify the Class.  In response, Deloitte conceded virtually every element required for the Class to be certified.  It conceded numerosity, superiority, that the market for SCANA stock was efficient and that reliance can be presumed, that the claims asserted are common, that common issues as to liability predominate, and that proposed Class Counsel are adequate. Instead, Defendants raised narrow challenges, arguing only that the Fund had not set forth a sufficient methodology for calculating classwide damages and is somehow not incentivized to seek damages for the entire Class Period. As set forth in the Fund's class certification reply, both arguments are wrong and should be rejected by the Court. *See generally* ECF No. 100. Defendants, however, also argued that it needed further discovery into the adequacy of the Fund due to supposed "serious concerns" and "significant questions" pertaining to certain individuals associated with the Fund. In an order granting, in large part, Plaintiff's Motion for Protective Order, however, the Court made clear what dozens of courts have similarly held: "mere allegations" of wrongdoing are "not relevant, unduly burdensome, and not proportional to the needs of the underlying action." ECF No. 105 at 3. Moreover, further discovery—including three additional depositions—has not turned up a single shred of evidence that the Fund is inadequate. To the contrary; the depositions further demonstrated that the Fund is knowledgeable about the claims in the case, sufficiently overseeing counsel, adequately and effectively fulfilling its fiduciary duty to the Class and that Mr. Burrows has had and will have no further role in the litigation.

While these depositions were ongoing, the Fund filed a Motion to Compel and for Sanctions against Defendants, due to Defendants' refusal to comply with its discovery obligations

4

and the Court's discovery orders, ECF No. 118, and further moved for an immediate status conference to discuss the Motion to Compel and for Sanctions. ECF No. 116. As was clear from the detailed information and documents provided in the Fund's motion, Deloitte intentionally hid from Plaintiff and the Court that it was actively involved in evaluating and analyzing various aspects of the Nuclear Project on behalf of not just SCANA, but every single company involved in its construction. *See generally* ECF No. 118, 129. Notably, its own audit team contemporaneously made clear that such work was directly relevant to Deloitte's SCANA audits. *Id*. It also intentionally hid from Plaintiff and the Court that it was subpoenaed in connection with a second, separate SEC investigation for this same work. *Id*. A hearing was set on the Fund's motion for June 1, 2022. ECF No. 126.

In a transparent attempt to hopefully delay or avoid a ruling on the Fund's motion, Defendants filed the instant motion on May 26, 2022. ECF No. 132. On May 27, 2022, the Court cancelled the June 1, 2022 hearing "pending the court's ruling on the jurisdiction order" raised in Defendants' motion to dismiss. ECF No. 134.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(1), there are only two ways in which a defendant may successfully obtain dismissal based on lack of subject matter jurisdiction. *Kerns v. U.S.*, 585 F.3d 187, 192 (4th Cir. 2009). First, the defendant may argue "that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based," in which case "the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration." *Id.* Second, the defendant can challenge "the factual predicate of subject matter jurisdiction" and contend "that the jurisdictional allegations of the complaint [are] not true." *Id.* In this scenario, "[a] trial court may then go beyond the allegations of the complaint and in an evidentiary hearing determine if there are facts to support the jurisdictional allegations," without

5

converting the motion to a summary judgment proceeding. *Id.*

Under Federal Rule of Civil Procedure 12(b)(1), the plaintiff need only demonstrate "by a preponderance of evidence the existence of subject matter jurisdiction." *U.S. for use of Delval Equip. Corp., Inc. v. E. Coast Welding & Constr. Co., Inc.*, No. 21-1244, 2022 WL 717046, at *9 (D. Md. Mar. 10, 2022) (citations omitted). And a court should only grant a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) "if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.* (quoting *B.F. Perkins*, 166 F.3d at 647 (citation omitted)).

A motion to dismiss for failure to sue on behalf of the real party in interest is governed by Federal Rule of Civil Procedure 17. Under that Rule, a Court "may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action." Fed. R. Civ. P. 17(a)(3). "After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest." *Id.* This is to prevent an injustice where a plaintiff could be foreclosed recovery merely because of an understandable administrative mistake that can be easily fixed and caused the defendant no prejudice. *See, e.g.*, *Jones v. Safeway*, No. 12-03547, 2014 WL 6871586, at *6–7 (D. Md. Dec. 3, 2014); *Wieburg v. GTE Southwest, Inc.*, 272 F.3d 302, 309 (5th Cir. 2001).

## ARGUMENT

### I.   <u>The Fund Has Article III Standing</u>

Deloitte frames its motion as a motion to dismiss based upon lack of subject matter jurisdiction. However, in order to succeed under Rule 12(b)(1), Deloitte must successfully demonstrate that the Fund's claims do not present a federal question because the Fund itself does not have Article III standing. Deloitte does not—because it cannot—make that argument here.

There is no doubt that the Fund itself has Article III standing—the Fund indisputably bought the securities at issue and suffered an injury as a result of its purchases.

Rather, Deloitte essentially argues that Mr. Burrows (and later Mr. Neilson) were not authorized to act on behalf of the Fund since no vote of the Trustees occurred, and thus, the real party in interest—the Fund—had not yet appropriately moved to be appointed lead plaintiff or litigated the case in its name. Thus, at most, Deloitte's motion could be construed as a motion to dismiss for failure to sue on behalf of the real party in interest.[2] The Federal Rules of Civil Procedure, however, are clear that a Court "***may not*** dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, ***a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action***." Fed. R. Civ. P. 17(a)(3) (emphasis added). And "[a]fter ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest." *Id.* Courts have recognized that one of the purposes of this rule is to prevent an injustice where a plaintiff could be foreclosed recovery merely because of an understandable administrative mistake that can be easily fixed and caused the defendant no prejudice. *See, e.g.*, *Jones*, 2014 WL 6871586, at *6-7 (granting plaintiff 30 days from the order to cure the standing issue "to afford plaintiff a reasonable time to seek to reopen the bankruptcy case so as to amend the petition, and to afford the trustee the opportunity to

---

[2] Some of the cases Deloitte cites seem to indicate that Defendants are disputing *prudential* standing, in the sense that the suit was not properly brought on behalf of a non-party. *Cf.* MTD at 2 (citing *Union de Empleados de Muelles de P.R., AFL-CIO, Loc. 1901, ILA v. Int'l Shipping Agency, Inc.*, No. 12-2056, 2014 WL 12726555, at *3 (D.P.R. Feb. 19, 2014)). However, the Fourth Circuit has held that disputes over prudential standing are not a proper ground for a Rule 12(b)(1) motion; because it is non-jurisdictional, it should therefore be brought instead as a Rule 12(b)(6) motion. *Riston v. Klausmair*, No. 17-03766, 2018 WL 4333752, at *6 (D. Md. Sept. 11, 2018) (citing *U.S. v. Day*, 700 F.3d 713, 721 (4th Cir. 2012); *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 n. 4 (2014)). And in any event, such argument is inapposite. The Fund has indisputably suffered an injury and, as such, this suit is properly being brought on behalf of the Fund.

7

intervene in this action, ratify it, or abandon the claim"); *Wieburg*, 272 F.3d at 309 (concluding that district court abused its discretion by dismissing action "without explaining why the less drastic alternatives of either allowing an opportunity for ratification by the Trustee, or joinder of the Trustee, were inappropriate.").

Thus, even if the Court agrees with Deloitte—which, as set forth below it should not—the most relief that should be granted here is the opportunity for the Fund to cure its alleged lack of standing by holding a formal vote.

## II.     The Trust Agreement Does Not Require A Majority Of IBEW Local 98 Pension Fund's Board Of Trustees To Have Voted For Or Formally Authorized This Lawsuit

### A.  The Trust Agreement Does Not Address Securities Litigation

Defendants blatantly mischaracterize the Trust Agreement, as well as Mr. Burrows' and Mr. Neilson's deposition testimony, to argue that "[n]either Burrows nor Neilson has ever had the authority to prosecute this litigation on behalf of the Fund, and they are acting in violation of the Fund's governing Trust Agreement" since no vote of the Trustees occurred. MTD at 3. The Trust Agreement does not discuss or cover securities class action litigation. Instead, the Fund's authority to participate in such litigation arises under the Trust Agreement's "Additional Authority" provisions, which grant Trustees wide discretion to oversee other matters not specifically covered by the express terms of the Trust Agreement, including "to enter into any and all contracts and agreements . . . for the administration of the Trust Fund, and to do all acts as they, in their discretion, may deem necessary or advisable, and such contracts and agreements and acts shall be binding and conclusive on the parties hereto and on the Participants, Pensioners and Beneficiaries involved," and "to do all acts, whether or not expressly authorized herein, which the Trustees may deem necessary or proper for the protection of the property held hereunder." Ex. A (Trust

Agreement at Section 5.9) (Pltf-Local 98-0000074).  Nothing in these provisions requires a vote or formal delegation by a majority of the Trustees.[3]

Pursuant to the Trust Agreement's "Additional Authority" provisions, the Fund's various Chairs have filed certifications authorizing the filing of a lead plaintiff motion on behalf of the Fund in more than a dozen securities litigation cases in the past two decades. *See supra* fn 1. Not once has the Chair's authority to bring or oversee such litigation ever been questioned by any trustee, court, or adverse party. *See infra* Section II.B.

Ignoring these "Additional Authority" provisions, Defendants try to shoehorn the requirements of other provisions in the Trust Agreement that address ERISA requirements and govern ERISA related disputes onto securities class action litigation.  For example, they claim that "the Trust Agreement provides that the Fund must take or authorize actions and make decisions either 'by unanimous consent . . . in writing' or at meetings decided by a majority vote of the Trustees, so long as a quorum—defined as at least two Management Trustees and at least two Employee Trustees—is present." MTD at 5 (citing Trust Agreement at Section 3.13 (Pltf-Local 98-0000061-62)).  As is clear from its face, however, that provision has nothing to do with securities litigation. Rather, that provision was adopted in 1975 to reflect the unique statutory requirements of ERISA. *See* Ex. A (Trust Agreement at Pltf-Local 98-0000049) ("the Association and the Union desire to make a new Agreement and Declaration of Trust which will supersede and replace the aforesaid amended Agreement and Declaration of Trust, ***in order to conform its provisions to the requirements of the Employee Retirement Income Security Act of 1974***.")

---

[3] Contrary to Defendants' interpretation of Mr. Neilson's testimony, *see* MTD at 4-5, Mr. Neilson clearly testified that—consistent with the Trust Agreement—the only items requiring majority vote pertain to the Fund's ***business operations***, such as operating expenses, bill payments, and pension approvals. Ex. B (Neilson Dep.) at 77:24-81:17. Securities litigation is not a "business operation" of the Fund.

(emphasis added). ERISA primarily concerns the allocation of fiduciary status and attendant duties, and thus provides that "a person is a fiduciary with respect to a plan to the extent (i) he *exercises any discretionary authority or discretionary control respecting management of such plan* . . . or (iii) he has any discretionary authority or discretionary responsibility in the *administration of such plan*." 29 U.S.C. § 1002(21)(A) (emphasis added). ERISA then empowers the trustees (along with the Secretary of Labor, plan participants, and plan beneficiaries) to bring civil action against that fiduciary if he violated one of ERISA's requirements. *See* 29 U.S.C. § 1132(a)(2), (3). Obviously, participation as a lead plaintiff in a securities class action has nothing to do with the management or administration of the Fund's pension plans, and thus has no relation to the requirements of ERISA.

Notably, the Fund's, not Deloitte's, understanding of the requirements of the Trust Agreement controls. The Trust Agreement expressly provides that the Trustees are granted full power to construe the provisions of the Trust Agreement. *See* Ex. A at Section 5.15 (Trustees have "full power to construe the provisions of this Trust Agreement"). The Fund and its Trustees have uniformly and consistently interpreted the Trust Agreement to permit the Fund to institute and conduct securities litigation against third parties to recover investment losses, like it did here. That should end the inquiry and compels denial of Deloitte's motion.

Defendants also mischaracterize Mr. Burrows' testimony regarding where his authority to bring such securities suits arises from. *See* MTD at 7. Mr. Burrows testified, consistent with the Trust Agreement provisions discussed above, that the Trustees "underst[and] how security litigation cases work," and that because such cases "ha[ve] nothing to do with the operations of the fund," do not "cost the fund any money," incur "no liability to the fund," and because "any money that . . . ever [would] come back to th[e] fund w[ould] be money that this pension fund

would see for free," the Fund's initiation and litigation of this case is consistent with the Trust Agreement. Ex. C (Burrows Dep.) at 53:22-54:3, 54:10-54:11.[4]

In addition to their mischaracterizations of the Trust Agreement and deposition testimony, the cases that Defendants rely on are inapposite. Most of the cases Deloitte relies on are ERISA cases involving collection disputes *between* employees and the employers. In the event of such an ERISA dispute, the ERISA requirements in the Trust Agreement Deloitte references in its motion are applicable. In such conflicts, it is common for the board of trustees to deadlock on how to proceed. When that happens, trust agreements typically require arbitration (as the Fund's Trust Agreement here does), and ERISA requires the parties to exhaust their internal remedies under the plan and to vote before bringing a lawsuit. And when the plaintiffs have failed to do that, courts have dismissed or granted summary judgment on the grounds that the plaintiffs failed to comply with their internal trust documents and to exhaust their internal remedies as required under the Taft-Hartley Act. *See, e.g.,* MTD at 2 (citing *Kilkenny v. Guy C. Long, Inc.*, 288 F.3d 116, 121, 124 (3d Cir. 2002) (holding that trustees did not have standing to bring claim because they failed to exhaust arbitration, which was mandated under the applicable trust agreement under ERISA, after deadlocked trustee vote); *Alfarone v. Bernie Wolff Const. Corp.*, 788 F.2d 76, 79 (2d Cir. 1986) (same)).[5] No such internal trust or statutory requirement exists for the securities litigation claim at hand here.

---

[4] Mr. Burrows' testimony regarding the *Wachovia* case clearly contrasted litigation brought on behalf of the Fund—where he serves as Chair—with litigation he has been involved with on behalf of ***a separate fund*** with different governing documents where he is neither the Chair or a Trustee, and must be formally authorized to bring suit via a vote.

[5] Further, in *Alfarone* unlike here, the agreement required "majority vote" as to "all aspects of the agreements."

11

The other cases cited by Deloitte are similarly inapplicable here. In *Union de Empleados de Muelles de P.R., AFL-CIO, Loc. 1901, ILA v. Int'l Shipping Agency, Inc.*, No. 12-2056, 2014 WL 12726555, at *3 (D.P.R. Feb. 19, 2014), the applicable trust agreement had an explicit requirement of a majority vote to "obtain[] legal services" of any kind. The Fund's Trust Agreement here has no language regarding the general provision of legal services. Indeed, the Trust Agreement here has no language regarding legal disputes whatsoever except for legal disputes pertaining to the provision of ERISA benefits and between beneficiaries or employers and the Trustees themselves (not the Fund), neither of which are applicable here. Ex. A (Trust Agreement at Sections 5.1-5.3) (Pltf-Local 98-0000067) ("Section 5.2 Use of Fund to Provide Benefits. . . . [A]ny one duly authorized Trustee may execute legal documents to commence and process law suits to enforce trust collections on behalf of the Trustees"). Defendants also cite to *Va. House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1951 (2019) and *F.E.C v. NRA*, 115 S. Ct. 537 (1994) to argue that Burrows and Neilson have no authority to initiate or oversee this litigation on the Fund's behalf. However, in *Bethune-Hill*, 139 S. Ct. at 1951, there was a specific state law at issue that stated that the V.A. Attorney General has the sole authority to litigate on behalf of the state, and in *NRA*, 115 S. Ct. at **538, the FEC "lacked statutory authority to represent itself" because specific federal regulations explicitly delegated that authority to the Solicitor General. There is no such comparable provision in the Trust Agreement here, nor law.

Defendants also cite to *First Telebanc Corp. v. First Union Corp.*, No. 02-80175, 2007 WL 9702557 (S.D. Fla. Aug. 6, 2007) to support their standing argument. However, Defendants miss that the issue in *Telebanc* was that the ***unauthorized*** president of the company-initiated suit, and

not members of Board of Directors, as was required under the trust documents there.[6] And in the case of *Oil & Gas Co. v. Duryee*, 9 F.3d 771, 773 (9th Cir. 1993), the court-enforced liquidation had suspended the "directors, officers, and managers" of the insurance company, leaving only one rehabilitator with the power to bring suit in a bankruptcy proceeding. Here, in contrast to both *First Telebanc* and *Duryee*, both Burrows and Neilson are Trustees of the Fund, who acted consistently with the terms of the Trust Agreement to bring claims authorized by the Trust Agreement.

Finally, the only securities litigation case cited by Deloitte, *Cont'l Bank, N.A. v. Caton*, No. 88-1611, 1990 WL 129452, at *6 (D. Kan. Aug. 6, 1990) is inapplicable as well. The trust relationship at issue in *Cont'l Bank* is a completely different type of trust relationship than at issue here; the plaintiff there was a trustee under a trust indenture. As such, he was limited under the indentures to bringing "claims . . . under the indentures" and he was "not empowered under the Trust Indenture, Bonds or other agreement to bring tort claims or securities law claims on behalf of the bondholders" since those claims were "wholly extraneous to the rights and obligations created by the notes and the indenture agreements." *Id.* at *6-7.

**B.  Like Most Taft-Hartley Funds, The Chairman Of IBEW Local 98 Pension Fund Has Signed Certifications Authorizing The Filing Of Lead Plaintiff Motions In Securities Litigation Cases On Behalf Of IBEW Local 98 Pension Fund For Decades**

For over two decades, the Fund has participated in securities litigation cases as a lead plaintiff, named plaintiff, or class representative. In each of those cases, the Fund acted pursuant

---

[6] In *First Telebanc*, the Office of the Comptroller of the Currency had prohibited the President "from participating in the affairs of the bank," *id*. at *6, the Fourth Circuit had previously made factual findings that the President "was precluded from any leadership role in the Bank" and had "acted beyond his legal capacity in voting on policy decisions affecting the Bank," *id* at *2, and the President was precluded from filing suit "by virtue of Florida law." *Id*. at *8. No such impediments or prohibitions are at issue here.

13

to the "Additional Authority" provisions of the Trust Agreement to move for appointment as lead plaintiff and to oversee the litigation. Like here, in each of those cases, the Chairman of the Fund—first Mr. Harry Foy, and later Mr. Burrows—alone signed the required PSLRA certification on behalf of IBEW Local 98 Pension Fund in support of the Fund's motion for appointment as a lead plaintiff. *See* fn 1 *supra.* Not once has the Chairman's sole authority to sign and file such a certification in support of a motion for lead plaintiff ever been questioned by any trustee, court, or adverse party. Thus, the Fund's actions here are consistent with its longstanding policy and practice, further demonstrating that the Fund acted pursuant to the terms and requirements of the Trust Agreement.

### III.   The Taft-Hartley Act Does Not Require A Majority Of IBEW Local 98 Pension Fund's Board Of Trustees To Have Voted To Authorize This Lawsuit

Nothing in the Taft-Hartley Act requires a majority of IBEW Local 98 Pension Fund's Board of Trustees to have voted to authorize this lawsuit. The "purpose and policy" of the Taft-Hartley Act, also known as the Labor Management Relations Act, is "to prescribe the legitimate rights of both employees and employers in their relations affecting commerce, to provide orderly and peaceful procedures for preventing the interference by either with the legitimate rights of the other, to protect the rights of individual employees in their relations with labor organizations whose activities affect commerce, to define and proscribe practices on the part of labor and management which affect commerce and are inimical to the general welfare, and to protect the rights of the public in connection with labor disputes affecting commerce." 29 U.S.C.A. § 141(b). The Taft-Hartley Act thus governs the Trustees' discretion in structuring pension rules.

Nothing in the Taft-Hartley Act discusses, or requires trust documents to cover, securities litigation or even litigation generally. While Defendants make much of the fact that "[t]he Taft-Hartley Act contains a number of provisions regarding the relationship between employers and

employees," MTD at 3, this is because the Taft-Hartley Act does have specific requirements for trust agreements regarding procedures for disputes about payments/contributions, including equal representation of employers and employees and, in the event of deadlock, arbitration. However, this litigation has nothing to do with disputes about payments and/or contributions into the pension plan or the relationship between employers and employees.

Instead, Section 302(c)(5) of the Taft-Hartley Act requires trustees to act "for the sole and exclusive benefit of the employees," and imposes on trustees the burden of fiduciary care, as defined on traditional equitable principles. *Hurn v. Ret. Fund Tr. of Plumbing, Heating & Piping Indus. of S. California*, 703 F.2d 386, 388 (9th Cir. 1983) (citing *NLRB v. Amax Coal Co.*, 453 U.S. 322, 330 (1981)). This duty is reflected in the Trust Agreement, which grants the Trustees wide discretion to oversee other matters not specifically covered by the express terms of the Trust Agreement. *See supra* Section II.A.; *see also* Ex. A (Trust Agreement at Section 5.15) (Pltf-Local 98-0000078-9). As has been the Fund's practice in the past, and consistent with the Taft-Hartley Act and the Trust Agreement, the Chairman of the Fund, and now Mr. Neilson, have admirably carried out such fiduciary duties in representing the Fund in this action. *See supra* Section II.B.

## IV.    Even If There Were An Issue With IBEW Local 98 Pension Fund's Standing, It Would Easily Be Cured

### A.  The Statute of Limitations Does Not Foreclose Ratification

Deloitte claims that even if the Trustees were now to vote to approve and ratify this litigation, the vote would be "ineffective" because the "the applicable statutes of limitations and repose have run." MTD at 12. This argument is meritless for two separate reasons.

*First,* Deloitte's argument is premised on the claim that "any attempted ratification could not relate back to the filing of the Complaint because the statutes of limitations and repose have already run." But the Fund did not file the first Complaint in this case, Mr. Floyd did, on behalf of

15

himself and all others similarly situated, including the Fund. In other words, the Fund became a putative plaintiff on the day the lawsuit was filed, at which point, the statute of limitations was tolled for the Fund and every other member of the putative class. *See infra* Section IV.B. To the extent the Fund was not "authorized" to litigate this case (which it was), the only acts that could conceivably be implicated are the Fund's motion for appointment as lead plaintiff, its amended complaint, and briefing throughout this case. Thus, the only act that would need to be "cured" is the Fund's motion for appointment as lead plaintiff. But the statute of limitations is inapplicable to when a party must move for appointment of a lead plaintiff in a case that was timely filed. Indeed, the Court has wide discretion to issue orders to "determine the course of proceedings or prescribe measures to prevent undue repetition or complication in presenting evidence or argument" and "deal with similar procedural matters." Fed. R. Civ. P. 23(d). This case was timely filed and the Fund did not have to vote to "participate in this action" as a member of the Class. As such, the statute of limitations has no bearing on any acts that the Fund took after the point to prosecute this case.

In support of its argument, Deloitte cites *F.E.C v. NRA Political Victory Fund,* but in that case, the Supreme Court was faced with the question of whether the Solicitor General's "after-the-fact authorization" of a petition for certiorari filed by the Federal Election Commission ("FEC") was ineffective because the Solicitor General issued his "ratification" after the time for filing the petition had passed. *F.E.C.*, 115 S Ct. at 98–99 (1994). Under federal law, the FEC lacks statutory authority to represent itself in the Supreme Court and cannot independently file a petition for certiorari but must receive the Solicitor General's authorization. *Id.* The Supreme Court held that the ratification was ineffective because the Solicitor General attempted to ratify the FEC's filing after the 90-day deadline for filing a petition had expired. In other words, no authorized petition

was filed prior to the expiration of the deadline because the FEC did not have authority to file a petition, the Solicitor General lacked authority to late-file a petition, and he likewise lacked the authority to ratify a petition late-filed by someone else. Similarly, in *First Telebanc Corp. v. First Union Corp.*, the court held that a bank could not ratify the lawsuit filed by the unauthorized president of a bank who was barred from suing on the bank's behalf because "while the Board of Directors could have initiated the lawsuit in 2002, it could not now initiate the lawsuit because the statute of limitations is long since passed." 2007 WL 9702557, at \*10. Like *NRA Political Victory Fund,* the court's conclusion in *First Telebanc* rested on its finding that the initial plaintiff "acted without authority in his initiation of th[e] lawsuit." *Id* at \*6. But, here, there is no dispute that the initial plaintiff, Mr. Floyd, was authorized to file the lawsuit on behalf of himself and the other members of the Class, including the Fund. And for statute-of-limitations purposes, that's all that matters. Further, here, in sharp contrast to both cases Deloitte relies on, there is no dispute that the Fund has the authority to take the very act in question—move for appointment as lead plaintiff and litigate this case accordingly. By ratifying, the Fund would be doing no more than confirming that it had and will continue to have authority to prosecute this case—which is exactly what Deloitte knew to be the case until it filed this motion.

*Second,* Deloitte's argument is irreconcilable with the Federal Rules, which were designed to ensure that cases are decided on the merits, not procedural technicalities. That is why Rule 17 permits parties to ratify lawsuits that were brought mistakenly by the wrong party. It is also why Rule 15 provides that an amendment "relates back to the date of the original pleading" if the amendment "assert a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." And it is why, in the class action context, lead plaintiffs, named plaintiffs and class representatives are regularly withdrawn, substituted and

added throughout the course of the litigation, including at the class certification stage of the litigation. *See Phillips v. Ford Motor Co.*, 435 F.3d 785, 787 (7th Cir. 2006) (holding that "[s]ubstitution of unnamed class members for named plaintiffs who fall out of the case because of settlement or other reasons is a common and normally an unexceptionable ("routine") feature of class action litigation . . . in the federal courts[.]" and collecting cases); *Birmingham Steel Corp. v. Tenn. Valley Auth.*, 353 F.3d 1331, 1342 (11th Cir. 2003) (holding that a district court abused its discretion by refusing to permit substitution of a class representative after discovery had been completed, numerous pretrial motions had been resolved, and the case was ready for trial). Accordingly, if ratification is necessary (which it is not), the statute of limitations poses no bar.

## B. Even If IBEW Local 98 Pension Fund Lacked Standing That Could Not Be Cured, The Case Should Still Not Be Dismissed

Even assuming *arguendo* that the Fund did not have standing and that its lack of standing could not be cured through ratification, the case should still not be dismissed. It is well-established that under *American Pipe*, "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." *Popoola v. Md-Individual Prac. Ass'n, Inc.*, 230 F.R.D. 424, 428 (D. Md. 2005) (citing *Am. Pipe and Constr. v. Utah*, 414 U.S. 538, 554, (1974)). "Once the statute of limitations has been tolled, *it remains tolled for all members of the putative class until class certification is denied*, at which point class members may choose to file their own suits or to intervene as plaintiffs in the pending action." *Popoola*, 230 F.R.D. at 428 (quoting *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 354, 103 S. Ct. 2392, 76 L.Ed.2d 628 (1983)) (emphasis added and internal quotations omitted). The Supreme Court in *American Pipe* specifically noted the concern that "if the statute of limitations were to run during the pendency period, every individual class member would feel obligated to file a motion to intervene before the end of the

period in order to preserve his or her rights, 'depriv[ing] Rule 23 class actions of the efficiency and economy of litigation which is a principal purpose of the procedure.'" *Popoola*¸ 230 F.R.D. at 428 (quoting *American Pipe*, 414 U.S. at 553).

Courts have specifically held that "the *American Pipe* rule [applies] in cases where class action status is denied or terminated based upon the named plaintiff's lack of standing to maintain the class claims." *Popoola*, 230 F.R.D. at 428 (citing *Haas v. Pittsburgh Nat'l Bank*, 526 F.2d 1083, 1095–98 (3rd Cir.1975); *Rose v. Ark. Valley Envtl. & Util. Auth.*, 562 F.Supp. 1180, 1190–94 (W.D.Mo.1983)). "Defendants were, before the statute of limitations would otherwise have expired, plainly on sufficient notice of the claims against them." *Popoola*, 230 F.R.D. at 430.[7]

As in *Popoola*, the initial complaint in this matter was timely filed, and "the number and generic identities of the potential plaintiffs have been plain to Defendants since the filing of the initial complaint." *Id.* at 430. Thus, "the commencement of the original class action . . . tolled the statute of limitations as to all asserted members of the class who would have been parties had the

---

[7] While the Supreme Court did subsequently limit *American Pipe* tolling in *California Pub. Employees' Ret. Sys. v. ANZ Sec., Inc.*, 137 S. Ct. 2042, 198 L. Ed. 2d 584 (2017) ("*CalPERS*") to hold that *American Pipe* tolling does not apply to extend the time for filing new, individual claims after the expiration of the statute of repose by opt-out class members, *CalPERS* has no impact on the continued viability of this class action. The initial complaint in this action was filed by Mr. Floyd well within the five-year statute of repose for securities fraud claims brought under Section 10(b) of the Exchange Act. *See* Class Action Securities Complaint (ECF No. 1)*; see also Se. Penn. Transp. Auth. v. Orrstown Fin. Servs. Inc.*, 12 F.4th 337 (3d Cir. 2021) (granting leave to amend class action complaint after expiration of the statute of repose, and noting that "[d]efendants therefore had no right to repose as long as [plaintiff's] action was pending" because plaintiffs "brought an action under both the Securities Act and the Exchange Act against all Defendants before the Acts' deadlines."); *In re LexinFintech Holdings Ltd. Sec. Litig.*, No. 3:20-CV-1562, 2021 WL 5530949 (D. Or. Nov. 24, 2021) (holding that plaintiffs' section 11 claims were not barred by the statute of repose under *CalPERS* because "the original putative class action plaintiff . . . filed the First Amended Class Action Complaint in September 2020, before the applicable statute of repose expired" and noting that "*CalPERS* is inapposite to the pending case, in which a putative class action plaintiff files an amended complaint asserting a claim and then a court appoints a different lead plaintiff in the same case, who files a further amended complaint asserting the same claim.").

suit been permitted to continue as a class action." *Id.* Thus, even if unlikely event that this Court were to determine that the Fund lacks standing, and such lack of standing is not curable throughout ratification, under *American Pipe* this class action is still able to proceed under a different lead plaintiff.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendants' motion to dismiss.

June 16, 2022                                   Respectfully submitted,

*s/William Tinkler*
William Tinkler (D.S.C. Bar Number 11794)
TINKLER LAW FIRM LLC
PO Box 31813
Charleston, SC 29417
Tel.: (843) 853-5203
Fax: (843) 261-5647
william@tinklerlaw.com

*Liaison Counsel for the Proposed Class*

COHEN MILSTEIN SELLERS & TOLL PLLC
Laura H. Posner
Ji Eun Kim (Jessica)
88 Pine Street,14th Floor
New York, New York 10005
Tel.: (212) 838-7797
Fax: (212) 838-7745
lposner@cohenmilstein.com
jekim@cohenmilstein.com

Steve J. Toll
Jan Messerschmidt
1100 New York Avenue, N.W., Fifth Floor
Washington, D.C. 20005
Tel.: (202) 408-4600
Fax: (202) 408-4699
stoll@cohenmilstein.com
jmesserschmidt@cohenmilstein.com

*Lead Counsel for Lead Plaintiff and the Proposed Class*

GORDON BALL PLLC
Gordon Ball (TN BPR #001135)
7001 Old Kent Drive
Knoxville, TN 37919
Tel.: (865) 525-7028
Fax: (865) 525-4679
gball@gordonball.com

EDWARD D. SULLIVAN LAW OFFICE
Edward David Sullivan
PO Box 11714
Columbia, SC 29211
Tel.: (803) 451-2775
Fax: (803) 451-2770
esullivan@esullivanlaw.com

DARYL G. HAWKINS LAW OFFICE
Daryl G. Hawkins
1331 Elmwood Avenue, Suite 305
Columbia, SC 29201
Tel.: (803) 733-3531
Fax: (803) 799-9202
dgh@dghlaw.net

*Additional Counsel for the Proposed Class*

.

**CERTIFICATE OF SERVICE**

I certify that on June 16, 2022, I electronically filed this Memorandum, using the Court's CM/ECF system. A copy of this filing will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

*s/William Tinkler*
William Tinkler