UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL 98 PENSION FUND on behalf of itself and all others similarly situated,<br><br>              Plaintiff,<br><br>vs.<br><br>DELOITTE & TOUCHE LLP; DELOITTE LLP,<br><br>              Defendants. | Case No. 3:19-cv-3304 |

**DEFENDANTS' REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**

**PRELIMINARY STATEMENT**

It is undisputed, that under Supreme Court precedent, a plaintiff who lacks authorization to litigate does not have Article III standing.[1]  It is also undisputed that the Fund's Trustees have never authorized its participation in this action and that no Trustee except for Burrows and Neilson even knows that the Fund is litigating this case.  Deloitte's Motion to Dismiss (ECF No. 132, the "Motion" or "Mot.")[2] explains why these undisputed propositions require dismissal of this case for lack of subject matter jurisdiction.  *Id.* at 10-14.  This defect is fatal and cannot be remedied now that the applicable limitations and repose periods have run.  *Id.*

Through a series of unpersuasive and at times self-defeating arguments, Plaintiff tries mightily to persuade the Court that its failure to obtain the required authorization—not to mention the perjurious assurances of its representatives to the contrary in multiple separate certifications—is no big deal.  In its Opposition brief (ECF No. 141, the "Opposition" or "Opp."), Plaintiff contends, for example, that the issue is not really one of standing at all, but rather a mere procedural defect under Federal Rule of Civil Procedure 17 ("Rule 17") dealing with substitution of parties that can be easily remedied.  Opp. at 6-8.  But substitution under Rule 17 has no applicability here.  The issue on this Motion relates to **this very Plaintiff's failure** to obtain the authorization it requires.

Plaintiff's next gambit is the unavailing assertion that because "securities litigation" is not expressly addressed in the Trust Agreement, any individual Trustee can commence a securities case as he or she pleases.  *Id*. at 8-13.  This argument is absurd on its face.  There are countless actions the Trust Agreement does not specifically address—advertising, medical care, or, for that

---

[1] All exhibits referenced in this Memorandum are exhibits to the Declaration of Andrew B. Lichtenberg submitted herewith.

[2] Capitalized terms not defined herein are defined in the Motion.

- 1 -

matter, tort or intellectual property claims—but that anodyne fact hardly means the ordinary processes of the Fund requiring authorization by the Trustees are suspended in favor of the individual whims of each individual Trustee. The Trust Agreement unambiguously requires agreement of Management Trustees and Employee Trustees to take any business action. Mot. at 4-5. It makes no exception for commencing a lawsuit in federal court regarding the Fund's assets.

Plaintiff next urges that the Trustees alone have the power to interpret the Trust Agreement and that Deloitte—and by extension, the Court—has no business interfering in that process. Opp. at 2-3. But the basis for that argument lies in a provision that expressly binds only the parties to the trust *inter se* (the parties to the Trust Agreement, Participants, Pensioners, and Beneficiaries), and has no applicability to third parties, let alone to this Court. There is no credible reason for the Court to defer to the self-interested interpretation of the Plaintiff, or in reality, Plaintiff's counsel.

In fact, Plaintiff offers no evidence whatsoever that the Fund's **Trustees** have adopted an interpretation of the Trust Agreement that allows individual Trustees to pursue securities cases without even telling the other Trustees or voting on the matter. **Plaintiff's counsel** asserts that individual Trustees like Burrows and Neilson have overseen cases like this one in the past and then refers the Court to several such cases. *Id*. at 3, 9. **But Plaintiff does not offer a shred of evidence** demonstrating that the Trustees approved the filing of those cases—no prior resolution of the Trustees, no meeting minutes, no declarations, no affidavits, no other contemporaneous documents. **Literally, nothing at all**. Instead, Plaintiff hopes the Court will accept the after-the-fact say-so of its lawyers—the same lawyers who failed to disclose Burrows' federal criminal indictment. There is no reason for the Court to take Plaintiff or its counsel at their unsupported word on this question. They had the opportunity to evidence the truth of Burrows' and Neilson's statements that the Fund is authorized to pursue this suit, but have offered nothing.

Finally, implicitly acknowledging the weakness of its position, Plaintiff argues that, even if the Fund lacks standing, the action as a whole should remain extant either because Plaintiff should be permitted to ratify the actions of Burrows and Neilson or because the action could be taken over by a different lead plaintiff. *Id*. at 15-20. This argument fails. Even if Plaintiff were able to ratify (despite its glaring failure to have done so in response to Deloitte's Motion), the law is clear that ratification after the expiry of the applicable limitations period is ineffective. Here, both the ***limitations*** and the ***repose*** periods have expired, so any attempt at ratification would be a legal nullity. The expiry of the statute of repose similarly means that this action cannot be revived with a different lead plaintiff.

## ARGUMENT

### I. THE FUND'S UNAUTHORIZED PARTICIPATION IN THIS ACTION DEPRIVES IT OF STANDING

In its Opposition, Plaintiff claims that the Motion does not challenge the Fund's Article III standing because the Plaintiff alleges that it suffered an injury in fact. *Id*. at 6-7. That argument misses the point. As Deloitte explained in its Motion, the Fund's ***unauthorized participation*** in this litigation is itself an Article III standing issue. Mot. at 9-12.

No less an authority than the Supreme Court of the United States has held explicitly that a party that lacks authority to pursue a claim does not have Article III standing. *Id*. at 2, 9-11. For example, in *Virginia House of Delegates v. Bethune-Hill,* 139 S. Ct. 1945, 1951 (2019), the Supreme Court held that because "[a]uthority and responsibility for representing the State's interests in civil litigation . . . rest exclusively with the State's Attorney General," the Virginia House of Delegates had no "standing to represent the State's interest" in civil litigation, and therefore, the Court had no jurisdiction. Nowhere does Plaintiff dispute the holding of *Virginia*

- 3 -

*House of Delegates*, nor could it. That Supreme Court case is binding and requires dismissal here.[3]

*Virginia House of Delegates* is not unique. Deloitte's Motion cites numerous other examples of courts dismissing cases for lack of standing because a plaintiff was not authorized to pursue an action. Mot. at 10-12. For example, in *First Telebanc Corp. v. First Union Corp.*, 2007 WL 9702557, at *5-6 (S.D. Fla. Aug. 6, 2007), the President of a bank initiated a lawsuit on the bank's behalf when that power was reserved for the board of directors under the relevant bylaws. The court dismissed that action on standing grounds, because "[i]n order for there to be a real case or controversy, the plaintiff must have legal authority to initiate the action." *Id*. at *12. Because the bank President had no such authority, the bank lacked standing. *Id*. Like *Virginia House of Delegates*, Plaintiff does not dispute the core holding of *First Telebanc*—that if an entity is acting without authority to prosecute an action, that entity lacks standing, and the court by extension lacks jurisdiction.[4] *See also Cont'l Bank, N.A. v. Caton*, 1990 WL 129452, at *6-7 (D. Kan. Aug. 6, 1990) (plaintiff lacked standing because it was not authorized by the trust indenture, bonds or other documents to bring tort claims or securities law claims on behalf of bondholders); *Oil & Gas Co. v. Duryee*, 9 F.3d 771, 773 (9th Cir. 1993) ("The only person, then, who could go to court on behalf of Oil & Gas was Fabe. And he not only failed to authorize these actions; he opposed them.

---

[3] Plaintiff unsuccessfully attempts to distinguish *Virginia House of Delegates* by arguing that in that case, there "was a specific state law at issue that stated that the V.A. Attorney General has the sole authority to litigate on behalf of the state." Opp. at 12. But the issue is precisely the same here; just as the Virginia House of Delegates was acting without authority, Burrows and Neilson have purported to act for the Fund without authority.

[4] Plaintiff weakly attempts to distinguish *First Telebanc*, arguing strangely that the President of the Company there was "unauthorized." Opp. at 12-13. But that is the nub of Plaintiff's problem. Lack of authority is not a distinction at all because (a) the Trust Agreement makes clear that neither Burrows nor Neilson had authority without the consent of Management Trustees to commence this lawsuit and (b) Plaintiff has offered no evidence whatsoever to the contrary. Just as in *First Telebanc*, the *ultra vires* actions of individuals purporting to bind organizations without authority are void—and the related lawsuits, nullities.

Therefore, when Becker-Jones purported to file the bankruptcy petition on behalf of Oil & Gas, he was an impostor; his action is null and void.").

The situation here is the same as in *Virginia House of Delegates*, *First Telebanc*, *Cont'l Bank N.A.* and *Oil & Gas Co*. The Fund's failure to authorize the actions purportedly taken on its behalf by Burrows and Neilson means that there is no standing because there is no dispute—no case or controversy—between the Fund and Deloitte. The Fund acts only through its Trustees, exercising the power vested in them by the Trust Agreement. It is undisputed that the Trustees have never determined, in accordance with the Trust Agreement, that the Fund should be pursuing a claim against Deloitte as a class representative. Without such a determination, there simply is no case or controversy between Deloitte and the Fund.

Plaintiff strains to side-step this problem by claiming that "at most, Deloitte's motion could be construed as a motion to dismiss for failure to sue on behalf of the real party in interest," *i.e.*, the Fund. Opp. at 7. Plaintiff then argues that this Court cannot dismiss the case under Rule 17(a)(3) without first providing "for the real party in interest to ratify, join, or be substituted into the action." *Id*. at 7; Fed. R. Civ. P. 17(a)(3). But the problem here is more fundamental. This is not a situation where the requisite number of Trustees formally determined to commence a lawsuit and mistakenly brought the action in the name of the trust, rather than the names of the individual Trustees.[5] To the contrary, this is a situation where action required of the Trustees under the Trust Agreement to commence a litigation never occurred at all.

Rule 17 is also inapplicable here because there has been no "understandable administrative

---

[5] Rule 17(a)(3) is a procedural rule designed to allow federal courts the flexibility to ensure they have the right parties before them. By Plaintiff's own admission, it is the Fund that might have been able to claim an injury and therefore would have been the proper party to seek redress. Opp. at 6-7. There is no issue of substitution because the issue at hand involves the lack of authority of **this plaintiff** to bring a claim.

mistake," to use Plaintiff's words. Opp. at 7. The evidence before this Court is that both Burrows and Neilson represented under penalty of perjury that they were authorized to cause the Fund to bring this lawsuit. Yet, they admitted under oath in their depositions that they never in fact obtained such authorization and in fact never even *informed* the other Trustees of their intention to sue Deloitte. Mot. at 6-9. Rather than a mere "administrative mistake," Burrows and Neilson appear to have purposefully kept the other Trustees of the Fund in the dark about this case.[6]

Finally, Plaintiff's effort to shift the focus away from standing on onto Rule 17(a)(3) is misguided for the further reason that Rule 17(a)(3) is a procedural rule that is hardly intended to mask fatal defects in subject matter jurisdiction, as Plaintiff wishes here. Indeed, as Federal Rule of Civil Procedure 12(h)(3) makes clear "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).[7]

## II.     THE FUND NEVER AUTHORIZED ITS PARTICIPATION IN THIS LITIGATION

### A.     The Trust Agreement Requires the Consent of the Trustees

As explained in the Motion, Section 3.13 of the Trust Agreement ("Section 3.13") provides

---

[6] Plaintiff's stark admission that they apparently have done exactly the same thing in several other cases hardly improves its position. Opp. at 3, 9. If anything, that assertion raises serious questions about whether those other cases proceeded properly and about what the courts in those other cases were told—and not told—about the Fund's authority to litigate.

[7] In a footnote, the Fund argues that Defendants "seem" to actually be "disputing *prudential* standing, in the sense that the suit was not properly brought on behalf of a non-party." Opp. at 7 n.2 (emphasis in original). This is yet another red herring. As an initial matter, Deloitte's argument relates to Article III standing, not prudential standing. But even if that were not the case, the third-party prudential standing doctrine has clear constitutional foundations and likewise goes to jurisdiction. *See Sec'y of State of Md. v. Joseph H. Munson Co., Inc.*, 467 U.S. 947, 956 n.5 (1984) (describing third party prudential standing doctrine as "not completely separable from Art. III's requirement that a plaintiff have a sufficiently concrete interest in the outcome of the suit to make it a case or controversy") (cleaned up). It is also governed by Rule 12(b)(1). *See, e.g., Episcopal Church in S.C. v. Church Ins. Co. of Vermont*, No. 2:19-CV-1672-RMG, 2020 WL 109816, at *2, *3 (D.S.C. Jan. 9, 2020), *aff'd*, 997 F.3d 149 (4th Cir. 2021) (articulating that both "Article III standing under the constitution and prudential standing" are "legal question[s] for the Court to decide under Fed. R. Civ. P. 12(b)(1)").

expressly that the Fund must take or authorize actions either "by unanimous consent . . . in writing" or at meetings decided by a majority vote of the Trustees, so long as a quorum—defined as at least two Management Trustees and at least two Employee Trustees—is present. Mot. at 5. Neilson confirmed that this is the way the Fund actually operates, testifying that "the trustees of the fund direct the transaction of the fund's business either through votes at . . . meetings or through written resolutions." *Id.* It is undisputed that no such vote or resolution was taken by the Trustees, at any point in time, with respect to this lawsuit.

Despite this very clear requirement, Plaintiff asserts that Section 3.13 is inapplicable to prosecuting a lawsuit because, according to Plaintiff, Section 3.13 "was adopted in 1975 to reflect the unique statutory requirements of ERISA" and only applies to "the management or administration of the Fund's pension plans." Opp. at 9-10. Plaintiff simply misrepresents the facts. The 1961 version of the Fund's Trust Agreement, created **nearly 15 years before ERISA**, likewise stated that Trust actions could only be taken either "by unanimous consent . . . confirmed in writing" or at a meeting in the presence of a quorum. ECF No. 137 at Pltf-Local 98-0000095.[8] Moreover, nothing in Section 3.13's text confines its requirements only to ERISA matters. Rather, it states that "[w]hen a quorum is present at any meeting, a majority of the Individual Trustees present and voting shall decide *any* questions brought before such meeting" or that such decisions may be made via "unanimous consent without a meeting . . . confirmed in writing." *Id.* at Pltf-Local 98-0000061-Pltf-Local 98-0000062(emphasis added).

Erroneously brushing aside the clear language of Section 3.13, Plaintiff instead points to Section 5.9 of the Trust Agreement ("Section 5.9") to argue that this "Additional Authority"

---

[8] Defendants previously filed both the Fund's operative Trust Agreement and the preceding 1961 Trust Agreement at ECF No. 137.

provision governs the Fund's actions here because the Trust Agreement "does not discuss or cover securities class action litigation," and that Section 5.9 in effect empowers each individual Trustee to do whatever he or she wants regarding securities litigation. Opp. at 8. This argument is spurious. Section 5.9 plainly does not empower *individual* Trustees of the Fund to bring securities cases (or build rocket ships, or open amusement parks, or bring any other type of lawsuit, or take any of the infinite other actions that the Trust Agreement "does not discuss or cover"). Rather, the Trust Agreement requires agreement of Management Trustees and Employee Trustees for all business of the Trust, not just for particular types of Trust business. *See* Mot. at 4-6. Indeed, Section 5.9 makes clear that *the Trustees*—acting as a group—are vested with the powers necessary to run the Fund. Underscoring this point, the term "Individual Trustees" is a separately defined term in the Trust Agreement. *See* ECF No. 137 at Pltf-Local 98-0000052. Pointedly, Section 5.9 does not say that "Individual Trustees" are given powers, but rather "[t]he Trustees" as a whole. In other words, had the drafters of the Trust Agreement wanted to refer to Individual Trustees in Section 5.9, they could have done so. They did not. Simply put, Plaintiff's interpretation of Section 5.9 is both self-serving and nonsensical.

This is easily illustrated. Under Plaintiff's view, any Trustee acting by himself or herself can take binding actions on behalf of the Fund so long as the Trust Agreement "does not discuss or cover" that action. Opp. at 8. To use this case as an example, under Plaintiff's theory, Burrows had the power individually to retain Cohen Milstein to litigate against Deloitte on behalf of the Fund, at the same time as Neilson might have been authorized to hire another firm to do the same, just as another Trustee could have released all claims the Fund might have against Deloitte. According to Plaintiff, the fact that "securities litigation" is not specifically mentioned in the Trust Agreement means any individual Trustee could act on his own volition, and each such act would

be binding on the Fund. That is patently wrong.[9] Though Plaintiff wishes it were otherwise, the fact is that the Trust Agreement requires that any action relating to the Fund's business be taken by at least two Management Trustees and two Employee Trustees. No individual Trustee has the right to sell, use, or waste any Trust asset, and no individual Trustee can prosecute or relinquish claims purportedly held by the Trust against a third party.

In a last-ditch effort to ignore both the plain language of the Trust Agreement and sheer logic, Plaintiff argues that "the Fund's, not Deloitte's understanding of the requirements of the Trust Agreement controls." *Id.* at 10. For this proposition Plaintiff cites Section 5.15 of the Trust Agreement ("Section 5.15"), which according to Plaintiff states that the Trustees "have full power to construe the provisions of this Trust Agreement" and "any [] construction adopted by the Trustees in good faith shall be binding." *Id*. at 3, 10. But Plaintiff's ends this quotation early and omits critical language. Section 5.15 actually provides that "any such construction adopted by the Trustees in good faith shall be ***binding upon all of the parties hereto, the Participants, Pensioners and Beneficiaries hereunder***." ECF No. 137 at Pltf-Local 98-0000078-Pltf-Local 98-0000079 (emphasis added). In other words, the provision relating to the Trustees' ability to interpret the Trust Agreement applies, on its face, only as among the listed parties. Not surprisingly, the Trust Agreement does not purport to confer such interpretive prerogatives on the Trustees vis-à-vis third

---

[9] Plaintiff further seeks to justify this argument by claiming, wrongly, that because there is no downside to the Fund litigating this case, any individual Trustee is free to do whatever he or she pleases on behalf of the Fund. Opp. at 10-11. As explained above, there is no support in the Trust Agreement or in logic for this position. And there is downside for the Fund in litigating this case. Two Trustees have been deposed already, and the Fund can be subject to myriad sanctions, including for "abusive litigation" under 15 U.S.C § 78u–4(c) and for discovery violations under Federal Rule of Civil Procedure 37. If the case settles, the Fund must also ultimately release claims which ostensibly means relinquishing value in exchange for payment. Even there, Neilson's position is that he has "unilateral authority to settle this case on behalf of the fund." Ex. A (Excerpted Transcript of April 27, 2022 Deposition of Todd Neilson ("Neilson Dep. Tr.")) at 124:15-125:2.

parties, much less this Court.

Still worse, Plaintiff does not offer a shred of *evidence* regarding "any construction adopted by the Trustees" of the Trust Agreement that would allow Burrows or Neilson to act unilaterally with respect to this or any other litigation.  Critically, the Opposition does not offer a declaration or affidavit from anyone, let alone all of the Trustees as to how they have collectively interpreted Section 3.13 or Section 5.9.  It offers no resolutions, no board or meeting minutes, and no other contemporaneous document at all.  That is presumably because no such evidence exists.  Notably, despite their respective certifications affirming that they had obtained the required authorizations to commence this case, both Burrows and Neilson testified that they never received any advice from the Fund or its regular counsel as to whether the Trust Agreement allows them to litigate this case on its behalf.  Ex. B. (Excerpted Transcript of May 12, 2022 Deposition of Brian Burrows) at 79:15-20; Ex. A (Neilson Dep. Tr.) at 97:3-19.[10]  And, despite this testimony, all that is offered in support of this pivotal argument in the Opposition is the mere say-so of counsel—the same counsel who Burrows hand-picked, who failed to inform the Court of the 116-count indictment against him, and who represented to the Court that Burrows and Neilson were authorized to act on behalf of the Fund, when clearly, they are not.  Mot. at 6-9.  There is no reason for the Court to take their self-serving assertions at face value.

### B. The Fund's Purported Decades-Long Practice of Litigating Without Authorization Is Not a Defense

Plaintiff's Opposition further attempts to excuse its failure to secure authorization to sue by stating that "in more than a dozen securities litigation cases in the past two decades," the

---

[10] In addition, even as selectively quoted by Plaintiff, Section 5.15 does not say that any individual Trustee's construction of the Trust Agreement will bind the other Trustees.  Instead, it once again refers to the "Trustees" collectively and "construction[s]" of the Trust Agreement that they may "adopt[]." ECF No. 137 at Pltf-Local 98-0000078 - Pltf-Local 98-0000079.

Chairman of the Fund has signed certifications purporting to "act[] pursuant to the 'Additional Authority' provisions of the Trust Agreement to move for appointment as lead plaintiff and to oversee the litigation." Opp. at 3, 9, 13-14. Notably, just as Plaintiff submitted no declaration or affidavit on behalf of the Trustees attesting that Burrows and Neilson acted pursuant to Section 5.9 in pursuing this lawsuit, or describing how the Trustees collectively interpret Sections 5.9 and 3.13, Plaintiff also has not submitted any declaration, affidavit, or other document from any current or former "Chairman" of the Fund—or anyone else—supporting the assertion that the Fund initiated its prior securities litigation suits without Trustee approval pursuant to Section 5.9.

The absence of any factual support for this assertion—either in the form of deposition testimony, a declaration or affidavit, or any other evidence—is telling. Notably, in ***none*** of the eight cases Plaintiff cites (Opp. at 3 n.1) did the Fund explain or certify that it was acting pursuant to the "Additional Authority" provisions in Section 5.9 in the Trust Agreement. Instead, each certification stated blithely that "Plaintiff has reviewed a complaint and authorized its filing" or that "Local 98 has authorized the filing of a motion for appointment as lead plaintiff on its behalf in this action."[11] In other words, Plaintiff appears to have taken the same impermissible approach to each of those other cases as it has done here. Plaintiff cannot justify its improper conduct in this case by boasting of repeated instances of similar misconduct spanning over two decades. If

---

[11] *Albano v. Warner Chilcott Ltd. et al.*, No. 1:06-cv-11515, ECF No. 13-2 (S.D.N.Y. Jan. 03, 2007); *Kivun Mut. Funds Ltd. v. 21st Century Holding Co., et al.*, No. 0:07-cv-61057, ECF No. 24-3 (S.D. Fla. Sep. 26, 2007); *Richards v. Zumiez Inc. et al.*, No. 2:07-cv-01980, ECF No. 23-4 (W.D. Wash. Feb. 11, 2008); *Pyramid Holdings Inc. v. Inverness Med. Innovations Inc. et al.*, No. 1:08-cv-10615, ECF No. 12-4 (D. Mass. Jun. 9, 2008); *In Re Evergreen Ultra Short Opportunities Fund Sec. Litig.*, No. 1:08-cv-11064, ECF No. 17-4 (D. Mass. Aug. 22, 2008); *IBEW Local 98 Pension Fund et al. v. Cent. Vt. Pub. Serv. Corp. et al.*, No. 5:11-cv-00222, ECF No. 1-2 (D. Vt. Sep. 15, 2011); *IBEW Local 98 Pension Fund v. CPI Corp. et al.*, No. 4:12-cv-00075, ECF No. 16-2 (E.D. Mo. Mar. 13, 2012); *Mauro v. Liberty Tax, Inc. et al.*, No. 1:18-cv-00245, ECF No. 11-2 (E.D.N.Y. Feb. 13, 2018).

anything, Plaintiff's stunning admission that it failed to obtain the required authorization from the Trustees in each of those other cases raises real questions about the claims at issue there and about whether the courts in those other cases were ever apprised that the statements claiming that Plaintiff had, in fact, obtained the required authorizations were false when made.

### C.    The Taft-Hartley Act Requires Approval by the Trustees

Finally, Plaintiff acknowledges that "the Taft-Hartley Act does have specific requirements for trust agreements regarding procedures" such as "equal representation of employers and employees and, in the event of deadlock, arbitration." Opp. at 15. Likewise, Plaintiff does not deny that Burrows and Neilson ignored these procedures here. At the same time, Plaintiff claims that its failure to comply with the Taft-Hartley Act is of no moment because these procedures only apply to "disputes about payments/contributions." Opp. at 15. But nothing in the text, history, or caselaw regarding the Taft-Hartley Act supports this assertion. The Taft-Hartley Act requires that "employees and employers are equally represented in the administration of such fund" not merely when litigating collection lawsuits. 29 U.S.C. § 186(c)(5).

The caselaw similarly does not limit these provisions to the administration of ERISA lawsuits. *See* Mot. at 1; *Costello v. Lipsitz*, 547 F.2d 1267, 1270 (5th Cir. 1977) (finding that a trust agreement provision unrelated to ERISA suits violated the Taft-Hartley Act's equal representation requirement). Instead, these provisions are meant to ensure that union representatives do not dominate the administration of any trust fund—regardless of whether in the context of ERISA lawsuits or not.[12]

---

[12] As Deloitte's Motion also makes clear, courts regularly dismiss union funds' claims for lack of standing where those funds did not obtain authorization under the applicable trust agreement or the Taft-Hartley Act. Mot. at 2, 12. Plaintiff's argument that these holdings are applicable only to ERISA claims (Opp. at 10) is baseless.

### III.     PLAINTIFF'S LACK OF STANDING CANNOT BE CURED

Implicitly acknowledging that its earlier arguments lack merit, Plaintiff finally contends that even if it lacks standing, this issue can be cured. Opp. at 15. But its arguments here are equally meritless. First, as set forth in Defendants' Motion, even if the Trustees were now to approve and ratify what Burrows and Neilson did without proper authority, such ratification would be ineffective because the applicable statutes of limitations and repose have already run. Mot. at 12-14. Plaintiff does not deny that *Federal Election Commission v. NRA Political Victory Fund* is controlling precedent standing for the principle that "[i]f an act to be effective in creating a right against another or to deprive him of a right must be performed before a specific time, an affirmance is not effective against the other unless made before such time." 513 U.S. 88, 98 (1994). Plaintiff similarly does not dispute that *First Telebanc*, 2007 WL 9702557, at *10, rejects ratification of an unauthorized lawsuit after the expiration of the statute of limitations. Instead, Plaintiff claims that these cases are distinguishable because Floyd filed the first complaint in this matter and was always a legitimate plaintiff with standing—another unsupported assertion. Opp. at 15-17. But Plaintiff fails to address the fact that Floyd's own counsel, at Floyd's direction, explicitly asked the Court to enter an order directing the Clerk "to remove Mr. Floyd as a party to the action," which the Court did on July 14, 2021. ECF No. 88 at 1. Therefore, Floyd's erstwhile standing is irrelevant to the issue before the Court now. The Fund is the only plaintiff in this case. If the Fund lacks standing, there is no other Plaintiff in the case and, as a result, there is no case or controversy.

Plaintiff further seeks to sidestep its standing problem by arguing that "this case is a class action" and therefore the "Court's jurisdiction to hear the case does not rise and fall" with the Fund's standing. Opp. at 1-2. Plaintiff is wrong once again. As an initial matter, this case is a *putative* class action. No class has been certified, and Plaintiff has not even filed another motion for class certification since the Court denied Plaintiff's original motion, without prejudice, almost

- 13 -

four months ago. ECF No. 110. More fundamentally, ample precedent from the Supreme Court and the Fourth Circuit leave no doubt that class action named plaintiffs must have standing, just like plaintiffs in any other case, and that a putative class action must be dismissed if the named plaintiff does not have standing. *See, e.g., Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 n.6 (2016) ("That a suit may be a class action . . . adds nothing to the question of standing[.]") (citations and quotation marks omitted); *Warth v. Seldin*, 422 U.S. 490, 502, 507 (1975) (affirming dismissal of putative class action for lack of standing because the named plaintiffs could not "demonstrate the requisite case or controversy between themselves personally and respondents") (internal citations and quotation marks omitted); *Baehr v. Creig Northrop Team, P.C.*, 953 F.3d 244, 252 (4th Cir. 2020) ("The strictures of Article III standing are no less important in the context of class actions.").

Plaintiff also asserts that dismissal would be inconsistent with Federal Rule of Civil Procedure 15 ("Rule 15") and Rule 17. Opp. at 17-18. But this is incorrect. As discussed above, Rule 17 is inapplicable. Rule 15 likewise does not apply because the statute of ***repose*** has expired. Statutes of repose, unlike statutes of limitations, create ***a substantive right*** to be free from suit. *California Pub. Employees' Ret. Sys. v. ANZ Sec., Inc.*, 137 S. Ct. 2042, 2052 (2017) ("[T]he object of a statute of repose, to grant complete peace to defendants, supersedes the application of a tolling rule based in equity."). Here, Plaintiffs concede, and the Fourth Circuit has held, that 28 U.S.C. § 1658(b) is a "statute[] of repose, not statute[] of limitations." *Snapp v. Lincoln Fin. Sec. Corp.*, 767 F. App'x 452, 454 (4th Cir. 2019).[13] Opp. at 19 n.7. That statute has given Deloitte a

---

[13] The cases Plaintiff cites to support its argument here are inapposite. *Popoola v. Md-Individual Practice Ass'n, Inc.*, 230 F.R.D. 424 (D. Md. 2005) addresses tolling of a statute of limitations, not a statute of repose, and *Se. Penn. Transp. Auth. v. Orrstown Fin. Servs. Inc.*, 12 F.4th 337 (3d Cir. 2021) did not involve a situation where a lead plaintiff was being replaced by another lead plaintiff. And while *In re LexinFintech Holdings Ltd. Sec. Litig.*, No. 3:20-CV-1562, 2021 WL 5530949 (D. Or. Nov. 24, 2021), does involve a change in lead plaintiff, that change took place before the applicable statute of repose had expired—which would not be the case here.

substantive right to be free from suit upon the expiry of the applicable period, and Rule 15 cannot take that substantive statutory right away. Among other issues, that would clearly violate the Rules Enabling Act. *De Vito v. Liq. Hold's Grp., Inc.*, 2018 WL 6891832, at *24 (D.N.J. Dec. 31, 2018) ("To permit relation-back under Rule 15(c) would violate the Rules Enabling Act because it would abridge a party's right to be free from suit under that statue of repose[.]").

Plaintiff's further argument that *American Pipe* tolling prevents dismissal is also meritless. Opp. at 18-20. According to Plaintiff, the case should not be dismissed because the statute of **limitations** has been tolled since the case was commenced and therefore "this class action is still able to proceed under a different lead plaintiff." Opp. 18-20. Plaintiff misleadingly attempts to obscure the fact that *American Pipe* tolling **does not apply to a statute of repose**, acknowledging the binding Supreme Court precedent inconsistent with its position only in a footnote. *Id*. at 19 n.7. The Supreme Court has made clear that *American Pipe* tolling is "derived from equity principles and therefore cannot alter the unconditional language and purpose of" a statute of repose. *ANZ Sec.,* 137 S. Ct. at 2045. And the Fourth Circuit has affirmed that the "five-year period[]" set forth in 28 U.S. Code § 1658(b) is a "statute[] of repose, not statute[] of limitations, which means that [it is] not subject to equitable tolling." *Snapp*, 767 F. App'x at 454.

Finally, all of Plaintiff's arguments here are hypotheticals because there has been no ratification by the Fund's Trustees, despite opportunity to do so. In fact, Plaintiff's Opposition—unaccompanied by any declaration from the Trustees—concedes that it is still the case that no Trustee beyond Burrows or Neilson is even aware of this case. In effect, Plaintiff is asking for this Court to provide it with an impermissible advisory opinion about the impact of a hypothetical but currently non-existent ratification. "[F]ederal courts do not adjudicate hypothetical or abstract disputes" or "issue advisory opinions." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021).

## CONCLUSION

For the foregoing reasons, Deloitte respectfully requests that the Court dismiss the action.

      /s/ Christopher A. Ogiba
Christopher A. Ogiba, Fed. ID No. 9042
Moore & Van Allen, PLLC
78 Wentworth Street
Charleston, South Carolina 29401
Telephone:  843-579-7066
Facsimile:   843-579-8749
Email: chrisogiba@mvalaw.com
       lesleyfirestone@mvalaw.com
       clintonmagill@mvalaw.com

Mark A. Nebrig
John A. Fagg, Jr.
Nader Raja
Kristen Kenley
Moore & Van Allen, PLLC
100 North Tryon Street
Suite 4700
Charlotte, North Carolina 28202-4003
Telephone: 704-331-3602
Facsimile:  704-339-5974
E-mails:  marknebrig@mvalaw.com
       johnfagg@mvalaw.com
       naderraja@mvalaw.com
       kristenkenley@mvalaw.com

Scott A. Edelman
Jed M. Schwartz
Andrew B. Lichtenberg
Milbank LLP
55 Hudson Yards
New York, New York 10001-2163
Telephone: 212-530-5000
Facsimile:  212-530-5219
Email:  sedelman@milbank.com
       jschwartz@milbank.com
       alichtenberg@milbank.com

*Attorneys for Defendants*
*Deloitte & Touche LLP and Deloitte LLP*

Charleston, South Carolina
June 28, 2022