IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| International Brotherhood of Electrical Workers Local 98 Pension Fund, on behalf of itself and all others similarly situated, | C/A No. 3:19-3304-DCC |
| Plaintiff, | |
| vs. | **ORDER AND OPINION** |
| Deloitte & Touche, LLP and Deloitte LLP, | |
| Defendants. | |

In 2007, SCANA Corporation ("SCANA") received legislative approval to construct two nuclear reactors at the V.C. Summer Nuclear Generating Station in Fairfield County, South Carolina (the "Project"). SCANA and its partner, South Carolina Public Service Authority, spent approximately $9 billion on the Project, which ultimately was abandoned. SCANA was exposed to civil and criminal liabilities, as were its officers and directors. On November 22, 2019, Samuel R. Floyd, III, on behalf of himself and all others similarly situated, brought this class action securities complaint against Defendants Deloitte & Touche, LLP and Deloitte LLP (together, "Deloitte"), which have served as SCANA's auditors since 1945. The complaint alleged Deloitte was aware the Project was failing, but continued to issue unqualified "clean" audit reports on SCANA's financial statements, to the detriment of SCANA investors. ECF No. 1.[1]

On January 24, 2020, Plaintiff International Brotherhood of Electrical Workers Local 98 Pension Fund ("IBEW Local 98") filed a motion pursuant to Section 21D(a)(3) of the Securities

---

[1] The case originally was assigned to the Honorable Margaret B. Seymour. The case was reassigned to the undersigned on August 12, 2022, subsequent to Judge Seymour's retirement.

Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), for an order appointing IBEW Local 98 as Lead Plaintiff, on behalf of itself and all others situated, on the grounds it was the investor with the largest financial interest in the case. IBEW Local 98 further asserted its motion was timely, as the motion was filed within sixty days of the date of the notice published pursuant to the PSLRA, and that IBEW Local 98 satisfied the typicality and adequacy requirements of Fed. R. Civ. P. 23. IBEW Local 98 also moved for approval of Cohen Milstein as Lead Counsel and Tinkler Law as Liaison Counsel. ECF No. 22. The motion was granted on February 18, 2020. ECF No. 37. IBEW Local 98 filed a consolidated complaint on May 19, 2020, in which it asserts a cause of action for violation of Section 10(b) of the Exchange Act and Rule 10b-5. ECF No. 44.

A number of disputes arose between Mr. Floyd and IBEW Local 98, including whether Mr. Floyd retained his status as class representative, whether Mr. Floyd's counsel were entitled to continue as class counsel, and whether Brian Burrows, President of IBEW Local 98, was an appropriate person to make legal decisions on behalf of the Fund, as he attested to in the amended complaint. *See* ECF No. 44-1 (Updated Certification Pursuant to Federal Securities Laws). Deloitte moved for a status conference, ECF No. 77, which was held on June 10, 2021. During the hearing, the court queried Lead Counsel regarding information Mr. Burrows had been named in a 116-count indictment charging multiple union employees, including Mr. Burrows, of conspiring to embezzle union assets. Lead Counsel took the position the information regarding the indictment was not relevant to whether IBEW Local 98 was a suitable entity to serve as Lead Plaintiff. Lead Counsel explained the union and pension fund were two separate legal entities with different leadership and different structures, and the indictment dealt with allegations regarding the union, and not the

2

pension fund.  ECF No. 83 at 10-11 (Transcript of June 10, 2021 hearing).  Counsel stated to the court that oversight of the litigation was being exclusively handled by IBEW Local 98's in-house counsel; Mr. Burrows had no role in overseeing the litigation; and IBEW Local 98 was governed by a board of independent trustees of which Mr. Burrows was only one.  Lead Counsel further stated courts regularly certify class representatives who have pending criminal charges as well as criminal convictions.  *Id.* at 14-15.

Mr. Floyd's counsel pointed out Mr. Burrows' certification indicated he was authorized to make legal decisions on behalf of IBEW Local 98.  Mr. Floyd's counsel further posited Mr. Burrows would not participate in a deposition or participate in discovery while the indictment was pending.  Eventually, the court, concerned that Mr. Burrows' indictment could be used to challenge class certification, encouraged the parties to identify a suitable individual to make decisions on behalf of the class.  *Id.* at 57-60.  Consequently, on July 2, 2021, IBEW Local 98 filed a Declaration of Todd Neilson in Support of Supplemental Motion for Class Certification, Appointment of Class Representative, and Appointment of Class Counsel.  ECF No. 86-1.  Mr. Neilson's declaration stated IBEW Local 98 is a Taft-Hartley defined-benefit plan governed by the Employee Retirement Income Security Act ("ERISA") and subject to the jurisdiction of the Department of Labor.  ECF No. 96-1 at 2.  The declaration further stated IBEW Local 98 is administered by a Board of Trustees comprised of four management representatives and four employee representatives, although at the time one employee seat was empty.  *Id.*  The declaration explained the criminal indictment and a civil matter brought by the Department of Labor involved union activities and IBEW Local 98 was not related to either the indictment or civil matter.  The declaration further provided as follows:

12.    As required by the Private Securities Litigation Reform Act and its fiduciary duties to the putative class in the above-captioned matter, the Local 98 Pension Fund has actively overseen this litigation and counsel. Local 98 Pension Fund is very proud of the success to date: drafting a comprehensive complaint in a complex matter, wholly prevailing on motion to dismiss, filing a compelling class certification motion, and commencing discovery. Local 98 Pension Fund looks forward to continued vigorous litigation on behalf of the putative class and, hopefully soon, a certified class.

13.    In deference to the Court's concerns and to ensure that the case can continue proceeding smoothly with a minimum of distractions, the sole authority to make all decisions with regard to this action on behalf of the Local 98 Pension Fund has been delegated to me. Mr. Burrows will have no role in overseeing this litigation, its resolution or distribution of any settlement proceeds or judgment, if any. I have prepared a new certification, attached hereto as Exhibit A.

ECF No. 86-1 at 3-4.

Mr. Neilson averred in the certification, among other things, that he was the sole individual authorized to make legal decisions on behalf of IBEW Local 98 with regard to this action; IBEW Local 98 has full power and authority to bring suit to recover for its investment losses; IBEW Local 98 has fully reviewed the facts and allegations of the Consolidated Complaint filed in this action; and IBEW Local 98 intends to actively monitor and vigorously pursue this action for the benefit of the Class. ECF No. 86-1 at 6.

On July 14, 2021, the court issued an order reaffirming its finding IBEW Local 98 satisfied the requirements for Lead Plaintiff under Section 21D(a)(3)(B) of the Exchange Act and that no proof had been adduced showing IBEW Local 98 would not fairly and adequately represent the interests of the putative class. The court further directed the Clerk's Office to substitute IBEW Local 98 for Mr. Floyd in the caption of the case, and to remove Mr. Floyd as a named party. ECF No. 88. The order further directed Mr. Floyd's counsel be identified as additional counsel to the proposed class to work under the direction of Lead Counsel. ECF No. 88.

4

Currently before the court is the motion to dismiss for lack of jurisdiction filed by Deloitte on May 26, 2022.  ECF No. 132.  IBEW Local 98 filed a response in opposition on June 16, 2022.  ECF No. 141.  Deloitte filed a reply on June 28, 2022.  ECF No. 142.  According to Deloitte, IBEW Local 98 lacks standing because it has never been authorized by the Board of Trustees to participate in this action as Lead Plaintiff.  In response, IBEW Local 98 contends Deloitte has misinterpreted the terms of IBEW Local 98's Trust Agreement and the deposition testimony of IBEW Local 98's representatives, and the actions of Mr. Burrows and Mr. Neilson were proper.

The court held a hearing on March 16, 2023.  The parties filed supplemental information both before and after the hearing.  As briefly recited above, the court has reviewed the docket,  arguments of counsel, and relevant case law.  For the reasons stated below, the court finds and concludes the motion to dismiss should be denied.

## I.  APPLICABLE LAW

Deloitte brings this motion pursuant to Fed. R. Civ. P. 12(b)(1).  When a Rule 12(b)(1) motion challenge is raised to the factual basis for subject matter jurisdiction, the burden of proving subject matter jurisdiction is on the plaintiff.  *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991) (citing *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir.1982)).  In determining whether jurisdiction exists, the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment.  *Id.* (citing *Adams*, 697 F.2d at 1219; *Trentacosta v. Frontier Pac. Aircraft Indus.*, 813 F.2d 1553, 1558 (9th Cir.1987)). The district court should apply the standard applicable to a motion for summary judgment, under which the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact

exists. *Id.* (citing *Trentacosta*, 813 F.2d at 1559). The moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law. *Id.* (citing *Trentacosta*, 813 F.2d at 1558).

## II. DISCUSSION

As an initial matter, the court notes IBEW Local 98 has Article III standing. To establish Article III standing, the plaintiff must show it suffered an "injury in fact" that is "fairly traceable" to the defendant and is "likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). The injury must be "concrete, particularized, and actual or imminent." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). When assessing whether a plaintiff possesses Article III standing to sue, a court "accept[s] as valid the merits of [the plaintiff's] legal claims." *See Fed. Election Comm'n v. Cruz*, 142 S. Ct. 1638, 1647 (2022). Here, IBEW Local 98's complaint in great detail alleges Deloitte knowingly misled SCANA investors by permitting SCANA to represent in its quarterly interim financial statements on Forms 10-Q that the Project, "at an estimated total gross construction cost of no more than $7.7 billion, would be placed into service prior to 2021, and would qualify for nuclear tax credits of 'as much as approximately $1.4 billion,'" and by issuing "clean" audit reports on SCANA's financial statements and internal control over financial reporting in connection with SCANA's 2015 and 2016 Forms 10-K filed with the Securities Exchange Commission. IBEW Local 98 represents it would not have purchased SCANA shares absent Deloitte's imprimatur on SCANA's materially false and misleading financial statements. IBEW Local 98 asserts that, as the news of SCANA's fraud was disclosed, the price of SCANA stock fell from a high closing price of $76.12 per share on July 6, 2016, to a closing price of $37.39 per share

6

on December 21, 2017, and the pension fund was injured as a consequence. The court finds the allegations of the complaint are sufficient to establish Article III standing.

IBEW Local 98 possesses prudential standing. "[P]rudential standing encompasses 'the general prohibition of a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked.'" *Doe v. Va. Dep't of State Police*, 713 F.3d 745, 753 (4th Cir. 2013) (quoting *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 12 (2004)). The Court of Appeals for the Fourth Circuit has summarized the test for prudential standing as follows: "To overcome the prudential limitation on third-party standing, a plaintiff must demonstrate: (1) an injury-in-fact; (2) a close relationship between herself and the person whose right she seeks to assert; and (3) a hindrance to the third party's ability to protect his or her own interests." *Freilich v. Upper Chesapeake Health, Inc.*, 313 F.3d 205, 215 (4th Cir. 2002). In this case, IBEW Local 98 advances its own interests as a first-party plaintiff that purchased SCANA securities during the class period and was damaged as a result of Deloitte's alleged wrongdoing. At this stage, the court will assume IBEW Local 98 meets the requirements for class representative under Fed. R. Civ. P. 23.

IBEW Local 98 also possesses statutory standing. "Statutory standing 'applies only to legislatively-created causes of action' and concerns 'whether a statute creating a private right of action authorizes a particular plaintiff to avail herself of that right of action.'" *CGM, LLC v. BellSouth Telecomm., Inc.*, 664 F.3d 46, 52 (4th Cir. 2011) (quoting Radha A. Pathak, *Statutory Standing and the Tyranny of Labels*, 62 Okla. L. Rev. 89, 91 (2009)). The Fourth Circuit has framed the statutory standing inquiry as whether the plaintiff "is a member of the class given authority by

7

a statute to bring suit[.]" *Id.* (quoting *In re Mutual Funds Inv. Litig.*, 529 F.3d 207, 216 (4th Cir. 2008)).

Statutory standing is reviewed pursuant to Fed. R. Civ. P. 12(b)(6), which has been interpreted as requiring a complaint to state facts sufficient to give the defendant fair notice of what the claim is and the grounds upon which it rests. *Klein v. Altria Group, Inc.*, 525 F. Supp. 3d 638, 656 (E.D. Va. 2021) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Under the PSLRA's heightened pleading standard, any private securities complaint alleging the defendants made a false or misleading statement must: (1) "'specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading,'"; and (2) "'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'" *Id.* (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 321 (2007) (citing 15 U.S.C. § 78u-4(b)(1), (2)). Thus, to state a claim under Section 10(b) and Rule 10b-5, "a plaintiff must allege '(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation.'" *Id.* at 657 (quoting *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 37-38 (2011)). Here, IBEW Local 98 adequately has alleged these factors in detail in Sections VII, VIII, IX, X, and XI of the complaint.

The court does not discern the motion to dismiss raises an issue regarding subject matter jurisdiction under Article III or standing considerations that do not implicate subject matter jurisdiction. The precise issue before the court is whether the actions of Mr. Burrows and Mr. Neilson were sufficient to authorize IBEW Local 98 to assume the role of Lead Plaintiff. This issue implicates the PSLRA.

8

Title 15, United States Code, Section 78u-4, provides the procedural requisites to filing a class action complaint alleging securities fraud.  After the initial complaint is filed, a notice must be published advising the putative class that, not later than 60 days after the date on which the notice is published, any member of the putative class may move the court to serve as lead plaintiff.  *Id.* ¶ (a)(3)(A)(i).  Not later than 90 days after the date on which a notice is published, the court shall consider any motion made by a purported class member in response to the notice, and shall appoint as legal plaintiff the member or members of the purported plaintiff class the court determines to be most capable of adequately representing the interests of class members.  *Id.* ¶ (a)(3)(B)(i).  The court shall adopt a rebuttable presumption that the most adequate plaintiff in any private action arising under this chapter is the person or group of persons that–

> (aa) has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i);
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

*Id.* ¶ (a)(3)(B)(iii)(I).

The rebuttable presumption may be rebutted only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff –

> (aa) will not fairly and adequately protect the interests of the class; or
> (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

*Id.* ¶ (a)(3)(B)(iii)(II).

Among other things, § 78u-4(a)(2) provides a certification must be filed with the complaint attesting as follows:

Each plaintiff seeking to serve as a representative party on behalf of a class shall provide a sworn certification, which shall be personally signed by such plaintiff and filed with the complaint, that–

(i) states that the plaintiff has reviewed the complaint and authorized its filing;

(ii) states that the plaintiff did not purchase the security that is the subject of the complaint at the direction of plaintiff's counsel or in order to participate in any private action arising under this chapter;

(iii) states that the plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary;

(iv) sets forth all of the transactions of the plaintiff in the security that is the subject of the complaint during the class period specified in the complaint;

(v) identifies any other action under this chapter, filed during the 3-year period preceding the date on which the certification is signed by the plaintiff, in which the plaintiff has sought to serve as a representative party on behalf of a class; and

(vi) states that the plaintiff will not accept any payment for serving as a representative party on behalf of a class beyond the plaintiff's pro rata share of any recovery, except as ordered or approved by the court in accordance with paragraph (4).

Both Mr. Burrows and Mr. Neilson filed certifications that generally comply with § 78u-4(a)(2). ECF Nos. 44-1, 86-1. Deloitte contends, however, that neither Mr. Burrows nor Mr. Neilson was authorized to make legal decisions on behalf of the IBEW Local 98; they acted in violation of the relevant Trust Agreement; and they have hidden IBEW Local 98's involvement in the litigation from six of the eight Trustees who run and oversee the pension fund. Given the procedural posture of Deloitte's motion to dismiss and the court's reframing of the argument, the court will sua sponte consider whether IBEW Local 98 can fairly and adequately protect the interests of the class.

Mr. Burrows testified in his deposition he made the decision for IBEW Local 98 to make an application to be appointed as the lead plaintiff in this case. ECF No. 132-2 at 17. According to Mr.

Burrows, the decision did not require the approval of other trustees because the litigation has nothing to do with the business end of the pension fund. Mr. Burrows stated, "these types of litigations cost the funds no money and there's no liability to the funds. So that's why they give me – I'm going to say – carte blanche to do this, because anybody that's going to put the time in is just myself." *Id.* at 18.

Mr. Neilson testified at his deposition he had never discussed this litigation at any meeting of trustees or with any other trustee. Mr. Neilson verified that, in connection with IBEW Local 98's decision to pursue this class action, there was no instrument executed and no approval sought or received from the trustees. ECF N. 132-6 at 16, 20. Mr. Neilson did not see approval as being needed. *Id.* at 21.

The question becomes, then, whether the Trust Agreement mandates the Board of Trustees approve a decision to assume the role of class representative in a class action securities complaint. The court has reviewed a copy of the Trust Agreement filed at ECF No. 137. The Trust Agreement was made December 31, 1975, for the purpose of conforming its provisions to the requirements of the Employee Retirement Income Security Act of 1974 ("ERISA"). ECF No. 137 at 2. The Trust Agreement was created for the purpose of providing ERISA benefits for participants and their beneficiaries in accordance with the provisions of the Trust Agreement and the Pension Plan. ECF No. 137 at 7. The Trust Agreement further provides the Trustees shall have full and exclusive authority to construe the provisions of the Trust Agreement. *Id.* at 31. The court cannot say that Mr. Borrows and Mr. Neilson erred in determining they were not required under the Trust Agreement to obtain the consent of the remaining trustees prior to authorizing IBEW Local 98's taking on the role of Lead Plaintiff. There is no evidence either Mr. Burrows or Mr. Neilson acted in bad faith or

engaged in self-dealing.

IBEW Local 98 is a sophisticated investor with experience acting as Lead Plaintiff in other securities class actions complaints. There is no evidence that IBEW Local 98 will not act in the best interests of the class, that IBEW Local 98's interests are antagonistic to those of the putative class, or that the Board of Trustees would not have endorsed IBEW Local 98's motion to act as class representative.

### III.  CONCLUSION

For the above reasons, Deloitte's motion to dismiss, ECF No. 132, is **denied**. The court reaffirms its finding IBEW Local 98 satisfies the requirements for lead plaintiff appointment pursuant to Section 21D(a)(3) of the Securities Exchange Act of 1934, as amended by the PSLRA. All provisions of the court's July 14, 2021 order remain in full force and effect. *See* ECF No. 88. The court shall set a hearing forthwith on IBEW Local 98's motion to compel and for sanctions, ECF No. 118, and Deloitte's motion for protective order, ECF No. 119. The parties are strongly urged to attempt to narrow the issues raised or to resolve these two motions, which have been pending for over a year. The parties also are directed to submit to the court a proposed joint amended scheduling order by email to chambers within 30 days that includes a deadline for IBEW Local 98 to file its motion for class certification.

**IT IS SO ORDERED.**

s/ Donald C. Coggins, Jr.
United States District Judge

Spartanburg, South Carolina
August 7, 2023

12