# Exhibit 3

```
                                                              Page 1
 1                    MATTHEW CAIN, Ph.D.

 2            UNITED STATES DISTRICT COURT

 3         FOR THE DISTRICT OF SOUTH CAROLINA

 4

 5   ------------------------------x

 6   INTERNATIONAL BROTHERHOOD OF
     ELECTRICAL WORKERS LOCAL 98
 7   PENSION FUND on behalf of
     itself and all others
 8   similarly situated,

 9              Plaintiffs,     Case No. 3:19-cv-3304

10        v.

11   DELOITTE & TOUCHE LLP,
     DELOITTE LLP,
12
                Defendants.
13   ------------------------------x

14

15

16

17         DEPOSITION OF MATTHEW CAIN, Ph.D.

18            Via Remote Videoconference

19            Tuesday, September 14, 2021

20

21

22

23   Reported by:

24   Michele Eddy, RPR, CRR, CLR

25   JOB NO. 198396
```

Page 2

1                    MATTHEW CAIN, Ph.D.
2
3
4
5
6
7                    September 14, 2021
8                    9:28 A.M.
9
10
11     Deposition of MATTHEW CAIN, Ph.D., held
12  remotely via videoconference, with the witness
13  located in Chagrin Falls, Ohio, pursuant to
14  notice, before Michele Eddy, a Registered
15  Professional Reporter, Certified Realtime
16  Reporter, and Notary Public of the State of
17  Ohio.
18
19
20
21
22
23
24
25

Page 26

1         MATTHEW CAIN, Ph.D.
2    nuclear project."
3            Then it goes on.
4    A    Yes, yes.
5    Q    Do you think it's fair to say that
6    the complaint alleges that SCANA made false and
7    misleading statements during the class period?
8            MS. POSNER:  Objection.  Misstates
9        the complaint.
10   A    The complaint does say that, at least
11   in front of that Commission, that SCANA made
12   false and misleading statements.
13   Q    Do you know whether the lead
14   plaintiff in this case has asserted any claims
15   against SCANA?
16           MS. POSNER:  Objection.  Calls for a
17       legal conclusion.
18   A    I'm not sure off the top of my head.
19   Q    Well, in conducting any of your
20   analyses contained in your report, did you need
21   to know whether or not lead plaintiff here
22   asserted claims against SCANA?
23   A    I don't believe that I needed to know
24   that.
25   Q    Do you know whether the lead

Page 27

1                MATTHEW CAIN, Ph.D.

2    plaintiff in this case has asserted any claims

3    against SCANA's officers?

4             MS. POSNER:  Objection.  Calls for a

5        legal conclusion.

6        A    Off the top of my head, I don't know.

7        Q    In conducting any of your analyses

8    contained in your report, did you need to know

9    whether or not lead plaintiff here asserted

10   claims against SCANA's officers?

11       A    No, I don't believe so.

12       Q    Do you know if lead plaintiff is

13   allowed to recover any losses associated with

14   false statements made by SCANA or its officers?

15            MS. POSNER:  Objection.  Calls for a

16       legal conclusion and beyond the scope of

17       his report.

18       A    From a legal perspective, I don't

19   know the answer to that.

20            MR. SCHWARTZ:  Katie, can we go back

21       to the report, please?  I believe it's

22       Exhibit 22.

23   BY MR. SCHWARTZ:

24       Q    Dr. Cain, I will again be going back

25   to that paragraph 70.

```
                                                      Page 28
 1              MATTHEW CAIN, Ph.D.
 2    A    Okay.
 3    Q    Let me know when you're there.
 4    A    Okay, I'm there.
 5    Q    Again, that first sentence, you say
 6  you were "asked by counsel to evaluate whether
 7  per share damages can be assessed for all class
 8  members under Section 10(b) of the Exchange Act
 9  based upon a methodology common to all class
10  members and consistent with lead plaintiff's
11  theory of liability."
12           Correct?
13    A    Yes.
14    Q    And what's your proposed methodology
15  for calculating damages that are consistent
16  with lead plaintiff's theory of liability?
17    A    I think that is -- it begins to be
18  presented in the third sentence of paragraph
19  70, so it explains -- or I explain, "This
20  approach calculates damages formulaically as
21  the artificial inflation in the share price at
22  the time of purchase minus the artificial
23  inflation in the share price at the time of
24  sale," and it goes on and summarizes statutory
25  limitation on damages.  And then the paragraphs
```

Page 29

1           MATTHEW CAIN, Ph.D.
2  that follow, I explain how that inflation can
3  be calculated using event studies.
4     Q     How is artificial inflation
5  introduced into stock prices?
6     A     My general understanding is that
7  there's two common means by which inflation is
8  introduced into stock prices in these type of
9  cases.  And one would be if you're in an
10 inflation creating event.  And the second would
11 be through an inflation maintaining statement
12 or alleged misstatement or omission, which
13 could maintain artificial inflation in the
14 stock price, for example, by failing to
15 disclose negative information to the market.
16    Q     How was artificial inflation
17 introduced into SCANA's stock price here?
18          MS. POSNER:  Objection.
19    A     That's not an analysis that I've
20 undertaken at this point in time.
21    Q     Do you have an opinion one way or
22 another whether artificial inflation was
23 actually introduced into SCANA's stock price
24 during the class period?
25          MS. POSNER:  Objection.  Goes beyond

Page 30

1              MATTHEW CAIN, Ph.D.
2      the scope of his report.
3      A     At this point in time I do not have
4  an opinion.
5      Q     How does your proposed methodology
6  separate out any inflation due to alleged
7  misstatements by persons or entities other than
8  the defendants here so that you can be sure
9  that lead plaintiff is only seeking inflation
10 damages allegedly attributed to the defendants'
11 misstatements?
12     A     So that's not -- that's not a detail
13 of the analysis that I've undertaken at this
14 point in time, and I've not articulated those
15 steps at this point in time.
16     Q     So there's nothing in your report
17 that I could look at to understand how you
18 would propose to separate out inflation solely
19 attributable to alleged misstatements by the
20 defendants; is that correct?
21     A     That's correct.  That's not a detail
22 that I've drilled down to at this point in
23 time.
24     Q     Okay.  So let's back up a little and
25 just go over some background information.

Page 146

1              MATTHEW CAIN, Ph.D.
2    investor in a company owns one slice of that
3    company in terms of the securities they own.
4    So, therefore, if we're talking about a
5    valuation methodology or an event study, that's
6    referring back to that slice of ownership that
7    each investor has in a company, and all you
8    really need to do is scale by the number of
9    shares that they own.  Those steps, though, are
10   going to be the same for any investor.  You
11   just have to scale it by the number of shares
12   that they own.
13      Q     How are you going to determine what
14   artificial inflation, if any, is attributable
15   to statements by Deloitte versus statements by
16   SCANA and its officers?  What specific
17   methodology will you use?
18           MS. POSNER:  Objection.
19      A     So, again, I cannot lay out the
20   actual analysis or the steps that I would take
21   at the merit stage because I have not been
22   asked to do any of those analyses at this point
23   in time.  I have not evaluated the information
24   environment.  I have not yet evaluated any
25   potential alleged corrective disclosures, so I

```
                                                        Page 147
 1                MATTHEW CAIN, Ph.D.
 2   cannot tell you what the course or what path
 3   that analysis is going to take because that's
 4   an analysis that takes a lot of time and effort
 5   and research in the specific set of facts and
 6   circumstances.  But, like I said, in my
 7   academic experience, as well as my professional
 8   experience working on other merits reports, the
 9   tools or the methodologies that I employ and
10   that other experts employ at the merit stage,
11   such as event studies and valuation analysis,
12   are tools that are very easily applied on a
13   class-wide basis.
14       Q    But you've said now several times
15   that you need to know the specific set of facts
16   and circumstances to understand what tool you
17   would employ, right?
18       A    Yes, I think that's correct.
19       Q    And you don't know what set of facts
20   and circumstances you're dealing with now,
21   right?
22       A    I'm not really sure what you mean by
23   that.
24       Q    You don't know -- you said you need
25   to wait until the merits report so that you
```